**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  _____


KISSING CAMELS SURGERY CENTER,
LLC, CHERRY CREEK SURGERY CENTER,
LLC, ARAPAHOE SURGERY CENTER,
LLC, and HAMPDEN SURGERY CENTER, LLC,

      Plaintiffs,

v.

HCA, INC., HCA-HEALTHONE LLC,
CENTURA HEALTH CORPORATION,
COLORDO AMBULATORY SURGERY CENTER ASSOCIATION, INC., and
KAISER FOUNDATION HEALTH PLAN OF COLORADO,

      Defendants.

---

## COMPLAINT

---

      Plaintiffs, Kissing Camels Surgery Center LLC, Cherry Creek Surgery Center, LLC, Arapahoe Surgery Center, LLC and Hampden Surgery Center, LLC (collectively the "Plaintiffs" or the "Facility Plaintiffs") bring this action alleging violations of Section 1 and Section 2 of the Sherman Antitrust Act and violations of the Colorado Antitrust Act, against Defendants HCA, Inc., HCA-HealthOne, LLC, Centura Health Corporation, Colorado Amubulatory Surgery Center Association, Inc., and Kaiser Foundation Health Plan of Colorado, and their various subsidiaries and divisions, as described below,  (collectively, "Defendants"), as part of this Complaint.

      1.      This case is brought by four ambulatory surgery centers ("ASCs") that provide services to patients in a more efficient, less expensive and more effective manner than hospitals

that traditionally provided those services.  The Defendants include the two most dominant private hospital systems in the State of Colorado.  The Defendant hospitals have significant market power in the Denver and Colorado Springs geographic areas included in this complaint. As those Defendants realized that they could not compete fairly in the marketplace with Plaintiffs, those Defendants have abused their market power in an effort to put the Plaintiffs out of business. Those Defendants have conspired with each other and they have gained control over the Defendant Association that is supposed to represent the interests of the Plaintiffs and brought that Association into the conspiracy.  Finally, they have used their market power and brought Defendant Kaiser into the conspiracy and convinced Kaiser not to sign a contract that it had negotiated with one of the Plaintiffs.  The Defendant hospitals have also attempted to use their market power to influence other health insurance companies that do business in Colorado.  The result is that plaintiffs and the patients they serve are being damaged.

## PARTIES

**PLAINTIFFS**

2.      Plaintiff Kissing Camels Surgery Center LLC is a Colorado limited liability company with its principal place of business in Colorado Springs, Colorado. Plaintiff Kissing Camels was licensed to do business on June 14, 2010.  It has suffered and in all likelihood will continue to suffer antitrust injury as a result of Defendants' anticompetitive activities and agreements in restraints of trade, including but not limited to decreased utilization and/or decreased revenues.

3.      Cherry Creek Surgery Center LLC is a Colorado limited liability company with its principal place of business in Denver, Colorado. Plaintiff Cherry Creek was licensed to

business on June 21, 2012.  It has suffered and in all likelihood will continue to suffer antitrust injury as a result of Defendants' anticompetitive activities and agreements in restraints of trade, including but not limited to decreased utilization and/or decreased revenues.

4.      Hampden Surgery Center LLC is a Colorado limited liability company with its principal place of business in Denver, Colorado. Plaintiff Hampden was licensed to do business on September 19, 2012.  It has suffered and in all likelihood will continue to suffer antitrust injury as a result of Defendants' anticompetitive activities and agreements in restraints of trade, including but not limited to decreased utilization and/or decreased revenues.

5.      Arapahoe Surgery Center LLC dba SurgCenter on Dry Creek is a Colorado limited liability company with its principal place of business in Englewood, Colorado. Plaintiff Arapahoe was licensed to do business on April 12, 2010.  It has suffered and in all likelihood will continue to suffer antitrust injury as a result of Defendants' anticompetitive activities and agreements in restraints of trade, including but not limited to decreased utilization and/or decreased revenues.

**DEFENDANTS**

6.      Defendant HCA, Inc., is a corporation organized and existing pursuant to the laws of the state of Tennessee, with its principal place of business at One Park Plaza, Nashville, TN, 37203. HCA owns more hospitals than any other entity in the country.  According to its website, HCA is the nation's leading provider of healthcare services, a company comprised of locally managed facilities that includes about 163 hospitals and 110 freestanding surgery centers in 20 states and England and employing approximately 199,000 people.  Defendant HCA owns Defendant HCA-HealthOne, LLC, which in turn owns a one of the largest systems of hospitals

and surgery centers in Colorado.   These Defendants are collectively referred to as "HealthOne/HCA" or "HealthOne" in this complaint. The HealthOne system includes: The Medical Center of Aurora; North Suburban Medical Center and the NorthEast ER; Presbyterian/St. Luke's Medical Center & Rocky Mountain Hospital for Children; Rose Medical Center; Sky Ridge Medical Center; Swedish Medical Center; Spalding Rehabilitation Hospital; Centennial Medical Plaza (affiliated with The Medical Center of Aurora); Swedish Southwest ER (affiliated with Swedish Medical Center); and 14 ambulatory surgical centers   (Surgery Center of the Rockies, Centennial Medical Plaza, Lowry Surgery Center , Midtown Surgical Center, Rose Surgical Center, Urology Surgery Center of Colorado, Rocky Mountain Surgery Center, Red Rocks Surgery Center, Centrum Surgical Center, Sky Ridge Surgical Center, Ridge View Endoscopy Center, Lincoln Surgery Center, Musculoskeletal Surgical Center, North Suburban Surgery Center, Clear Creek Surgery Center).

