**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-3012-WJM-BNB

KISSING CAMELS SURGERY CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC,
ARAPAHOE SURGERY CENTER, LLC, and
HAMPDEN SURGERY CENTER, LLC,

    Plaintiff,

v.

HCA INC.,
HCA - HEALTHONE LLC,
CENTURA HEALTH CORPORATION,
COLORADO AMBULATORY SURGERY CENTER ASSOCIATION, INC., and
KAISER FOUNDATION HEALTH PLAN OF COLORADO,

    Defendants.

---

**ORDER DENYING DEFENDANT CENTURA HEALTH
CORPORATION'S MOTION FOR CONSIDERATION OF RECUSAL**

---

This matter is before the Court on Defendant Centura Health Corporation's ("Centura Health") Motion for Consideration of Recusal (ECF No. 36) (the "Motion"). Plaintiffs have filed a response in opposition to the Motion (ECF No. 37). For the reasons that follow, I deny the Motion.

**Basis for the Motion**

In large part, the Motion is predicated on my decision to *sua sponte* recuse myself as the Presiding Judge in two cases previously filed in the District of Colorado: *Jane Doe v. Catholic Health Initiatives Colorado*, *a Colorado non-profit corporation, d/b/a Centura Health-Penrose Hospital,* Civil Action No. 12-cv-00165, and *Jane Roe v.*

*Catholic Health Initiatives Colorado, a Colorado nonprofit corporation, d/b/a Centura Health-Penrose Hospital*, No. 11-cv-02179.  As Centura Health correctly points out, in each of those Orders of Recusal, I concluded that I had regular continuous dealings with an executive of Catholic Health Initiatives Colorado ("Catholic Health") sufficient to be construed as an ongoing relationship, such that "a reasonable person would harbor doubts about my impartiality."  Motion at 1.  As a result, I recused myself in each of those earlier cases, pursuant to 28 U.S.C. § 455(a).

Moreover, in its Motion, Centura Health brings to my attention the fact that the defendant in those two previously-filed actions, Catholic Health, "is one of the two sponsoring organizations of Centura Health Corporation. Catholic Health Initiatives Colorado has a 70% interest, as a sponsoring organization, in Centura Health Corporation."  *Id.* at 2.  Centura Health also points out that Catholic Health does business as Centura Health-Penrose Hospital, and that claims in this case "make specific reference to Penrose Hospital and arose during the same time frame as the claims in those cases, when the same executive leadership was in place at Centura [Health] and Catholic Health[.]"  *Id.*

**Analysis**

Section 455(a) of Title 28 of the United States Code states that "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  A United States judge must recuse himself or herself when there is an appearance of bias, regardless of whether there is actual bias.  *Nichols v. Alley*, 71 F.3d 347, 350 (10th Cir. 1995).  The test is whether a reasonable person, knowing all the relevant facts, would harbor doubts

about the judge's impartiality.  *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).

To allow all parties and the public to assess the nature of the referenced relationship, I will now disclose the particulars of the relationship.  To the best of my knowledge, Dr. Kenneth B. Kashkin has, since mid-2011, been and to date remains President and CEO of Catholic Health.  Since July 1, 2011 Dr. Kashkin and I have had a landlord-tenant relationship, as Dr. Kashkin and his wife are tenants of mine, residing in property of which I am the owner.  This landlord-tenant relationship will terminate no later than June 30, 2013, and may well terminate as early as March 31, 2013.  Apart from being landlord-tenant, Dr. and Ms. Kashkin and I have no other personal or social relationship, and certainly not one which will survive the termination of their lease with me later this year.

In its response to the Motion (the "Response"), Plaintiffs accurately point out that, unlike in the two previously-filed actions, Catholic Health is not a party to this action, and only maintains a "sponsorship interest" in Defendant Centura Health.  Response at 2.  It is far from clear to me the precise nature or form of this "sponsorship interest" which Catholic Health has in Centura Health.  Nor is it in anyway apparent to me what legal significance or factual import, if any, I should ascribe to this "sponsorship" relationship between these two entities.  What I can easily conclude in these circumstances, however, is that *if* such a relationship was particularly material or significant to the legal analysis of the issues raised in the Motion, that Centura Health would certainly not have spared whatever additional effort was required to apprise me of the exact contours and legal significance of this relationship.

Since no such effort was expended, I conclude that all that is material or relevant

to my analysis here has been touched upon by Centura Health in its Motion.  My conclusion in this regard is amply buttressed by the fact that, whatever is the actual nature and significance of the relationship between Defendant Centura Health and non-party Catholic Health, that relationship was not substantial enough to have been noted by Centura Health on its corporate disclosure form to this Court (ECF No. 11).  I find that all of these facts are relevant factors in the determination of the necessity of my recusal in this action. *See, TV Communications Network, Inc. v. ESPN, Inc.,* 767 F. Supp. 1077, 1079 (D. Colo. 1991)*, citing Lexalt v. McClatchy,* 602 F. Supp. 214, 217 (D. Nev. 1985)*.*

This Court has previously acknowledged that which should by now be self-evident – that when considering the level of a judge's interest in an action for purposes of evaluating the need *vel non* for recusal – it must be kept firmly in mind that "[a] judge is not expected to live in isolation. Through the years, he is bound to have developed many business and personal contacts in the community, and to have acquired supporters and critics."  *TV Communications Network,* 767 F. Supp. at 1079.

In my view it necessarily follows that the mere existence of some type of relationship – without more – does not perforce create an appearance of bias sufficient to require a judge's recusal.  Clearly, the nature, duration and intimacy of that relationship must be carefully assessed, both in the abstract as well as in the context of the specific claims and defenses asserted in the case at issue.

Here, the nature of my relationship with Dr. Kashkin is purely one of an arms-length contractual relationship.  And while the landlord-tenant relationship I have with Dr. Kashkin might reasonably cause a disinterested person to conclude that I have a

vested interest in his financial well being, I find that that factor is considerably outweighed by three other considerations which obtain in this dispute: First, apart from the contractual relationship I've just described, I have no personal or social relationship with Dr. Kashkin.  Second, the subject contractual relationship will be terminated in at most five months from now, with the possibility that it could conclude as soon as 65 days from today.  Finally, facts being stubborn things, the fact remains that Catholic Health is *not* a party to this action.  Thus, whatever one can say of the contractual relationship I have with Dr. Kashkin, it must be viewed in light of the fact that this relationship is with a person who is not a party to this litigation.

## Conclusion

For the foregoing reasons, I find that in the circumstances of the instant action, no reasonably objective person could conclude that my contractual relationship with the President and CEO of non-party Catholic Health raises an appearance of bias on my part. Accordingly, the Motion is DENIED.

Dated this 25th day of January, 2013.

BY THE COURT:

_____
William J. Martínez
United States District Judge