FILED
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
11:01 am, Apr 03, 2013
**JEFFREY P. COLWELL, CLERK**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-03012-WJM-BNB

KISSING CAMELS SURGERY CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC,
ARAPAHOE SURGERY CENTER, LLC, and
HAMPDEN SURGERY CENTER, LLC,

       Plaintiffs,

v.

HCA, INC.,
HCA-HEALTHONE LLC,
CENTURA HEALTH CORPORATION,
COLORDO AMBULATORY SURGERY CENTER ASSOCIATION, INC.,
KAISER FOUNDATION HEALTH PLAN OF COLORADO,
ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC, d/b/a ANTHEM BLUE CROSS
 AND BLUE SHIELD OF COLORADO,
UNITEDHEALTHCARE OF COLORADO, INC.,
AUDUBON AMBULATORY SURGERY CENTER, LLC, and
AETNA, INC.,

       Defendants.

---

## FIRST AMENDED COMPLAINT

---

      Plaintiffs, Kissing Camels Surgery Center LLC, Cherry Creek Surgery Center, LLC, Arapahoe Surgery Center, LLC and Hampden Surgery Center, LLC (collectively the "Plaintiffs" or the "Facility Plaintiffs") bring this action alleging violations of Section 1 and Section 2 of the Sherman Antitrust Act and violations of the Colorado Antitrust Act, against Defendants HCA, Inc., HCA-HealthONE, LLC, Centura Health Corporation, Colorado Ambulatory Surgery Center Association, Inc. (CASCA"), Kaiser Foundation Health Plan of Colorado ("Kaiser"), Aetna, Inc. ("Aetna"), Rocky Mountain Hospital and

Medical Service, Inc. d/b/a Anthem Blue Cross and Blue Shield of Colorado ("Anthem"), UnitedHealthcare of Colorado, Inc. ("United"), and Audubon Ambulatory Surgery Center, LLC ("Audubon"), and their various subsidiaries and divisions, as described below, (collectively, "Defendants"), as part of this Complaint.

1.      This case is brought by four ambulatory surgery centers ("ASCs") that provide services to patients in a more efficient, less expensive and more effective manner than hospitals that traditionally provided those services.   The Defendants include the two most dominant private hospital systems in the State of Colorado.   The Defendant hospitals have significant market power in the Denver and Colorado Springs geographic areas included in this complaint.   As those Defendants realized that they could not compete fairly in the marketplace with Plaintiffs, those Defendants have abused their market power in an effort to put the Plaintiffs out of business.   Those Defendants have conspired with each other and other co-conspirators and they have gained control over the Defendant Association that is supposed to represent the interests of the Plaintiffs and brought that Association into the conspiracy.   Finally, they have used their market power and brought Defendants Kaiser, Anthem, United, and Aetna and other co-conspirators into the conspiracy.   As part of the conspiracy, the other Defendants agreed that Kaiser should not to sign a contract that it had negotiated with one of the Plaintiffs, and that Anthem and Aetna should take other actions designed to hurt the businesses of the Plaintiffs.   The Defendant hospitals have used their market power to influence other health insurance companies that do business in

Colorado.  The result is that the Plaintiffs and the patients they serve have been and are being damaged.

## PARTIES

**PLAINTIFFS**

2.      Plaintiff Kissing Camels Surgery Center LLC is a Colorado limited liability company with its principal place of business in Colorado Springs, Colorado.  Plaintiff Kissing Camels was licensed to do business on June 14, 2010.  It has suffered and in all likelihood will continue to suffer antitrust injuries as a result of Defendants' anticompetitive activities and agreements in restraints of trade, including but not limited to decreased utilization and/or decreased revenues.

3.      Cherry Creek Surgery Center LLC is a Colorado limited liability company with its principal place of business in Denver, Colorado.  Plaintiff Cherry Creek was licensed to do business on June 21, 2012.  It has suffered and in all likelihood will continue to suffer antitrust injury as a result of Defendants' anticompetitive activities and agreements in restraints of trade, including but not limited to decreased utilization and/or decreased revenues.

4.      Hampden Surgery Center LLC is a Colorado limited liability company with its principal place of business in Denver, Colorado.  Plaintiff Hampden was licensed to do business on September 19, 2012.  It has suffered and in all likelihood will continue to suffer antitrust injury as a result of Defendants' anticompetitive activities and agreements in restraints of trade, including but not limited to decreased utilization and/or decreased revenues.

5.      Arapahoe Surgery Center, LLC d/b/a SurgCenter on Dry Creek is a Colorado limited liability company with its principal place of business in Englewood, Colorado.  Plaintiff Arapahoe was licensed to do business on April 12, 2010.  It has suffered and in all likelihood will continue to suffer antitrust injury as a result of Defendants' anticompetitive activities and agreements in restraints of trade, including but not limited to decreased utilization and/or decreased revenues.

**DEFENDANTS**

6.      Defendant HCA, Inc. is a corporation organized and existing pursuant to the laws of the state of Tennessee, with its principal place of business at One Park Plaza, Nashville, TN, 37203.  HCA owns more hospitals than any other entity in the country.  According to its website, HCA is the nation's leading provider of healthcare services, a company comprised of locally managed facilities that includes about 163 hospitals and 110 freestanding surgery centers in 20 states and England and employing approximately 199,000 people.   Defendant HCA owns Defendant HCA-HealthONE, LLC, which in turn owns a one of the largest systems of hospitals and surgery centers in Colorado.   These Defendants are collectively referred to as "HealthONE/HCA" or "HealthONE" in this complaint.  The HealthONE system includes: The Medical Center of Aurora; North Suburban Medical Center and the NorthEast ER; Presbyterian/St. Luke's Medical Center & Rocky Mountain Hospital for Children; Rose Medical Center; Sky Ridge Medical Center; Swedish Medical Center; Spalding Rehabilitation Hospital; Centennial Medical Plaza (affiliated with The Medical Center of Aurora); Swedish Southwest ER (affiliated with Swedish Medical Center); and 14 ambulatory surgical

centers   (Surgery Center of the Rockies, Centennial Medical Plaza, Lowry Surgery Center , Midtown Surgical Center, Rose Surgical Center, Urology Surgery Center of Colorado, Rocky Mountain Surgery Center, Red Rocks Surgery Center, Centrum Surgical Center, Sky Ridge Surgical Center, Ridge View Endoscopy Center, Lincoln Surgery Center, Musculoskeletal Surgical Center, North Suburban Surgery Center, Clear Creek Surgery Center).