7.      Defendant Centura Health Corporation ("Centura") is a Colorado nonprofit corporation whose principal place of business is in Englewood, CO.   Centura was formed in 1996 by Adventist Health System and Catholic Health Initiatives. According to its website, Centura operates Colorado's largest hospital and health care network and the state's largest trauma network.  According to its website, Centura provides care to over 500,000 patients a year through its health care network, which includes 13 hospitals, 11 ambulatory surgery centers, seven senior living communities, six diagnostic imaging services, several medical clinics, Flight for Life® Colorado, and home care and hospice services  The hospitals in the Centura system include Avista Aventist Hospital, Littleton Adventist Hospital, OrthoColorado Hospital, Parker Adventist Hospital, Porter Adventist Hospital, St. Anthony Adventist Hospital, St. Anthony

North Hospital, Penrose Hospital, and St. Francis Medical Center.  The freestanding ambulatory surgery centers in the Centura system include Hand Surgery of Colorado, Summit View Surgery Center at Littleton Adventist Hospital, Flatirons Surgery Center, Golden Ridge Surgery Center, Crown Point Surgery Center, Harvard Park Surgery Center, Endoscopy Center at Porter, Audubon Surgery Center and Sisters Grove Pavilion at St. Francis.  The following hospitals and surgery centers are located in the Colorado Springs geographic market:  Penrose Hospital, St. Francis Medical Center, the Audubon Surgery Center and Audubon Sisters Grove Pavilion at St. Francis Medical Center.  The following hospitals and surgery centers are located in the Denver Metropolitan geographic market:  Avista Adventist Hospital, Littleton Adventist Hospital, OrthoColorado Hospital, Parker Adventist Hospital, Porter Adventist Hospital, St. Anthony Adventist Hospital, and St. Anthony North Hospital, :  Hand Surgery of Colorado, Summit View Surgery Center at Littleton Adventist Hospital, Flatirons Surgery Center, Golden Ridge Surgery Center, Crown Point Surgery Center, Harvard Park Surgery Center, and Endoscopy Center at Porter.

8.      Defendant Colorado Ambulatory Surgical Center Association, Inc. ("CASCA"), 3333 S. Bannock St. #400, Englewood, CO 80110. CASCA currently purports to represent ambulatory surgery centers across the state of Colorado. As alleged below, CASCA is dominated by its hospital members led by Defendants HealthOne and Centura.

9.      Defendant Kaiser Foundation Health Plan of Colorado ("Kaiser") is a Colorado company with headquarters in Denver, Colorado.  According to its website, Kaiser has more than 500,000 members in Colorado.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that most of the claims asserted herein are brought under federal statutes and necessarily involve adjudication of one or more federal questions.   For Plaintiffs' Sherman Act claims, jurisdiction arises under 28 U.S.C. § 1331 and 28 U.S.C. § 1337.   This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367.

11.     This Court has personal jurisdiction over the parties because Plaintiffs submit to the jurisdiction of this Court, and each Defendant systematically and continuously conducts business in this State, and otherwise has minimum contacts with this State sufficient to establish personal jurisdiction over each of them.

12.     Venue is appropriately established in this Court under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### INTRODUCTION

13.     The Plaintiffs are four ASCs which offer patients not requiring admission to a hospital for their treatment an important alternative to treatment in a hospital. Historically, the treatments performed at the ASCs were performed in hospitals.  Hospitals generally require large amounts of capital expenditures and employ significant staffs, both of which result in costs that are allocated across all procedures performed at the hospitals.  As healthcare costs in this country increased, ASCs developed as an alternative to hospitals and provided comparable procedures at lower costs.  While the Defendant hospital systems have formed surgery centers, those hospital systems have an inherent conflict of interest to direct as many patients as possible to the hospitals

where the Defendants are paid more for the services in order for the hospitals to cover their significant costs. In fact, through their relationships with doctors and otherwise, hospitals have the ability to direct many patients to the site where they will receive their procedures. Moreover, the ASCs established by Defendants cannot compete with the Plaintiffs in a fair and open market. The Plaintiff centers are modern and efficient, certified by the Centers for Medicare and Medicaid Services, and accredited by The Accreditation Association for Ambulatory Health Care. A group of board certified physicians, many of whom have been nationally recognized" perform procedures at the centers. The treatments performed at the centers are less likely to result in infection than if similar procedures were performed in hospitals. The treatments performed at the centers are almost always less expensive than similar procedures performed at hospitals. Patients can schedule procedures at the centers with more flexibility than if they were scheduling similar procedures at hospitals, where surgeons must compete with longer, less predictable and emergency surgery procedures. Patients find that they have fewer cancelled and/or delayed procedures when they come to the centers. In general patients find more convenience such as closer parking and shorter wait times when they have procedures at the centers instead of at hospitals such as the Defendants in this action. As an example of lower prices charged by and paid to ASCs, Medicare pays $1,332.19 for carpal tunnel surgery when performed in a hospital in Colorado, but pays only $762.31 when that same surgery is performed in a free-standing ASC in Colorado. As a further example, Medicare pays $4,246.76 for reconstruction of a wrist joint when that surgery is performed in a hospital, but pays only $2,457.95 when that same surgery is performed in a free-standing ASC.