7. Defendant Centura Health Corporation ("Centura") is a Colorado nonprofit corporation whose principal place of business is in Englewood, CO. Centura was formed in 1996 by Adventist Health System and Catholic Health Initiatives. According to its website, Centura operates Colorado's largest hospital and health care network and the state's largest trauma network. According to its website, Centura provides care to over 500,000 patients a year through its health care network, which includes 13 hospitals, 11 ambulatory surgery centers, seven senior living communities, six diagnostic imaging services, several medical clinics, Flight for Life® Colorado, and home care and hospice services  The hospitals in the Centura system include Avista Adventist Hospital, Littleton Adventist Hospital, OrthoColorado Hospital, Parker Adventist Hospital, Porter Adventist Hospital, St. Anthony Adventist Hospital, St. Anthony North Hospital, Penrose Hospital, and St. Francis Medical Center. The freestanding ambulatory surgery centers in the Centura system include Hand Surgery of Colorado, Summit View Surgery Center at Littleton Adventist Hospital, Flatirons Surgery Center, Golden Ridge Surgery Center, Crown Point Surgery Center, Harvard Park Surgery Center, Endoscopy Center at Porter, Audubon Surgery Center and Sisters

Grove Pavilion at St. Francis.  The following hospitals and surgery centers are located in the Colorado Springs geographic market:  Penrose Hospital, St. Francis Medical Center, the Audubon Surgery Center and Audubon Sisters Grove Pavilion at St. Francis Medical Center.  The following hospitals and surgery centers are located in the Denver Metropolitan geographic market: Avista Adventist Hospital, Littleton Adventist Hospital, OrthoColorado Hospital, Parker Adventist Hospital, Porter Adventist Hospital, St. Anthony Adventist Hospital, and St. Anthony North Hospital, Hand Surgery of Colorado, Summit View Surgery Center at Littleton Adventist Hospital, Flatirons Surgery Center, Golden Ridge Surgery Center, Crown Point Surgery Center, Harvard Park Surgery Center, and Endoscopy Center at Porter.

8.      Defendant Colorado Ambulatory Surgical Center Association ("CASCA"), 3333 S. Bannock St. #400, Englewood, CO 80110.   CASCA currently purports to represent ambulatory surgery centers across the state of Colorado.  As alleged below, CASCA is dominated by its hospital members led by Defendants HealthONE and Centura.

9.      Defendant Kaiser Foundation Health Plan of Colorado ("Kaiser") is a Colorado company with headquarters in Denver, Colorado.  According to its website, Kaiser has more than 500,000 members in Colorado.

10.     Defendant "Aetna" includes a number of affiliated companies including Aetna Health Inc. PA, Corp., Aetna Life Insurance Company, Aetna Health, Inc., Aetna Health Insurance Company, offers, insures, underwrites and administers commercial health benefits.  Aetna had over 22,000 members in Colorado in 2011 according to

regulatory filings.   Aetna is a Pennsylvania corporation with its principal place of business located at 151 Farmington Avenue, Hartford, CT 06156.

11.     Defendant Rocky Mountain Hospital and Medical Service, Inc.  d/b/a as Anthem Blue Cross Blue Shield of Colorado (hereinafter "Anthem") is based at 700 Broadway, Denver, CO 80203.   Anthem offers, insures, underwrites and administers commercial health benefits in Colorado.   Anthem has over 500,000 members in Colorado.

12.     Defendant UnitedHealthcare of Colorado, Inc., ("United") is a Colorado Corporation with its headquarters located at 6465 South Greenwood Plaza Blvd, Suite 300, Centennial, CO 80111.   United offers, insures, underwrites, and administers commercial health insurance benefits.   United reportedly holds the largest share of the health insurance market in Colorado with a 26.37% market share as of 2011.

13.     Defendant Audubon Ambulatory Surgery Center, LLC, ("Audubon") is a Colorado limited liability company with its principal place of business at 3030 North Circle Drive, Colorado Springs, CO 80909.   According to its website, Audubon is a joint venture between Penrose St Francis Health Services (a Centura Hospital) and several local physicians.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that most of the claims asserted herein are brought under federal statutes and necessarily involve adjudication of one or more federal questions.   For Plaintiffs' Sherman Act claims, jurisdiction arises under 28 U.S.C. § 1331 and 28 U.S.C.

§ 1337.  This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367.

15.     This Court has personal jurisdiction over the parties because Plaintiffs submit to the jurisdiction of this Court, and each Defendant systematically and continuously conducts business in this State, and otherwise has minimum contacts with this State sufficient to establish personal jurisdiction over each of them.

16.     Venue is appropriately established in this Court under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims occurred in this District.

**FACTUAL ALLEGATIONS**

**INTRODUCTION**

17.     The Plaintiffs are four ASCs which offer patients not requiring admission to a hospital for their treatment an important alternative to treatment in a hospital. Historically, the treatments performed at the ASCs were performed in hospitals. Hospitals generally require large amounts of capital expenditures and employ significant staffs, both of which result in costs that are allocated across all procedures performed at the hospitals.  As healthcare costs in this country increased, ASCs developed as an alternative to hospitals and provided comparable procedures at lower costs.  While the Defendant hospital systems have formed surgery centers, those hospital systems have an inherent conflict of interest to direct as many patients as possible to the hospitals where the Defendants are paid more for the services in order for the hospitals to cover their significant costs.  In fact, through their relationships with doctors and otherwise,

hospitals have the ability to direct many patients to the site where they will receive their procedures. Moreover, the ASCs established by Defendants cannot compete with the Plaintiffs in a fair and open market. The Plaintiff centers are modern and efficient, certified by the Centers for Medicare and Medicaid Services, and accredited by The Accreditation Association for Ambulatory Health Care. A group of board certified physicians, many of whom have been nationally recognized, perform procedures at the centers. The treatments performed at the centers are less likely to result in infection than if similar procedures were performed in hospitals. The treatments performed at the centers are almost always less expensive than similar procedures performed at hospitals. Patients can schedule procedures at the centers with more flexibility than if they were scheduling similar procedures at hospitals, where surgeons must compete with longer, less predictable and emergency surgery procedures. Patients find that they have fewer cancelled and/or delayed procedures when they come to the centers. In general, patients find more convenience such as closer parking and shorter wait times when they have procedures at the centers instead of at hospitals such as the Defendants in this action. As an example of lower prices charged by and paid to ASCs, Medicare pays $1,332.19 for carpal tunnel surgery when performed in a hospital in Colorado, but pays only $762.31 when that same surgery is performed in a free-standing ASC in Colorado. As a further example, Medicare pays $4,246.76 for reconstruction of a wrist joint when that surgery is performed in a hospital, but pays only $2,457.95 when that same surgery is performed in a free-standing ASC.