14.     As a result of all these factors and others, the Plaintiffs provide an important alternative to their patients, who are consumers of healthcare, and the Plaintiffs increase consumer welfare.  Also as a result of these factors and others, the Defendant hospitals have been unable to compete with Plaintiffs with respect to surgical procedures that can be performed without the necessity of hospitalization.  Defendants have experienced an increasing number of patients exercising their rights to make their own healthcare decisions by choosing these lower cost, more efficient, and generally safer facilities.  As such, the Defendants have resorted to the concerted activity and anticompetitive practices alleged in this complaint.

## MARKET DEFINITION

15.      The Relevant Product Market for the claims in this case is the market for surgical services or procedures which do not require hospitalization.  A linked and related Product Market is the Market for hospital services.  A reason that these markets are linked or related is that the services or procedures performed at ASCs can also be performed at hospital, although at higher costs.   A third product market that is related to the claims in this case is the market for health benefits or insurance.  The networks of health insurance companies must include dominant hospital systems like those of the Defendants HealthOne and Centura.  As a result, those Defendants have significant market power that they can exercise in dealing with health insurance companies like Kaiser and the other health insurance companies doing business in Colorado.

16.     The Relevant Geographic Markets are the Metro Denver market and the Colorado Springs, Colorado market.

17.     Barriers to entry for all of these markets are high.

## INTERSTATE COMMERCE

18.     The activities of the Defendants are the subject of this Complaint are within the flow of, and have substantially affected, interstate trade and commerce.

19.     Communications between Defendant employees often occurred through interstate communications.

## HEALTHONE

20.     According to its website, HealthOne/HCA is "the largest health care system in the metro Denver area with more than 9,000 employees and 3,000 affiliated physicians.  HealthOne hospitals have a long and trusted legacy going back more than 130 years with St. Luke's, more than 85 years with Presbyterian Denver, more than 105 years with Swedish and more than 60 years with Rose."

21.     The current HealthOne system was created in 1995 as a Colorado company and a joint venture between The Colorado Health Foundation and various affiliates of HCA.   The Foundation grew to the second largest charitable foundation in the state and in October 2011 sold its share in HealthONE to HCA.

22.     The HealthOne system includes: The Medical Center of Aurora; North Suburban Medical Center and the NorthEast ER; Presbyterian/St. Luke's Medical Center & Rocky Mountain Hospital for Children; Rose Medical Center; Sky Ridge Medical Center; Swedish Medical Center; Spalding Rehabilitation Hospital; Centennial Medical Plaza (affiliated with The Medical Center of Aurora); Swedish Southwest ER (affiliated with Swedish Medical Center); 14 stand-alone ambulatory surgery centers; 8 occupational medicine & rehabilitation clinics; dozens

of specialty clinics; two radiation oncology centers; and AIRLIFE-DENVER, which provides critical care air and ground transportation across an eight-state region.

23.     The 14 stand-alone ambulatory surgery centers operated by HealthOne in the Metro Denver area compete with the Cherry Creek, Arapahoe and Hampden Surgery Centers in the Metro Denver ambulatory surgery market. In addition, HealthOne as a hospital system competes with the Plaintiffs in that many services provided by Plaintiffs are also provided at hospitals on a less efficient basis.

24.     Various reports suggest that HealthOne has a significant percentage of the hospital market in the Metro Denver area, and a significant percentage of the market for surgical services that do not require hospitalization in the Metropolitan Denver market.  In both of those markets, HealthOne has market power.

25.     As a result of HealthOne's market share, it enjoys a high operating profit margin. *See, e.g.,*  Project for Strategic Health Care Purchasing, a study for Colorado for Health Care, SKY HIGH HEALTH CARE COSTS IN THE MILE HIGH CITY, at 9 (September 2005).

26.     According to that same study, the average hospital operating margin in the United States in 2003 was only 4%. *Id*. Based on 2003 government data, HealthONE's operating margin was 29%. *Id.* In the local market, HealthONE's operating margin in 2003 ranged from nearly 2.5 times higher to almost five times higher than the operating margins of its major hospital services competitors. *Id.* The ability to command prices significantly above market rates demonstrates HealthOne's market power in the Metro Denver market.

27.     As at least one Colorado health insurer has previously pointed out, HealthOne's hospitals demand higher rates than its competitor facilities and higher than the Plaintiff facilities.

28.     According to HealthOne's RFP response last year in bidding purchase Memorial Hospital in Colorado Springs, "HealthONE currently contracts with every major health insurer and many smaller payers in Colorado and expects to continue to do so. HCA and HealthONE have great relationships with these insurers."

29.     Based on information and belief, Plaintiffs allege that on numerous occasions over a long period of time, Defendants HealthOne and Centura have attempted to use their market power to convince health insurance companies not to contract with independent surgery centers and others that compete in their market.  For example, there was a Dry Creek Surgery Center that is not related to the Plaintiffs in this action.  Based on information and belief, Plaintiffs allege that because of pressure by one or more of the Defendant Hospitals, many health insurance companies refused to put the previous Dry Creek in network and that surgery center then went out of business.  Based on information and belief, Plaintiffs also allege that one or both of the defendant hospitals have opposed other efforts by physicians to establish facilities that compete with the hospitals owned by Defendants.

30.     The Defendant Hospitals are in a position to put significant pressure on health insurance companies operating in their market because it is necessary for the Hospitals to be in the networks of the health insurance companies.  The market power of Defendant HealthOne was specifically recognized by United Health Care, the largest health insurer in Colorado, when it brought antitrust claims against HealthOne and then dismissed those claims when HealthOne agreed to return to United's network.