18.    As a result of all these factors and others, the Plaintiffs provide an important alternative for their patients, who are consumers of healthcare, and the Plaintiffs increase consumer welfare.  Also as a result of these factors and others, the Defendant hospitals have been unable to compete with Plaintiffs with respect to surgical procedures that can be performed without the necessity of hospitalization.  Defendants have experienced an increasing number of patients exercising their rights to make their own healthcare decisions by choosing these lower cost, more efficient, and generally safer facilities.  As such, the Defendants have resorted to the concerted activity and anticompetitive practices alleged in this complaint.

## MARKET DEFINITION

19.    The Relevant Product Market for the claims in this case is the market for surgical services or procedures which do not require hospitalization.  A linked and related Product Market is the Market for hospital services.  A reason that these markets are linked or related is that the services or procedures performed at ASCs can also be performed at hospitals, although at higher costs.   A third product market that is related to the claims in this case is the market for health benefits or insurance.  The networks of health insurance companies must include dominant hospital systems like those of the Defendants HealthONE and Centura.  As a result, those Defendants have significant market power that they can exercise in dealing with health insurance companies like Kaiser, Aetna, Cigna, United, Anthem, and the other health insurance companies doing business in Colorado.

20.    The Relevant Geographic Markets are the Metro Denver, Colorado market and the Colorado Springs, Colorado market.

21.    Barriers to entry for each of these markets are high.

## INTERSTATE COMMERCE

22.    The activities of the Defendants that are the subject of this Complaint are within the flow of, and have substantially affected, interstate trade and commerce.

23.    Communications between Defendant employees often occurred through interstate communications.

## HEALTHONE

24.    According to its website, HealthONE/HCA is "the largest health care system in the metro Denver area with more than 9,000 employees and 3,000 affiliated physicians.  HealthONE hospitals have a long and trusted legacy going back more than 130 years with St. Luke's, more than 85 years with Presbyterian Denver, more than 105 years with Swedish and more than 60 years with Rose."

25.    The current HealthONE system was created in 1995 as a Colorado company and a joint venture between The Colorado Health Foundation and various affiliates of HCA.  The Foundation grew to the second largest charitable foundation in the state and in October 2011 sold its share in HealthONE to HCA.

26.    The HealthONE system includes: The Medical Center of Aurora; North Suburban Medical Center and the NorthEast ER; Presbyterian/St. Luke's Medical Center & Rocky Mountain Hospital for Children; Rose Medical Center; Sky Ridge Medical Center; Swedish Medical Center; Spalding Rehabilitation Hospital; Centennial

Medical Plaza (affiliated with The Medical Center of Aurora); Swedish Southwest ER (affiliated with Swedish Medical Center); 14 stand-alone ambulatory surgery centers; 8 occupational medicine & rehabilitation clinics; dozens of specialty clinics; two radiation oncology centers; and AIRLIFE-DENVER, which provides critical care air and ground transportation across an eight-state region.

27.     The 14 stand-alone ambulatory surgery centers operated by HealthONE in the Metro Denver area compete with the Cherry Creek, Arapahoe and Hampden Surgery Centers in the Metro Denver ambulatory surgery market.   In addition, HealthONE as a hospital system competes with the Plaintiffs in that many services provided by Plaintiffs are also provided at hospitals on a less efficient basis.

28.     Various reports suggest that HealthONE has a significant percentage of the hospital market in the Metro Denver area, and a significant percentage of the market for surgical services that do not require hospitalization in the Metropolitan Denver market.  In both of those markets, HealthONE has market power.

29.     As a result of HealthONE's market share, it enjoys a high operating profit margin.  *See, e.g.,*  Project for Strategic Health Care Purchasing, a study for Colorado for Health Care, SKY HIGH HEALTH CARE COSTS IN THE MILE HIGH CITY, at 9 (September 2005).

30.     According to that same study, the average hospital operating margin in the United States in 2003 was only 4%. *Id.*  Based on 2003 government data, HealthONE's operating margin was 29%. *Id.*  In the local market, HealthONE's operating margin in 2003 ranged from nearly 2.5 times higher to almost five times higher than the operating

margins of its major hospital services competitors. *Id.*  The ability to command prices significantly above market rates demonstrates HealthONE's market power in the Metro Denver market.

31.     As at least one Colorado health insurer, United,  has previously pointed out, HealthONE's hospitals demand higher rates than its competitor facilities and higher than the Plaintiff facilities.

32.     According to HealthONE's RFP response last year in bidding to purchase Memorial Hospital in Colorado Springs, "HealthONE currently contracts with every major health insurer and many smaller payers in Colorado and expects to continue to do so. HCA and HealthONE have great relationships with these insurers."

33.     Based on information and belief, Plaintiffs allege that on numerous occasions over a long period of time, Defendants HealthONE and Centura have attempted to use their market power to convince health insurance companies not to contract with independent surgery centers and others that compete in their market.  For example, there was a Dry Creek Surgery Center that is not related to the Plaintiffs in this action.  Based on information and belief, Plaintiffs allege that because of pressure by one or more of the Defendant Hospitals, many health insurance companies refused to put the previous Dry Creek in network and that surgery center then went out of business.  Based on information and belief, Plaintiffs also allege that one or both of the Defendant hospitals have opposed other efforts by physicians to establish facilities that compete with the hospitals owned by Defendants.

34.    The Defendant Hospitals are in a position to put significant pressure on health insurance companies operating in their market because it is necessary for the Hospitals to be in the networks of the health insurance companies.  The market power of Defendant HealthONE was specifically recognized by UnitedHealthcare, the largest health insurer in Colorado, when it brought antitrust claims against HealthONE and then dismissed those claims when HealthONE agreed to return to United's network.

35.    HealthONE has made clear that it is antagonistic to the competition it is facing from the Plaintiff facilities in a number of different ways.

36.    In January of 2012, counsel for a number of surgery centers operated by HealthONE (including Sky Ridge Surgery Center and Rose Surgery Center) threatened to file suit against SurgCenter at Dry Creek (Arapahoe) and SurgCenter Development, Inc. for what it claimed were unfair business practices related to copays and deductibles.  In its letter, these facilities noted in the midst of their threats of legal action that they wanted to preserve an "open and honest competitive marketplace for ambulatory surgical services."  Further, counsel for the HealthONE facilities noted that no legal confrontation was sought if all participants abide by rules of fair play and elect to compete on a level field untainted by marginal or illegal business practices.  In fact, the letter was written while HealthONE was not engaging in open and honest competition but when it was abusing its market power.