31.     HealthOne has made clear that it is antagonistic to the competition it is facing from the Plaintiff facilities in a number of different ways.

32.     In January of 2012, counsel for a number of surgery centers operated by HealthOne (including Sky Ridge Surgery Center and Rose Surgery Center) threatened to file suit against SurgCenter at Dry Creek (Arapahoe) and SurgCenter Development, Inc. for what it claimed were unfair business practices related to copays and deductibles.  In its letter, these facilities noted in the midst of their threats of legal action that they wanted to preserve an "open and honest competitive marketplace for ambulatory surgical services."  Further, counsel for the HealthOne facilities noted that no legal confrontation was sought if all participants abide by rules of fair play and elect to compete on a level field untainted by marginal or illegal business practices. In fact, the letter was written while HealthOne was not engaging in open and honest competition but when it was abusing its market power.

33.     Despite the above, the letter claimed that the HealthOne entities would file suit against the Plaintiffs if they did not change their billing and collection services to be less competitive with HealthOne, and to increase costs collected from Plaintiff's patients.

## CENTURA

34.     According to its website, Centura provides care to over 500,000 patients a year through its health care network, which includes 13 hospitals, 11 ambulatory surgery centers, seven senior living communities, six diagnostic imaging services, several medical clinics, Flight for Life® Colorado, and home care and hospice services.

35.     The hospitals in the Centura system include seven in the Denver metropolitan area:  Avista Adventist Hospital, Littleton Adventist Hospital, OrthoColorado Hospital, Parker Adventist Hospital, Porter Adventist Hospital, St. Anthony Adventist Hospital, and St. Anthony North Hospital.  These hospitals provide services which compete with services provided by

Plaintiffs Cherry Creek Surgery Center, Hampden Surgery Center, and Arapahoe Surgery Center.

36.     Centura also operates two hospitals in Colorado Springs: Penrose Hospital and St. Francis Medical Center.  These hospitals provide services which compete with services provided by Plaintiff Kissing Camels Surgery Center.

37.     According to data published by the American Hospital Directory, Centura has a significant percentage of the hospital market in Colorado Springs.  It also has a significant percentage of the market for surgical procedures that can be performed without hospitalization in Colorado Springs.  Centura has market power in both of these markets.

38.     The free-standing ambulatory surgery centers in the Centura system include seven in the Denver metropolitan area:  Hand Surgery of Colorado, Summit View Surgery Center at Littleton Adventist Hospital, Flatirons Surgery Center, Golden Ridge Surgery Center, Crown Point Surgery Center, Harvard Park Surgery Center, and Endoscopy Center at Porter.  These centers compete with Plaintiffs Cherry Creek Surgery Center, Hampden Surgery Center, and Arapahoe Surgery Center.

39.     The free-standing ambulatory surgery centers in the Centura system include two in Colorado Springs, Audubon Surgery Center and Sisters Grove Pavilion at St. Francis Medical Center.  These centers compete with Plaintiff Kissing Camels Surgery Center.

**COLORDO AMBULATORY SURGERY CENTER ASSOCIATION ("CASCA")**

40.     While CASCA purports to represent the interest of ASCs, CASCA has become dominated by the Defendant hospital systems.  That domination is alleged more specifically below.  As a result of that domination, CASCA joined the conspiracy and provided the site for meetings that were involved in the conspiracy including the meeting of August 30, 2012.

**KAISER FOUNDATION HEALTH PLAN OF COLORADO**

41.     Kaiser is a health insurance company doing business in Colorado.  At least as of the meeting of August 30, 2012, it had joined the conspiracy and then it refused to sign a network agreement that it had negotiated with Plaintiff Kissing Camels and refused to authorize treatment of its members at Kissing Camels as a part of the conspiracy.

**DEFENDANTS' ABUSE OF THEIR MARKET POWER**
**AND DEVELOPMENT OF THE CONSPIRACY**

42.     Defendant HealthOne has market power in the market for surgical services that do not require hospitalization in the Denver Metropolitan area and in the hospital market in the Denver Metropolitan area.  Defendant Centura has market power in the market for surgical services that do not require hospitalization in the Denver Metropolitan area and in the hospital market in the Denver Metropolitan area.  Collectively HealthOne and Centura have market power in the market for surgical services that do not require hospitalization in the Denver Metropolitan area and in the hospital market in the Denver Metropolitan area.  Defendant Centura has market power in the market for surgical services that do not require hospitalization in Colorado Springs and in the hospital market in Colorado Springs.

43.     As alleged above Plaintiffs Arapahoe and Kissing Camels began doing business in 2010.  Since that time, Defendants Centura and HealthOne have abused their market power in opposition to the Plaintiffs in various ways.

44.     First, these Defendants employ doctors and otherwise have relationships with doctors.  These Defendants have used these relationships to keep surgery procedures away from the Plaintiffs. Based on information and belief, Plaintiffs allege that the defendant hospitals have encouraged doctors whom they employ and with whom they have other relationships not to refer patients to the Plaintiffs.

45.     Second, these Defendants have used their market power with health insurance companies that operate in Colorado to discourage them from entering into contracts with Plaintiffs and to encourage them to pay lower rates to doctors who do business with Plaintiffs. For example, starting in 2010 Defendant Centura met with one health insurance company in Colorado repeatedly and asked that the insurance company take actions against doctors who referred business to plaintiff Kissing Camels, and the insurance company took the actions requested by Centura.  Based on information and belief, Plaintiffs allege that Defendant Centura had similar meetings and communications with other health insurance companies and that Defendant HealthOne engaged in similar activities.