37.    Despite the above, the letter claimed that the HealthONE entities would file suit against the Plaintiffs if they did not change their billing and collection services to

be less competitive with HealthONE, and to increase costs collected from Plaintiff's patients.

## CENTURA

38.     According to its website, Centura provides care to over 500,000 patients a year through its health care network, which includes 13 hospitals, 11 ambulatory surgery centers, seven senior living communities, six diagnostic imaging services, several medical clinics, Flight for Life® Colorado, and home care and hospice services.

39.     The hospitals in the Centura system include seven in the Denver metropolitan area:   Avista Adventist Hospital, Littleton Adventist Hospital, OrthoColorado Hospital, Parker Adventist Hospital, Porter Adventist Hospital, St. Anthony Adventist Hospital, and St. Anthony North Hospital.   These hospitals provide services which compete with services provided by Plaintiffs Cherry Creek Surgery Center, Hampden Surgery Center, and Arapahoe Surgery Center.

40.     Centura also operates two hospitals in Colorado Springs: Penrose Hospital and St. Francis Medical Center.   These hospitals provide services which compete with services provided by Plaintiff Kissing Camels Surgery Center.

41.     According to data published by the American Hospital Directory, Centura has a significant percentage of the hospital market in Colorado Springs.   It also has a significant percentage of the market for surgical procedures that can be performed without hospitalization in Colorado Springs.   Centura has market power in both of these markets.

42.     The free-standing ambulatory surgery centers in the Centura system include seven in the Denver metropolitan area:  Hand Surgery of Colorado, Summit View Surgery Center at Littleton Adventist Hospital, Flatirons Surgery Center, Golden Ridge Surgery Center, Crown Point Surgery Center, Harvard Park Surgery Center, and Endoscopy Center at Porter.   These centers compete with Plaintiffs Cherry Creek Surgery Center, Hampden Surgery Center, and Arapahoe Surgery Center.

43.     The free-standing ambulatory surgery centers in the Centura system include two in Colorado Springs, Audubon Surgery Center and Sisters Grove Pavilion at St. Francis Medical Center.   These centers compete with Plaintiff Kissing Camels Surgery Center.

44.     Audubon Surgery Center is a Centura joint venture that upon information and belief is controlled by and acts for the benefit of Centura.

### COLORDO AMBULATORY SURGERY CENTER ASSOCIATION ("CASCA")

45.     While CASCA purports to represent the interest of ASCs, CASCA has become dominated by the Defendant hospital systems.   That domination is alleged more specifically below.  As a result of that domination, CASCA joined the conspiracy and provided the site for meetings that were involved in the conspiracy including the meeting of August 30, 2012.

### HEALTH PLAN DEFENDANTS

46.     Kaiser is a health insurance company doing business in Colorado.   At least as of the meeting of August 30, 2012, it had joined the conspiracy and then it refused to sign a network agreement that it had negotiated with Plaintiff Kissing Camels

and refused to authorize treatment of its members at Kissing Camels as a part of the conspiracy.

47.     Aetna is a health insurance company doing business in Colorado.  As a member of the conspiracy, Aetna has refused to negotiate a network agreement with the Plaintiffs and has routinely threatened healthcare providers who refer or utilize the Plaintiff facilities with termination from Aetna's preferred provider network.  Aetna participated in the August 30, 2012 meeting.

48.     Anthem is a health insurance company doing business in Colorado.  At least as of the meeting of August 30, 2012, it had joined the conspiracy and has refused to negotiate a network agreement with the Plaintiffs and has routinely threatened healthcare providers who refer or utilize the Plaintiff facilities with termination from Anthem's preferred provider network.

49.     United is a health insurance company doing business in Colorado.  As a member of the conspiracy, it has refused to negotiate a network agreement with the Plaintiffs, it has terminated physicians who refer patients to Plaintiff facilities and it has routinely threatened other healthcare providers who refer or utilize the Plaintiff facilities with termination from United's preferred provider network.  United participated in the August 30, 2012 meeting.

## DEFENDANTS' ABUSE OF THEIR MARKET POWER
## AND DEVELOPMENT OF THE CONSPIRACY

50.     Defendant HealthONE has market power in the market for surgical services that do not require hospitalization in the Denver Metropolitan area and in the hospital market in the Denver Metropolitan area.  Defendant Centura has market power

in the market for surgical services that do not require hospitalization in the Metro Denver area and in the hospital market in the Metro Denver area.  Collectively HealthONE and Centura have market power in the market for surgical services that do not require hospitalization in the Metro Denver area and in the hospital market in the Metro Denver area.  Defendant Centura has market power in the market for surgical services that do not require hospitalization in Colorado Springs and in the hospital market in Colorado Springs.

51.     As alleged above Plaintiffs Arapahoe and Kissing Camels began doing business in 2010.  Since that time, Defendants Centura and HealthONE have abused their market power in opposition to the Plaintiffs in various ways.

52.     First, these Defendants employ doctors and otherwise have relationships with doctors.   These Defendants have used these relationships to keep referral of surgery procedures away from the Plaintiffs.  Based on information and belief, Plaintiffs allege that the Defendant hospitals have encouraged doctors whom they employ and with whom they have other relationships not to refer patients to the Plaintiffs.

53.     Second, these Defendants have used their market power with health insurance companies that operate in Colorado to discourage them from entering into contracts with Plaintiffs and to encourage them to pay lower rates to doctors who do business with Plaintiffs.

54.     In fact, a number of meetings were held among various Defendants and other co-conspirators from 2010 to the present, culminating in a secret meeting on or about August 30, 2012 with CASCA in which all of the parties present once again

expressed their mutual desire to destroy the Plaintiffs' businesses.  While the August 2012 secret meeting was the final straw and the clearest example of the wrongdoing, the wrongful conduct and conspiracy undertaken by the Defendants started long before August of 2012.  The August meeting was simply one meeting among many; part of a longstanding and ongoing conspiracy among the Defendants.

55.    For example, starting in 2010 Defendant Centura met with   United repeatedly and asked that United take actions against doctors who referred business to Plaintiff Kissing Camels, and United took the actions requested by Centura.  Based on information and belief, Plaintiffs allege that Defendant Centura had similar meetings and communications with other health insurance companies and that Defendant HealthONE engaged in similar activities.

56.    The Defendants have made other efforts to prevent the Plaintiffs from starting their businesses and from remaining in business.  For example, ASCs are required to have transfer agreements with hospitals to assure that patients who require hospitalization due to unexpected emergencies receive adequate care.  On or about February 7, 2012 HealthONE refused to sign a transfer agreement with the Cherry Creek Surgery Center in an effort to prevent Cherry Creek from having an on-going business.  HealthONE refused to sign the agreement even though such an agreement is in the interest of a hospital because it increases the patient flow to a hospital.  HealthONE's refusal to sign the agreement was an abuse of its monopoly market power and an attempt to maintain that power.