46.     In addition, these Defendants have made other efforts to prevent the Plaintiffs from starting their businesses and from remaining in business.  For example, ASCs are required to have transfer agreements with hospitals to assure that patients who require hospitalization due to unexpected emergencies receive adequate care.  On or about February 7, 2012 HealthOne refused to sign a transfer agreement with the Cherry Creek Surgery Center in an effort to prevent

Cherry Creek from having an on-going business.  HealthOne refused to sign the Agreement even though such an Agreement is in the interest of a hospital because it increases the patient flow to a hospital.  HealthOne's refusal to sign the agreement was an abuse of its monopoly market power and an attempt to maintain that power.

47.     While the Defendants HealthOne and Centura damaged Plaintiffs through their abuse of their market power, when they were not successful in using their market power to force Plaintiffs out of business, they engaged in additional concerted activity to achieve the same end. At the behest of Centura and/or HealthOne, the major health plans in Colorado, have taken actions to pressure these facilities out of business. One of the primary methods of putting Plaintiffs out of business was to attempt to dry up "referrals" to the Plaintiffs by physicians and other healthcare providers.

48.     Many of these health insurers sent notices to healthcare providers who performed surgeries or other procedures at the Plaintiffs' facilities threatening them with termination from provider networks, or other financial penalties, if they continued to perform those surgeries or procedures at the Plaintiffs' facilities. Some of these healthcare providers were ultimately terminated from the health insurance networks.

49.     One of the ways that Defendants HealthOne and Centura advanced their concerted activity was to gain control over Defendant CASCA.  HealthOne exerts a great deal of control over CASCA.  At least two HCA/HealthOne employees sit on the Board of CASCA, and HealthOne/HCA has routinely been a large sponsor of CASCA's meetings and activities.

50.     Centura exerts a great deal of control over CASCA through the Executive Director of Audubon Surgery Center, who also serves as an officer of CASCA.

51.     Defendants HealthOne and Centura Health have a close relationship with CASCA.  For example, they are the top (Diamond Level) sponsors of CASCA.  As the Plaintiffs have been successful in attracting and treating patients, CASCA, HealthOne, Centura and others have engaged in a concerted effort to put the Plaintiffs out of business.  Although some of the Plaintiffs have been members of CASCA and CASCA accepted their dues, CASCA has become a supporter of its top level members, the Defendant hospitals.

52.     CASCA has attempted to bring about actions detrimental to Plaintiffs.   For example, at the request of Defendants HealthOne and Centura, CASCA Executive Director Rob Shwartz sent a letter to the Colorado Department of Regulatory Agencies noting concern that "no adverse action" had been taken against providers for waiving or discounting insurance copayments or deductibles.  The letter encouraged the state of Colorado to take action against the Plaintiff facilities.  In fact, the Plaintiffs do not generally waive copayments or deductibles.  The response from DORA noted that Colorado Medical Board staff had received no information that such a complaint had been filed in the last year and suggesting  an open meeting with the Attorney General's office, the Colorado Medical Society and Colorado Hospital Association. On information and belief, CASCA did not ask for such a meeting.

53.     When their other efforts were not sufficiently successful, Defendants resorted to a blatant violation of the Antitrust laws.  On or about August 30, 2012, Defendants, CASCA, HealthOne, and Centura held a meeting with the majority of the major health insurance companies in the Denver and Colorado Springs markets, at which these Defendants asked the health insurance companies, such as CIGNA, United, Anthem, Aetna, Humana, and Kaiser, to join them in a concerted boycott of the Plaintiffs.  Present at the meeting were representatives of

Kaiser, Anthem, United, and Humana among others. At the meeting on or about August 30, 2012, Centura representatives provided misinformation about Plaintiffs Surgery Center and requested health insurers not to do business with Plaintiffs. The clear intent behind this action is to drive Plaintiffs out of business.

54.     As a result of the meeting and the agreements reached with HealthOne, Centura, and CASCA a number of the health insurers took actions designed to further their agreement to attempt to marginalize or put out of business the Plaintiffs.

55.     For instance, one insurance company terminated from its networks a number of physicians and practices affiliated with the Plaintiffs' facilities. These terminations were designed to deter referrals of patients and surgeries to these facilities.  That Company has threatened many other physicians and practices with termination if they continue to treat patients at the Plaintiff facilities and has threatened primary care physicians with termination if they continue to refer patients to surgeons who perform surgery at the Plaintiff facilities.  In fact, that Company went one step further and threatened to terminate primary care physicians who referred patients to specialists who ultimately performed surgeries and procedures at the Plaintiffs' facilities.

56.     On August 31, 2012, just one day after the secret meeting at CASCA and in furtherance of the agreement in restraint of trade,  that Company sent a letter to Metro Denver Pain Management purporting to terminate that practice "for cause" on October 31, 2012 for "continued use of SurgCenter on Dry Creek [Arapahoe]."

57.     Another health insurance company present at the meeting has threatened practices affiliated with Kissing Camels, Arapahoe and Cherry Creek Surgery Centers with termination from their provider networks on the basis of their treatment of patients at those facilities.

58.     On August 31, 2012, that Company sent correspondence to Colorado Orthopaedic Consultants, a practice which performed surgeries at Arapahoe SurgCenter, threatening to terminate the practices' contracts with that Company if they did not stop using Arapahoe SurgCenter for all its members.