57.     Likewise, in April 2010, Centura owned Penrose Hospital unilaterally cancelled its transfer agreement with Kissing Camels Surgery Center.     Centura cancelled the agreement even though such an agreement is in the interest of a hospital because it increases the patient flow to a hospital.  Penrose is the closest hospital to Kissing Camels and a number of the physicians who utilize Kissing Camels maintain medical staff privileges at Penrose.  Centura's refusal to sign the agreement was an abuse of its monopoly market power in Colorado Springs and an attempt to maintain that power.

58.     While the Defendants HealthONE and Centura damaged Plaintiffs through their abuse of their market power, when they were not successful in using their market power to force Plaintiffs out of business, they engaged in additional concerted activity to achieve the same end.  As part of its conspiracy with Centura and/or HealthONE, the major health plans in Colorado, including Defendants Kaiser, Anthem, United, and Aetna, have taken actions to pressure these facilities out of business.  One of the primary methods of putting Plaintiffs out of business was to attempt to dry up "referrals" to the Plaintiffs by physicians and other healthcare providers.

59.     Many of these health insurers sent notices to healthcare providers who performed surgeries or other procedures at the Plaintiffs' facilities threatening them with termination from provider networks, or other financial penalties, if they continued to perform those surgeries or procedures at the Plaintiffs' facilities.  Some of these healthcare providers were ultimately terminated from the health insurance networks. The Plaintiff facilities have lost patients and otherwise been harmed by these threats.

60.    United terminated from its networks a number of physicians and practices affiliated with the Plaintiffs' facilities.  For instance, United sent a letter dated December 16, 2011 to Dr. Steven Topper of Colorado Hand Center stating "United is exercising it's right to terminate the agreement effective May 1, 2012."   This letter followed a December 10, 2010 letter from United asserting that "your practice's referral of this member to Kissing Camels Surgery Center, an out-of-network surgery center, constitutes a material breach of our agreement."     These terminations were designed to deter referrals of patients and surgeries to these facilities.

61.    United has repeatedly threatened many other physicians and practices with termination from its networks if they continue to treat patients at the Plaintiff facilities.  In fact, United went one step further and threatened to terminate primary care physicians who referred patients to specialists who ultimately performed surgeries and procedures at the Plaintiffs' facilities.

62.    United has held meetings and otherwise corresponded with the other Defendants and co-conspirators regarding the Plaintiff facilities and has made extensive efforts to put the Plaintiff facilities out of business

63.    Beginning in at least May of 2012, and in furtherance of the conspiracy, Aetna threatened physicians associated with Kissing Camels Surgery Center and the Plaintiff facilities in Denver with termination from its provider network and/or with information posted on its provider website that the physicians regularly referred "patients to out-of-network providers, resulting in significantly higher out-of-pocket costs for your patient."

64.     Likewise, starting in at least October of 2011, and at the behest of its co-conspirators, Anthem began threatening physicians associated with Arapahoe Surgery Center and Kissing Camels Surgery Center.   In those letters, Anthem threatened termination of the Provider Agreements in the event the doctors did not "stop using Arapahoe or Kissing Camels Surgery Center… for all Anthem Blue Cross/Blue Shield and HMO Colorado members."

65.     One of the ways that Defendants HealthONE and Centura advanced their concerted activity was to gain control over Defendant CASCA.   HealthONE exerts a great deal of control over CASCA.   At least two HCA/HealthONE employees sit on the Board of CASCA, and HealthONE/HCA has routinely been a large sponsor of CASCA's meetings and activities.

66.     Centura exerts a great deal of control over CASCA through the Executive Director of Audubon Surgery Center, who also serves as an officer of CASCA.

67.     Defendants HealthONE and Centura have a close relationship with CASCA.   For example, they are the top (Diamond Level) sponsors of CASCA.   As the Plaintiffs have been successful in attracting and treating patients, CASCA, HealthONE, Centura and others have engaged in a concerted effort to put the Plaintiffs out of business.   Although some of the Plaintiffs have been members of CASCA and CASCA accepted their dues, CASCA has become a supporter of its top level members, the Defendant hospitals.

68.     CASCA has attempted to bring about actions detrimental to Plaintiffs.   For example, at the request of Defendants HealthONE and Centura, CASCA Executive

Director Rob Shwartz sent a letter to the Colorado Department of Regulatory Agencies noting concern that "no adverse action" had been taken against providers for waiving or discounting insurance copayments or deductibles.  The letter encouraged the state of Colorado to take action against the Plaintiff facilities.  In fact, the Plaintiffs do not generally waive copayments or deductibles.  The response from DORA noted that Colorado Medical Board staff had received no information that such a complaint had been filed in the last year and suggested  an open meeting with the Attorney General's office, the Colorado Medical Society and Colorado Hospital Association.  On information and belief, CASCA did not ask for such a meeting.

69.    When their initial efforts were not sufficiently successful, Defendants resorted to a blatant violation of the antitrust laws.  On or about August 30, 2012, Defendants, CASCA, HealthONE, and Centura held a meeting with the majority of the major health insurance companies in the Denver and Colorado Springs markets, at which these Defendants asked the health insurance companies, such as United, Anthem, Aetna, Humana, and Kaiser, to join them in a concerted boycott of the Plaintiffs.  Present at the meeting were representatives of Kaiser, Anthem, United, and Humana among others.  At the meeting on or about August 30, 2012, Centura and Audubon Surgery Center representatives asserted that Plaintiff facilities' billing and collection policies violated Colorado law and requested health insurers not to do business with Plaintiffs.  The clear intent behind this action is to drive Plaintiffs out of business.

70.     As a result of the meeting and the agreements reached with HealthONE, Centura, and CASCA a number of the health insurers, including Defendants Kaiser, United, Aetna and Anthem took actions designed to further their agreement to attempt to marginalize or put the Plaintiffs out of business.

71.     For instance, United terminated a number of physicians and practices affiliated with the Plaintiffs' facilities from its networks.   These terminations were designed to deter referrals of patients and surgeries and procedures to these facilities. United has threatened many other physicians and practices with termination if they continue to treat patients at the Plaintiff facilities and has threatened primary care physicians with termination if they continue to refer patients to surgeons who perform surgery at the Plaintiff facilities.   In fact, United went one step further and threatened to terminate primary care physicians who referred patients to specialists who ultimately performed surgeries and procedures at the Plaintiffs' facilities.