59.     On September 6, 2012, that Company sent letters to providers that performed surgeries and other procedures at  SurgCenter facilities including Colorado Hand Center and Interwest Rehabilitation, purporting to terminate those practices from its provider network effective January 1, 2013 due to "inappropriate referrals." Other providers who performed surgeries at the Plaintiffs' facilities received similar letters from that Company.

60.     After the meeting of August 30, 2012, another health insurance company that attended the meeting made threats to doctors associated with the Plaintiffs about terminating them from that company's network.

61.     After the August 30, 2012 meeting at CASCA and as a direct result of that meeting, Defendant Kaiser notified Plaintiff Kissing Camels Surgery Center that it no longer intended to finalize its previously negotiated participation agreement with Kissing Camels.  In addition, as a further result of the August 30, 2012 meeting, Kaiser has refused to authorize the treatment of its members at Kissing Camels Surgery Center on an out-of-network basis, even when surgery is urgently needed. These actions were taken in furtherance of the conspiracy that Kaiser had joined with HealthOne, Centura, and CASCA.

62.     In the Colorado Springs market, Defendant Centura owns and operates the Audubon Surgery Center and the Audubon AC at St. Francis and Women's Surgical Center.  The administrator of the Audubon Centers is Brent Ashby.  As recently as on or about October 4, 2012 at a meeting of shareholders of Audubon and others, and on other occasions, Ashby stated that it was his goal to put the Kissing Camel Surgery Center out of business.

63.     Based on information and belief, Plaintiffs allege that on numerous occasions over a long period of time, Defendants HealthOne and Centura have attempted to use their market power to reach agreement with one another and health insurance companies not to contract, or otherwise do business with independent surgery centers such as Plaintiffs and others that compete in their market.

64.     As a direct result of Defendant HealthOne's and Defendant Centura's anticompetitive restraint on trade, patients who sought treatment at Plaintiff Kissing Camels Surgery Center have been required by their health insurers to seek treatment at other facilities, including Defendants' facilities.

65.     Consumers and competition have been harmed by HealthOne and Centura's monopolist action and agreements in restraint of trade. Consumer choices are limited when HealthOne, Centura and their co-conspirators attempt to run potential competitors out of business

66.     As alleged, Plaintiff facilties were damaged, and the damage caused was the direct and intended outcome of Defendant's agreements in restraint of trade and HealthOne and Centura's abuse of their respective monopoly power and the harm to competition.

67.     There is no pro-competitive justification for Defendants' conduct and attempts to put the Plaintiff facilities out of business and exclude them from insurer networks.

## VIOLATIONS ALLEGED

### COUNT I

**Contract, Combination, or Conspiracy in Restraint of Trade
in Violation of Section 1 of the Sherman Act
(On Behalf of All Plaintiffs Against All Defendants)**

68.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 67 as though set forth herein.

69.     The agreement among the Defendants and their co-conspirators to attempt to put Plaintiffs out of business through a variety of anticompetitive means represents a contract, combination, and conspiracy within the meaning of Section 1 of the Sherman Act.

70.     As a direct and proximate result of Defendants' continuing violations of Section 1 of the Sherman Act, Plaintiffs have suffered and continue to suffer injury and damages of the type that the federal antitrust laws were designed to prevent. Such injury flows directly from that which makes Defendants' conduct unlawful.  These damages consist of having been paid lower rates, having fewer surgeries performed at the facility, otherwise having business diverted to competitors who were part of the agreement, and/or having access to far fewer patients than they would have with fair competition and but for the Defendants' anticompetitive agreements.

71.     Plaintiffs seek money damages from Defendants for their violations of Section 1 of the Sherman Act.

72.     The Defendants' unlawful conduct threatens to continue to injure Plaintiffs. Plaintiffs seek a permanent injunction prohibiting Defendants from entering into, or from honoring or enforcing, any agreements that have been entered into in restraint of trade.

## COUNT II

### Conspiracy to Monopolize in Violation of 15 U.S.C. § 2
### (On Behalf of Arapahoe, Cherry Creek and Hampden Against HealthOne and Centura)

73.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 72 as though set forth herein.

74.     HealthOne and Centura have willfully and wrongfully conspired to monopolize the market for surgery procedures that do not require hospitalization in the Metro Denver market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  This offense is likely to continue to recur unless the relief requested is granted.

75.     For the purpose, and the actual effect, of maintaining, extending and exercising its monopoly in the metro Denver market, HealthOne and Centura, along with their co-conspirators, threatened and intimidated health insurers and healthcare providers who utilize Plaintiffs' facilities and, in fact, took other actions designed to drive the Plaintiffs out of business.

76.     HealthOne's and Centura's acts and practices and their continuing course of conduct have harmed consumers and competition in the Metro Denver market for surgical services not requiring hospitalization.

77.     HealthOne's  and Centura's anticompetitive, exclusionary and coercive conduct have directly and proximately caused injured to Plaintiffs of a type the antitrust laws are intended

to prohibit and unless the activities complained of are enjoined, Plaintiffs will continue to suffer injury for which there is no adequate remedy at law.

## COUNT III

**Attempted Monopolization in Violation of 15 U.S.C. § 2**
**(On Behalf of Arapahoe, Cherry Creek and Hampden Against HealthOne and Centura)**

78.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 77 as though set forth herein.

79.     HealthOne and Centura has willfully attempted to monopolize the Metro Denver Market for surgical services not requiring hospitalization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.   This offense is likely to continue or recur unless the relief requested is granted.