72.     On August 31, 2012, just one day after the secret meeting at CASCA and in furtherance of the agreement in restraint of trade, United sent a letter to Metro Denver Pain Management purporting to terminate that practice "for cause" on October 31, 2012 for "continued use of SurgCenter on Dry Creek [Arapahoe]."

73.     Anthem was also present at the August 30, 2012 meeting and has threatened practices affiliated with Kissing Camels, Arapahoe and Cherry Creek Surgery Centers with termination from their provider networks on the basis of their treatment of patients at those facilities.

74.     On August 31, 2012, just one day after the secret meeting at CASCA, Anthem sent correspondence to Colorado Orthopaedic Consultants, a practice which performed surgeries at Arapahoe SurgCenter, threatening to terminate the practice's contracts with Anthem if it did not stop using Arapahoe SurgCenter for all of Anthem's members.

75.     On September 6, 2012, less than a week after the secret meeting, Anthem sent letters to providers that performed surgeries and other procedures at SurgCenter facilities including Colorado Hand Center and Interwest Rehabilitation, purporting to terminate those practices from its provider network effective January 1, 2013 due to "inappropriate referrals." Other providers who performed surgeries at the Plaintiffs' facilities received similar letters from Anthem.

76.     After the meeting of August 30, 2012, Aetna again made written threats by certified mail to doctors associated with the Plaintiffs about terminating them from that company's network for referrals to out-of-network facilities.

77.     None of these letters from Aetna, United, Anthem and other health insurers threatening to terminate doctors from their provider networks expressed any concerns about the Plaintiff facilities' copay or deductible practices.  All of these letters expressed the similar view that referrals to the Plaintiff facilities were, in the view of the insurance companies, barred by the terms of their various contracts, and in fact, many specifically stated-that  patients might pay *more* at the Plaintiff facilities.

78.     Each of these letters was designed to hurt the business of a Plaintiff facility and to deter doctors and other healthcare providers from utilizing the Plaintiff

facilities.  Each case which was shifted away to another facility due to the Defendants' threats resulted in lost revenue and profits for a Plaintiff.

79.     Further, some of these insurers have taken it one step further in an effort to deter other healthcare providers from referring patients to doctors who utilize the Plaintiff facilities.  For instance, United threatened a Colorado Springs physician practice with termination for simply referring patients to a surgical practice it had previously terminated for referring patients to and performing procedures at Plaintiff Kissing Camels Surgery Center.

80.     After the August 30, 2012 meeting at CASCA and as a direct result of that meeting, Defendant Kaiser notified Plaintiff Kissing Camels Surgery Center that it no longer intended to finalize its previously negotiated participation agreement with Kissing Camels.  In addition, as a further result of the August 30, 2012 meeting, Kaiser has refused to authorize the treatment of its members at Kissing Camels Surgery Center on an out-of-network basis, even when surgery was urgently needed.  These actions were taken in furtherance of the conspiracy that Kaiser had joined with competitors Aetna, , United, Anthem, as well as, HealthONE, Centura, and CASCA.

81.     In the Colorado Springs market, Defendant Centura owns and operates the Audubon Surgery Center and the Audubon AC at St. Francis and Women's Surgical Center.  The administrator of Audubon Surgery Center is Brent Ashby.  As recently as on or about October 4, 2012 at a meeting of shareholders of Audubon and others, and on other occasions, Ashby stated that it was his goal to put the Kissing Camel Surgery Center out of business.

82.     Based on information and belief, Plaintiffs allege that on numerous occasions since at least 2010, Defendants HealthONE and Centura have attempted to use their market power to reach agreement with one another and health insurance companies not to contract, or otherwise do business with independent surgery centers such as Plaintiffs and others that compete in their market.

83.     As a direct result of Defendant HealthONE's and Defendant Centura's anticompetitive restraint on trade, patients who sought treatment at Plaintiffs' facilities have been required by their health insurers to seek treatment at other facilities, including Defendants' facilities.

84.     Consumers and competition have been harmed by HealthONE and Centura's monopolist action and agreements in restraint of trade.  Consumer choices are limited when HealthONE, Centura and their co-conspirators attempt to run potential competitors out of business

85.     As alleged, Plaintiff facilities were damaged, and the damage caused was the direct and intended outcome of Defendants' agreements in restraint of trade and HealthONE and Centura's abuse of their respective monopoly power and the harm to competition.

86.     There is no pro-competitive justification for Defendants' conduct and attempts to put the Plaintiff facilities out of business and exclude them from insurer networks.

## VIOLATIONS ALLEGED

## COUNT I

**Contract, Combination, or Conspiracy in Restraint of Trade
in Violation of Section 1 of the Sherman Act
(On Behalf of All Plaintiffs Against All Defendants)**

87.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 86 as though set forth herein.

88.    The agreement among the Defendants and their co-conspirators to attempt to put Plaintiffs out of business through a variety of anticompetitive means represents a contract, combination, and conspiracy within the meaning of Section 1 of the Sherman Act.

89.    As a direct and proximate result of Defendants' continuing violations of Section 1 of the Sherman Act, Plaintiffs have suffered and continue to suffer injury and damages of the type that the federal antitrust laws were designed to prevent.  Such injury flows directly from that which makes Defendants' conduct unlawful.  These damages consist of having been paid lower rates, having fewer surgeries performed at the facility, otherwise having business diverted to competitors who were part of the agreement, and/or having access to far fewer patients than they would have with fair competition and but for the Defendants' anticompetitive agreements and practices.

90.    Plaintiffs seek money damages from Defendants for their violations of Section 1 of the Sherman Act.

91.     The Defendants' unlawful conduct threatens to continue to injure Plaintiffs. Plaintiffs seek a permanent injunction prohibiting Defendants from entering into, or from honoring or enforcing, any agreements that have been entered into in restraint of trade.

## COUNT II

**Conspiracy to Monopolize in Violation of 15 U.S.C. § 2**
**(On Behalf of Arapahoe, Cherry Creek and Hampden**
**Against HealthONE and Centura)**

92.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 91 as though set forth herein.

93.     HealthONE and Centura have willfully and wrongfully conspired to monopolize the market for surgery procedures that do not require hospitalization in the Metro Denver market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  This offense is likely to continue to recur unless the relief requested is granted.

94.     For the purpose, and the actual effect, of maintaining, extending and exercising its monopoly in the Metro Denver market, HealthONE and Centura, along with their co-conspirators, threatened and intimidated health insurers and healthcare providers who utilize Plaintiffs' facilities and, in fact, took other actions designed to drive the Plaintiffs out of business.