80.     With the specific intent and the dangerous probability of monopolizing the acute care hospital market in Metro Denver, HealthOne and Centura, along with their co-conspirators, threatened and intimidated health insurers and healthcare providers who utilize Plaintiffs' facilities and, in fact, took other actions designed to put the Plaintiffs facilities out of business.

81.     HealthOne's and Centura's acts and practices and their continuing course of conduct have harmed consumers and competition in the Metro Denver market for surgical services not requiring hospitalization.

82.     HealthOne's and Centura's anticompetitive, exclusionary and coercive conduct has directly and proximately caused injured to Plaintiffs of a type the antitrust laws are intended to prohibit and unless the activities complained of are enjoined, Plaintiffs will continue to suffer injury for which there is no adequate remedy at law.

## COUNT IV

**Conspiracy to Monopolize in Violation of 15 U.S.C. § 2**
**(On Behalf of Plaintiff Kissing Camels Against Centura)**

83.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 82 as though set forth herein.

84.    Centura has conspired to acquire or maintaina monopoly in the market for surgical procedures that do not require hospitalization in the Colorado Springs market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  This offense is likely to continue to recur unless the relief requested is granted.

85.    For the purpose, and the actual effect, of maintaining, extending and exercising its monopoly in the Colorado Springs market, Centura, along with its co-conspirators, threatened and intimidated health insurers and healthcare providers who utilize Plaintiffs' facilities and, in fact, took other actions designed to put the Plaintiffs facilities out of business.

86.    Centura's acts and practices and Centura's continuing course of conduct have harmed consumers and competition in the Colorado Springs market for surgical services not requiring hospitalization.

87.    Centura's anticompetitive, exclusionary and coercive conduct has directly and proximately caused injured to Plaintiffs of a type the antitrust laws are intended to prohibit and unless the activities complained of are enjoined, Plaintiffs will continue to suffer injury for which there is no adequate remedy at law.

## COUNT V

**Attempted Monopolization in Violation of 15 U.S.C. § 2**
**(On Behalf of Plaintiff Kissing Camels Against Centura**

88.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 87 as though set forth herein.

89.    Centura has willfully attempted to monopolize the Colorado Springs Market for surgical services not requiring hospitalization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  This offense is likely to continue or recur unless the relief requested is granted.

90.    With the specific intent and the dangerous probability of monopolizing the acute care hospital market in Colorado Springs, Centura, along with its co-conspirators, threatened and intimidated health insurers and healthcare providers who utilize Plaintiffs' facilities and, in fact, took other actions designed to drive the Plaintiffs facilities out of business.

91.    Centura's acts and practices and Centura's continuing course of conduct have harmed consumers and competition in the Colorado Springs market for surgical services not requiring hospitalization.

92.    Centura's anticompetitive, exclusionary and coercive conduct has directly and proximately caused injured to Plaintiffs of a type the antitrust laws are intended to prohibit and unless the activities complained of are enjoined, Plaintiffs will continue to suffer injury for which there is no adequate remedy at law.

## COUNT VI

### Contract, Combination, or Conspiracy in Restraint of Trade
### in Violation of Colorado Antitrust Act
### (On Behalf of All Plaintiffs Against All Defendants)

93.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 92 as though set forth herein.

94.     The agreement among the Defendants and their co-conspirators to attempt to put Plaintiffs out of business through a variety of anticompetitive means represents a contract, combination, or conspiracy in restraint of trade within the meaning of Colorado Revised Statutes 6-4-104.

95.     As a direct and proximate result of Defendants' continuing violations of the Colorado Antitrust Act, Plaintiffs have suffered and continue to suffer injury and damages of the type that the federal antitrust laws were designed to prevent. Such injury flows directly from that which makes Defendants' conduct unlawful.  These damages consist of having been paid lower rates, having fewer surgeries performed at the facility, otherwise having business diverted to competitors who were part of the agreement, and/or having access to far fewer patients than they would have with fair competition and but for the Defendants' anticompetitive agreements.

96.     Plaintiffs seek money damages from Defendants for their violations of the Colorado Antitrust Act.

97.     The Defendants' unlawful conduct threatens to continue to injure Plaintiffs. Plaintiffs seek a permanent injunction prohibiting Defendants from entering into, or from honoring or enforcing, any agreements or conspiracies that have been entered into in restraint of trade.

## COUNT VII
### Conspiracy to Monopolize in Violation of C.R.S. 6-4-105
### (On Behalf of Arapahoe, Cherry Creek and Hampden Against HealthOne and Centura)

98.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 97 as though set forth herein.

99.     HealthOne and Centura have willfully and wrongfully conspired to monopolize the market for surgery procedures that do not require hospitalization in the Metro Denver market in violation of C.R.S. 6-4-105.   This offense is likely to continue to recur unless the relief requested is granted.

100.     For the purpose, and the actual effect, of maintaining, extending and exercising its monopoly in the metro Denver market, HealthOne and Centura, along with their co-conspirators, threatened and intimidated healthcare providers who utilize Plaintiffs' facilities and, in fact, took other actions designed to drive the Plaintiffs out of business.

101.     HealthOne's and Centura's acts and practices and their continuing course of conduct have harmed consumers and competition in the Metro Denver market for surgical services not requiring hospitalization.