95.     HealthONE's and Centura's acts and practices and their continuing course of conduct have harmed consumers and competition in the Metro Denver market for surgical services not requiring hospitalization.

96.    HealthONE and Centura conspired and worked jointly in an attempt to exclude the Plaintiffs, their competitors in the Metro Denver market and to allocate the market among themselves.

97.    HealthONE's and Centura's anticompetitive, exclusionary and coercive conduct have directly and proximately caused injury to Plaintiffs of a type the antitrust laws are intended to prohibit and unless the activities complained of are enjoined, Plaintiffs will continue to suffer injury for which there is no other adequate remedy at law.

## COUNT III

### Attempted Monopolization in Violation of 15 U.S.C. § 2
### (On Behalf of Arapahoe, Cherry Creek and Hampden Against
### HealthONE and Centura)

98.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 97 as though set forth herein.

99.    HealthONE and Centura have willfully attempted to monopolize the Metro Denver Market for surgical services not requiring hospitalization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  This offense is likely to continue or recur unless the relief requested is granted.

100.   With the specific intent and the dangerous probability of monopolizing the acute care hospital market in Metro Denver, HealthONE and Centura, along with their co-conspirators, threatened and intimidated health insurers and healthcare providers who utilize Plaintiffs' facilities and, in fact, took other actions designed to put the Plaintiffs' facilities out of business.

101.    HealthONE's and Centura's acts and practices and their continuing course of conduct have harmed consumers and competition in the Metro Denver market for surgical services not requiring hospitalization.

102.    HealthONE and Centura conspired and worked jointly in an attempt to exclude the Plaintiffs, their competitors in the Metro Denver market and to allocate the market among themselves.

103.    HealthONE's and Centura's anticompetitive, exclusionary and coercive conduct has directly and proximately caused injury to Plaintiffs of a type the antitrust laws are intended to prohibit and unless the activities complained of are enjoined, Plaintiffs will continue to suffer injury for which there is no other adequate remedy at law.

## COUNT IV

### Conspiracy to Monopolize in Violation of 15 U.S.C. § 2
### (On Behalf of Plaintiff Kissing Camels Against Centura and Audubon)

104.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 103 as though set forth herein.

105.    Centura has conspired to acquire or maintain a monopoly in the market for surgical procedures that do not require hospitalization in the Colorado Springs market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.   This offense is likely to continue to recur unless the relief requested is granted.

106.    For the purpose, and the actual effect, of maintaining, extending and exercising its monopoly in the Colorado Springs market, Centura, along with its co-

conspirators, threatened and intimidated health insurers and healthcare providers who utilize Plaintiff Kissing Camels Surgery Center and, in fact, took other actions designed to put Kissing Camels Surgery Center out of business.

107. Centura's acts and practices and Centura's continuing course of conduct have harmed consumers and competition in the Colorado Springs market for surgical services not requiring hospitalization.

108. Centura's anticompetitive, exclusionary and coercive conduct has directly and proximately caused injury to Kissing Camels Surgery Center of a type the antitrust laws are intended to prohibit and unless the activities complained of are enjoined, Plaintiff Kissing Camels Surgery Center will continue to suffer injury for which there is no adequate remedy at law.

## COUNT V

**Attempted Monopolization in Violation of 15 U.S.C. § 2**
**(On Behalf of Plaintiff Kissing Camels Against Centura and Audubon)**

109. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 108 as though set forth herein.

110. Centura has willfully attempted to monopolize the Colorado Springs Market for surgical services not requiring hospitalization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. This offense is likely to continue or recur unless the relief requested is granted.

111. With the specific intent and the dangerous probability of monopolizing the acute care hospital market in Colorado Springs, Centura, along with its co-conspirators, threatened and intimidated health insurers and healthcare providers who utilize Plaintiff

Kissing Camels Surgery Center  and, in fact, took other actions designed to drive Kissing Camels Surgery Center out of business.

112.    Centura's acts and practices and Centura's continuing course of conduct have harmed consumers and competition in the Colorado Springs market for surgical services not requiring hospitalization.

113.    Centura's anticompetitive, exclusionary and coercive conduct has directly and proximately caused injury to Plaintiff Kissing Camels Surgery Center of a type the antitrust laws are intended to prohibit and unless the activities complained of are enjoined, Plaintiff Kissing Camels Surgery Center will continue to suffer injury for which there is no other adequate remedy at law.

## COUNT VI

### Contract, Combination, or Conspiracy in Restraint of Trade in Violation of Colorado Antitrust Act (On Behalf of All Plaintiffs Against All Defendants)

114.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 113 as though set forth herein.

115.    The agreement among the Defendants and their co-conspirators to attempt to put Plaintiffs out of business through a variety of anticompetitive means represents a contract, combination, or conspiracy in restraint of trade within the meaning of Colorado Revised Statutes 6-4-104.

116.    As a direct and proximate result of Defendants' continuing violations of the Colorado Antitrust Act, Plaintiffs have suffered and continue to suffer injury and damages of the type that the Colorado Antitrust Act was designed to prevent.  Such

injury flows directly from that which makes Defendants' conduct unlawful. These damages consist of having been paid lower rates, having fewer surgeries performed at Plaintiffs' facilities, otherwise having business diverted to competitors who were part of the agreement, and/or having access to far fewer patients than they would have with fair competition and but for the Defendants' anticompetitive agreements.

117.    Plaintiffs seek money damages from Defendants for their violations of the Colorado Antitrust Act.

118.    The Defendants' unlawful conduct threatens to continue to injure Plaintiffs. Plaintiffs seek a permanent injunction prohibiting Defendants from entering into, or from honoring or enforcing, any agreements or conspiracies that have been entered into in restraint of trade.

## COUNT VII

### Conspiracy to Monopolize in Violation of C.R.S. 6-4-105
### (On Behalf of Arapahoe, Cherry Creek and Hampden
### Against HealthONE and Centura)

119.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 118 as though set forth herein.

120.    HealthONE and Centura have willfully and wrongfully conspired to monopolize the market for surgery procedures that do not require hospitalization in the Metro Denver market in violation of C.R.S. 6-4-105. This offense is likely to continue to recur unless the relief requested is granted.

121.    For the purpose, and the actual effect, of maintaining, extending and exercising their monopoly in the metro Denver market, HealthONE and Centura, along

with their co-conspirators, threatened and intimidated healthcare providers who utilize Plaintiffs' facilities and, in fact, took other actions designed to drive the Plaintiffs out of business.

122.   HealthONE's and Centura's acts and practices and their continuing course of conduct have harmed consumers and competition in the Metro Denver market for surgical services not requiring hospitalization.