102.     HealthOne's and Centura's anticompetitive, exclusionary and coercive conduct have directly and proximately caused injured to Plaintiffs of a type the antitrust laws are intended to prohibit and unless the activities complained of are enjoined, Plaintiffs will continue to suffer injury for which there is no adequate remedy at law.

## COUNT VIII

**Attempted Monopolization in Violation of C.R.S. 6-4-105**
**(On Behalf of Arapahoe, Cherry Creek and Hampden Against HealthOne and Centura)**

103.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 102 as though set forth herein.

104.     HealthOne has willfully attempted to monopolize the Metro Denver Market for surgical services not requiring hospitalization in violation of C.R.S. 6-4-105.   This offense is likely to continue or recur unless the relief requested is granted.

27

105.    With the specific intent and the dangerous probability of monopolizing the acute care hospital market in Metro Denver, HealthOne, along with its co-conspirators, threatened and intimidated healthcare providers who utilize Plaintiffs' facilities and, in fact, took other actions designed to drive the Plaintiffs facilities out of business.

106.    HealthOne's acts and practices and HealthOne's continuing course of conduct have harmed consumers and competition in the Metro Denver market for surgical services not requiring hospitalization.

107.    HealthOne's anticompetitive, exclusionary and coercive conduct has directly and proximately caused injured to Plaintiffs of a type the antitrust laws are intended to prohibit and unless the activities complained of are enjoined, Plaintiffs will continue to suffer injury for which there is no adequate remedy at law.

<u>COUNT IX</u>

**Conspiracy to Monopolize in Violation of C.R.S. 6-4-105
(On Behalf of Kissing Camels Against Centura)**

108.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 107 as though set forth herein.

109.    Centura has conspired to acquire or maintain a monopoly in the market for surgical procedures that do not require hospitalization in the Colorado Springs market in violation of C.R.S. 6-4-105.  This offense is likely to continue to recur unless the relief requested is granted.

110.    For the purpose, and the actual effect, of maintaining, extending and exercising its monopoly in the Colorado Springs market, Centura, along with its co-conspirators, threatened

and intimidated healthcare providers who utilize Plaintiffs' facilities and, in fact, took other actions designed to drive the Plaintiffs facilities out of business.

111.    Centura's acts and practices and Centura's continuing course of conduct have harmed consumers and competition in the Colorado Springs market for surgical services not requiring hospitalization.

112.    Centura's anticompetitive, exclusionary and coercive conduct has directly and proximately caused injured to Plaintiffs of a type the antitrust laws are intended to prohibit and unless the activities complained of are enjoined, Plaintiffs will continue to suffer injury for which there is no adequate remedy at law.

## COUNT X

### Attempted Monopolization in Violation of C.R.S. 6-4-105
### (On Behalf of Kissing Camels Against Centura)

113.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 112 as though set forth herein.

114.    Centura has willfully attempted to monopolize the Colorado Springs Market for surgical services not requiring hospitalization in violation of C.R.S. 6-4-105. This offense is likely to continue or recur unless the relief requested is granted.

115.    With the specific intent and the dangerous probability of monopolizing the market for surgical services not requiring hospitalization in Colorado Springs, market, Centura, along with its co-conspirators, threatened and intimidated healthcare providers who utilize Plaintiffs' facilities and, in fact, took other actions designed to drive the Plaintiffs facilities out of business.

116.    Centura's acts and practices and Centura's continuing course of conduct have harmed consumers and competition in the Colorado Springs market for surgical services not requiring hospitalization.

117.    Centura's anticompetitive, exclusionary and coercive conduct has directly and proximately caused injured to Plaintiffs of a type the antitrust laws are intended to prohibit and unless the activities complained of are enjoined, Plaintiffs will continue to suffer injury for which there is no adequate remedy at law.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that this Court:

a.      Adjudge and decree that Defendants have violated Section 1 of the Sherman Act;

b.      Adjudge and decree that Centura has violated Section 2 of the Sherman Act;

c.      Adjudge and decree that HealthOne/HCA has violated Section 2 of the Sherman Act;

d.      Adjudge and decree that Defendants have violated C.R.S. 6-4-104 and 105.

e.      Permanently enjoin Defendants from entering into, or from honoring or enforcing, any agreements to limit competition in the market for surgical services not requiring hospitalization;

f.      Award Plaintiffs damages in the form of three times the amount of damages suffered by Plaintiffs as proven at trial;

g.      Award costs, expert fees and attorneys' fees to Plaintiff;

h.      For a trial by jury; and

i.      Award any such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury on all issues.

Date:  November 15, 2012                    Respectfully submitted,

                                            Joe R. Whatley, Jr.
                                            Colorado State Bar No. 38820
                                            WHATLEY KALLAS, LLC
                                            201 North Mill Street
                                            Aspen, CO  81611
                                            Tel:800-695-6750
                                            Fax: 800-922-4851

                                            Edith M. Kallas
                                            WHATLEY KALLAS, LLC
                                            380 Madison Avenue, 23rd Floor
                                            New York, NY  10017
                                            Tel: 212-447-7060
                                            Fax: 800-922-4851

                                            W. Tucker Brown
                                            WHATLEY KALLAS, LLC
                                            2001 Park Place Tower, Suite 1000
                                            Birmingham, AL  35203
                                            Tel: 205-488-1200
                                            Fax: 800-922-4851

                                            Deborah J. Winegard
                                            WHATLEY KALLAS, LLC
                                            1068 Virginia Avenue, NE
                                            Atlanta, GA  30306
                                            Tel: 404-607-8222
                                            Fax: 404-607-8451