123.   HealthONE and Centura conspired and worked jointly in an attempt to exclude the Plaintiffs, their competitors in the Metro Denver market and to allocate the market among themselves.

124.   HealthONE's and Centura's anticompetitive, exclusionary and coercive conduct have directly and proximately caused injured to Plaintiffs of a type the antitrust laws are intended to prohibit and, unless the activities complained of are enjoined, Plaintiffs will continue to suffer injury for which there is no adequate remedy at law.

## COUNT VIII

**Attempted Monopolization in Violation of C.R.S. 6-4-105**
**(On Behalf of Arapahoe, Cherry Creek and Hampden**
**Against HealthONE and Centura)**

125.   Plaintiffs incorporate the allegations set forth in paragraphs 1 through 124 as though set forth herein.

126.   HealthONE and Centura have willfully attempted to monopolize the Metro Denver Market for surgical services not requiring hospitalization in violation of C.R.S. 6-4-105.  This offense is likely to continue or recur unless the relief requested is granted.

127.    With the specific intent and the dangerous probability of monopolizing the acute care hospital market in Metro Denver, HealthONE and Centura, along with their co-conspirators, threatened and intimidated healthcare providers who utilize Plaintiffs' facilities and, in fact, took other actions designed to drive the Plaintiffs facilities out of business.

128.    HealthONE's and Centura's acts and practices and HealthONE's and Centura's continuing course of conduct have harmed consumers and competition in the Metro Denver market for surgical services not requiring hospitalization.

129.    HealthONE and Centura conspired and worked jointly in an attempt to exclude the Plaintiffs, their competitors in the Metro Denver market and to allocate the market among themselves.

130.    HealthONE's and Centura's anticompetitive, exclusionary and coercive conduct have directly and proximately caused injured to Plaintiffs of a type the antitrust laws are intended to prohibit and unless the activities complained of are enjoined, Plaintiffs will continue to suffer injury for which there is no adequate remedy at law.

## COUNT IX

**Conspiracy to Monopolize in Violation of C.R.S. 6-4-105**
**(On Behalf of Kissing Camels Against Centura and Audubon)**

131.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 130 as though set forth herein.

132.    Centura has conspired to acquire or maintain a monopoly in the market for surgical procedures that do not require hospitalization in the Colorado Springs market in

violation of C.R.S. 6-4-105.  This offense is likely to continue to recur unless the relief requested is granted.

133.   For the purpose, and the actual effect, of maintaining, extending and exercising its monopoly in the Colorado Springs market, Centura, along with its co-conspirators, threatened and intimidated healthcare providers who utilize Plaintiff's facility and, in fact, took other actions designed to drive the Plaintiff Kissing Camels Surgery Center  out of business.

134.   Centura's acts and practices and Centura's continuing course of conduct have harmed consumers and competition in the Colorado Springs market for surgical services not requiring hospitalization.

135.   Centura's anticompetitive, exclusionary and coercive conduct has directly and proximately caused injured to Plaintiff Kissing Camels Surgery Center of a type the antitrust laws are intended to prohibit and unless the activities complained of are enjoined, Plaintiff will continue to suffer injury for which there is no adequate remedy at law.

## COUNT X

**Attempted Monopolization in Violation of C.R.S. 6-4-105**
**(On Behalf of Kissing Camels Against Centura and Audubon)**

136.   Plaintiffs incorporate the allegations set forth in paragraphs 1 through 135 as though set forth herein.

137.   Centura has willfully attempted to monopolize the Colorado Springs Market for surgical services not requiring hospitalization in violation of C.R.S. 6-4-105. This offense is likely to continue or recur unless the relief requested is granted.

138.    With the specific intent and the dangerous probability of monopolizing the market for surgical services not requiring hospitalization in Colorado Springs, market, Centura, along with its co-conspirators, threatened and intimidated healthcare providers who utilize Plaintiffs Kissing Camels Surgery Center and, in fact, took other actions designed to drive the Plaintiff out of business.

139.    Centura's acts and practices and Centura's continuing course of conduct have harmed consumers and competition in the Colorado Springs market for surgical services not requiring hospitalization.

140.    Centura's anticompetitive, exclusionary and coercive conduct has directly and proximately caused injured to Plaintiff Kissing Camels Surgery Center of a type the antitrust laws are intended to prohibit and unless the activities complained of are enjoined, Plaintiff will continue to suffer injury for which there is no other adequate remedy at law.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs request that this Court:

a.    Adjudge and decree that all Defendants have violated Section 1 of the Sherman Act;

b.    Adjudge and decree that Centura and Audubon have violated Section 2 of the Sherman Act;

c.    Adjudge and decree that HealthONE/HCA has violated Section 2 of the Sherman Act;

d.      Adjudge and decree that Defendants have violated C.R.S. 6-4-104 and 105;

e.      Permanently enjoin Defendants from entering into, or from honoring or enforcing, any agreements to limit competition in the market for surgical services not requiring hospitalization including but not limited to retaliating against or taking anticompetitive actions against the Plaintiffs and/or  physicians affiliated with the Plaintiffs;

f.      Award Plaintiffs damages in the form of three times the amount of damages suffered by Plaintiffs as proven at trial;

g.      Award costs, expert fees and attorneys' fees to Plaintiff;

h.      For a trial by jury; and

i.      Award any such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand trial by jury on all issues.

Dated: April 1, 2013.                    Respectfully Submitted,


                                        */s/ Joe R. Whatley, Jr.*
                                        Joe R. Whatley, Jr.
                                        Colorado State Bar No. 38820
                                        WHATLEY KALLAS, LLC
                                        201 North Mill Street
                                        Jerome Professional Building
                                        Suite 103
                                        Aspen, CO  81611
                                        Tel.: (970) 300-2631
                                        Fax: (800) 922-4851
                                        Email: jwhatley@whatleykallas.com

Edith M. Kallas
WHATLEY KALLAS, LLC
380 Madison Avenue, 23rd Floor
New York, NY  10017
Tel.: (212) 447-7060
Fax: (800)922-4851
Email: ekallas@whatleykallas.com

Deborah J. Winegard
WHATLEY KALLAS, LLC
1068 Virginia Avenue, NE
Atlanta, GA  30306
Tel.: (404) 607-8222
Fax: (404) 607-8451
Email: dwinegard@whatleykallas.com

W. Tucker Brown
WHATLEY KALLAS, LLC
2001 Park Place Tower, Suite 1000
Birmingham, AL  35203
Tel.: (205) 488-1200
Fax: (800) 922-4851
Email: tbrown@whatleykallas.com

*Attorneys for Plaintiffs*