**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-03012-WJM-BNB

KISSING CAMELS SURGERY CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC,
ARAPAHOE SURGERY CENTER, LLC, and
HAMPDEN SURGERY CENTER, LLC,

       Plaintiffs,

v.

CENTURA HEALTH CORPORATION,

       Defendant.

---

**PLAINTIFFS' AND NON-PARTY SURGICAL CENTER DEVELOPMENT, INC'S JOINT OPPOSITION TO CENTURA HEALTH CORPORATION'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO SUBPOENA TO SURGICAL CENTER DEVELOPMENT, INC.**

---

Plaintiffs Kissing Camels Surgery Center, LLC, Cherry Creek Surgery, LLC, Arapahoe Surgery Center, LLC and Hampden Surgery Center, LLC (the "Plaintiffs") as well as Non-Party Surgical Center Development, Inc. ("SurgCenter"), through undersigned counsel, respectfully submit this Joint Opposition to Defendant Centura Health Corporation ("Centura")'s Motion to Compel Production of Documents in Response to a Subpoena.

    **I.**    **INTRODUCTION**

Pursuant to an agreement among the Parties, non-party SurgCenter produced approximately 31,644 documents totaling 135,982 pages relating to the issues involving the Colorado-based Plaintiffs in this case. On May 15, 2014, less than six weeks before

the discovery deadline in this case, Centura provided notice to Plaintiffs' counsel that it intended to serve a subpoena to SurgCenter requesting the production of documents relating to fifty-eight other Surgical Centers throughout the United States in which SurgCenter manages or holds an interest.   On June 26, 2014, Centura filed a motion to compel SurgCenter to produce documents in response to the subpoena.

## II.   LEGAL STANDARD

Generally, Federal Rule of Civil Procedure 45(d)(1) requires a subpoena to take "reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."    For this reason, "non-parties answering a Rule 45 subpoena are offered heightened protection from discovery abuse." *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* 05-2164 MLBDWB, 2007 WL 2122437, *4 (D. Kan. July 20, 2007)("Whether a subpoena imposes an undue burden upon a respondent raises a case-specific inquiry. It turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period it covers, the particularity with which the documents are described and the burden imposed." *Quoting Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D.Kan. 2003)).

## III.   ARGUMENT

### A.   Centura's Subpoena Contravenes Earlier Agreements Between the Parties.

At the beginning of discovery in this case, counsel for Plaintiffs and eight Defendants (including Centura) negotiated an agreement on a fundamental issue: the extent to which Defendants could seek discovery from non-party Surgical Center

Development, Inc. ("SurgCenter").[1] Because SurgCenter operates throughout the country and not just in Colorado, counsel for Plaintiffs took the position that the only relevant documents in SurgCenter's possession were those relating either to general operational issues or to the four Plaintiff surgical centers located in Colorado, not to the approximately fifty-eight other surgical centers located outside of Colorado in which SurgCenter has some interest. Declaration of W. Tucker Brown ("Brown Decl.") (Ex. A), ¶ 4. As part of a broader agreement on discovery, the Plaintiffs agreed to search and produce documents from every SurgCenter officer or employee proposed as a custodian by the Defendants - despite the fact that SurgCenter was a non-party - on the condition that it would not be necessary to search for and produce documents related to the fifty-eight other surgery centers with which SurgCenter has a relationship.[2] As a

---

[1] The "Defendants" are Centura and the other defendants named in the First Amended Complaint (D.E. 70). The "payor Defendants" are/were Aetna, Anthem, United, and Kaiser.

[2] Centura is wrong to assert that "it is simply not true that the defendants made any blanket agreement with plaintiffs that documents related to non-plaintiff ASCs need not be produced." (Motion to Compel Br. (D.E. 200) at 11.) As the original Requests for Production served on the four Plaintiffs were served jointly by all Defendants at the time, Plaintiffs were forced to negotiate jointly with all of them with respect to those requests. Those speaking on the phone for the Defendants purported to represent everyone, and no Defendants made separate deals or raised objections with Plaintiffs regarding the Plaintiffs' production at the time those agreements were reached.  Thus, Defendants agreed that SurgCenter documents related specifically to surgical centers other than Plaintiffs would be extraordinarily broad and did not need to be produced. (Brown Decl., ¶ 4.)   In fact, because discovery was served on the Plaintiff centers, and not on SurgCenter itself, documents in SurgCenter's possession related exclusively to other centers were clearly outside the scope of the original requests for production. Moreover, if Centura believed that SurgCenter had already agreed to produce these documents pursuant to the original requests, it could have moved to compel production under the original requests, rather than issuing a new subpoena to SurgCenter, essentially admitting that SurgCenter had no obligation to produce those documents under the original requests. However, the agreements among the parties, including agreements

non-party, SurgCenter viewed its concession to produce documents related to the Plaintiffs subject only to the Request for Production served on the Plaintiffs as a significant concession. *Id.* at ¶ 5. Part of accepting this limitation was that SurgCenter Development's production of documents be limited as described above.   Had any Defendant resisted this limitation, counsel for Plaintiffs would have refused to produce documents from these non-parties and/or sought a protective order to avoid a costly production and review of documents. *Id.* at ¶ 7. Now Centura asks this Court to order a third party to produce those documents despite a prior agreement to the contrary among the parties.

Despite the agreed-upon limitations on the scope of discovery, given the breadth of the search terms and the issues the Defendants asked the Plaintiffs and SurgCenter to search, the review of the SurgCenter custodians' documents remained extensive and expensive. Plaintiffs roughly estimate the hours spent on the original SurgCenter custodian productions alone were far greater than 1500 hours of attorney time, in addition to time spent supervising the process of review and production.  (Brown Decl., ¶ 9.)  In the end, SurgCenter produced 31,644 documents totaling 135,982 pages. *Id.* Plaintiffs' entire production was composed of 200,034 documents totaling 1,280,766 pages. *Id.* Plaintiffs have spent over $400,000 on professional discovery vendors to collect, handle and otherwise process data to ensure proper handling of the large productions of documents by Plaintiffs and SurgCenter in compliance with the

related to payor Defendants' document productions, generally sought to exclude documents related exclusively to other markets and providers elsewhere in the country from the scope of review.

Defendants original requests.   (Brown Decl., ¶ 9.).   As the Court can see, Plaintiffs and SurgCenter have already expended a large amount of resources in making a robust production of documents in this case.

As the Court is well aware, the reason for the lengthy meet and confers, on both sides, is to ensure that the inevitably expensive discovery process in a case like this is only done once allowing numerous efficiencies, without unnecessary duplication of efforts, and without unnecessarily bringing mundane disputes to the Court.   The parties had extensive back and forth discussions concerning electronic search terms and custodians precisely to avoid having to go back and re-review documents or to do costly second data pulls.   Now Centura wants to undo the discovery agreement and ask SurgCenter, a non-party which agreed to participate in discovery related to the Plaintiffs here, to go back and re-review documents it already reviewed at its own expense.   The Court should not allow this kind of backtracking to derail good faith attempts at efficiency.

Further, it was not until May 15, 2014, shortly before the discovery cut-off of June 30, 2014, that Centura sought to break the agreement and asked for a dramatic expansion of third party discovery at the last minute.   There is no reason to allow Centura to change the rules of engagement in discovery at the last minute and to subject a non-party to an extensive review of documents it has already reviewed and excluded from production.

### B.   The Burden is Particularly Significant Given that SurgCenter is a Third Party.

The burden of the discovery that Centura seeks from a non-party is far too high

to support the Motion to Compel.  Despite Centura's claims to the contrary, SurgCenter is a non-party, and therefore Rule 45's protections against third party discovery are relevant. Centura argues that SurgCenter must re-review its documents because it is "no ordinary third-party" (Motion to Compel Br. at 1; *see also id.* at 11), but nevertheless SurgCenter is not a party to this case. SurgCenter did not bring any claims in this case as a shareholder. For purposes of this case, SurgCenter is a non-party. *See Heartland*, 2007 WL 2122437 at *4 (finding that shareholders and employees of an entity bringing antitrust claims were fairly treated as non-parties despite financial interest in the outcome); *Jones v. Ford Motor Co.,* 599 F.2d 394, 397 (10th Cir. 1979) ("It is settled law that shareholders and employees do not have standing to sue for antitrust violations that injure a corporation.").

SurgCenter is not arguing that it is exempt from discovery specifically because it is a non-party, only that its obligation to produce documents must be weighed against the relevance of those documents and the burden of production. Even though SurgCenter may have an interest in the outcome of this case, Centura still has a duty to avoid imposing an undue burden on a non-party. Fed. R. Civ. P. 45(d)(1); *United States v. Blue Cross Blue Shield of Mich*., No. 10-cv-14155, 2012 U.S. Dist. LEXIS 146403, at *6–8 (E.D. Mich. Oct. 11, 2012) (enforcing Rule 45 with respect to an interested non-party). Despite Centura's claims, as these requests are postured, SurgCenter *is* a true third party. And, the documents Centura is requesting specifically relate to surgery centers and medical practices in places far beyond Colorado and *not* to the Plaintiffs.  In the subpoena, Centura is not asking for SurgCenter to produce documents specifically

related to the four Plaintiff centers; it has already done that.

Under these circumstances, Centura's proposed re-review of the documents is an extraordinary burden. Centura downplays this burden, stating that it is merely asking SurgCenter to re-review documents previously collected from seven custodians. This is no small task: due to the over-breadth of the original search terms, there are approximately 187,199 such documents. (Brown Decl., ¶ 10.) If asked to go back and do a broader search among additional custodians, it is very difficult to estimate the extent of the burden of reviewing the additional documents, but the burden would obviously be greater.   The burden to review a broader set of documents would likely far exceed just the re-review of the original approximately 187,199 documents. (Brown Decl., ¶ 11.)  In addition, the proposed scope of the re-review of the original documents is in some ways more expansive than the original review, in that counsel for Plaintiffs must now look for documents relating to any of fifty-eight different surgical centers across the country, rather than attempting to limit the productions to only those documents relevant to the four Plaintiffs. In the first review, counsel was able to attempt to largely exclude documents related exclusively to other centers only with reference to the fact that they are not based in Colorado.   Centura's request that SurgCenter go back and re-review these documents will require wading through and reviewing numerous documents that simply relate to day-to-day business at centers that have no role or interest in this litigation in Colorado.  The majority of these remaining documents are likely not responsive to the subpoena and even under the most expansive view of the case.

Plaintiffs' counsel estimates that the time and expense of re-reviewing the SurgCenter custodian documents would be only slightly less than the original review of the entire corpus of SurgCenter custodian documents, which required in excess of 1,500 attorney hours, not including attorney time expended in higher level supervising of the review and productions. (Brown Decl., ¶ 9.).

According to Plaintiffs' discovery vendor, there are 187,199 such documents. All of these documents were previously reviewed by Plaintiffs' counsel. Based on our experience in the initial review, and without any additional work to limit the set of documents before attorney review, Plaintiffs' counsel estimates that this re-review would require *at least* 1000 hours of attorney time. (Brown Decl., ¶ 10.).  Whatley Kallas' junior associates' rates are $300 per hour, which yields an estimate of $300,000 for the re-review of these documents. (Brown Decl., ¶ 10.).  This is a very conservative estimate of the attorney time and expense that would be necessary to undertake the re-review of 187,199 documents unless extreme measures were taken to reduce the number of documents which had to be reviewed. In addition, re-review of these documents would subject SurgCenter to additional costs from its discovery vendors, though those costs are difficult to estimate until the final scope of the review is known. (Brown Decl., ¶ 11.).

By any definition, this is an extraordinary burden to place on a non-party to produce documents for a second time. In the *United States v. Blue Cross Blue Shield of Michigan* cited by Centura the court held that the cost to produce those documents— $14,720 for one party, and $16,127 for another, a small fraction of the likely costs to SurgCenter —was "significant" and justified shifting a portion of that cost onto the

requesting party. 2012 U.S. Dist. LEXIS 146403, at *4–5. at *8–13. Here the potential burden is an order of magnitude more "significant" and justifies denying the Motion to Compel.

### C. This Burden is Especially Unreasonable When Centura Could Have Requested These Documents from the Payor Defendants.

In addition to seeking to impose this burden on a third party, Centura seeks discovery that "can be obtained from some other source that is more convenient," Fed. R. Civ. P. 26(b)(2)(C)(i), namely the payor Defendants, and discovery that the "burden or expense [of which] . . . outweighs its likely benefit," Fed. R. Civ. P. 26(b)(2)(C)(iii). The fact here is that the documents Centura seeks would more easily have been sought from the payor Defendants. The payor Defendants themselves, who were aware of their own actions in other states, never sought additional discovery on this issue, and never produced these types of documents for other markets. In fact, they also sought to limit their discovery productions to Colorado to the extent possible. (Brown Decl. ¶ 8.) Moreover, Centura has made no serious attempt to develop the documentary evidence necessary to make an argument about payor Defendants' conduct in other states. Centura has sought no documents from payor Defendants, only from non-party SurgCenter. It is difficult to understand why SurgCenter should be required to bear the additional expense of re-reviewing documents when Centura has not bothered to seek first-hand information from the sources that have it. *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577–78 (N.D. Cal. 2007) (granting motion to quash non-party subpoena when information was available from defendants).

As far as Plaintiffs are aware, Centura never served *any* documentary discovery on any of the payor Defendants and has not requested any documents from them that would demonstrate their policies and practices in other markets or with respect to other healthcare providers. They have not noticed depositions of any Anthem, United or CIGNA witnesses to determine what their practices are in other states. And the payors Defendants in this case never subpoenaed these documents from SurgCenter and never extensively produced their documents related specifically to other states or surgery centers outside of Colorado in support of their defenses. These documents, to the extent they exist, have been in possession of the payor Defendants throughout. As far Plaintiffs are aware, Centura never sought these documents from the payor Defendants. Based on its failure to pursue these documents from the payor Defendants, we can only assume that Centura wants to continue to play nice with the payor Defendants and thus has foregone seeking any additional discovery or expense from them in lieu of imposing it on SurgCenter.

### D.   Centura has Not Demonstrated That the Relevancy of The Requested Documents Justifies the Burden.

Centura has failed to carry its burden to demonstrate that these documents are relevant to the case. "[W]here relevancy is not apparent, it is the burden of the party seeking discovery to show the relevancy of the discovery request." *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 442, 445 (D. Kan. 2000). Given that the documents subpoenaed exclusively relate to centers other than the Plaintiffs and to activities of other third parties in other states that specifically are not the subject of the alleged conspiracy, it is Centura's burden to demonstrate the relevance of these documents to

the Plaintiffs' case, it has failed to meet that burden here, especially in light of the burden to SurgCenter. The fact that Centura never asked the payor Defendants for documents demonstrating their polices and/or actions in other markets, nor did they attempt to subpoena others for them until mid-May, is strong indicia of the marginal importance of these documents to any issue in this case. Finally, Plaintiffs' theory of the case has not changed in any way that would impact these documents. To the extent these documents are relevant, they were as relevant a year ago as they are today. Thus, the relevance of these documents cannot support the extreme and duplicative burden Centura is trying to impose upon SurgCenter.

Even if SurgCenter were a party to this case, Centura would be asking far too much far too late in the discovery process. As stated above, nothing in Plaintiffs' theory of the case changed in May. For the above reasons, Centura's citations to case law add nothing to its argument. (Motion to Compel Br. at 10.) In *Retractable Technologies, Inc. v. International Healthcare Worker Safety Center*, No. 11-MC-28, 2011 U.S. Dist. LEXIS 89402, at *6, *10–11 & n.3 (W.D. Va. Aug. 11, 2011), the court ordered a non-party to produce documents because those documents were clearly important to the case and because the non-party produced no evidence to support its "conclusory" claim that producing documents would be burdensome, not because it had a "dog in the fight." Here, Centura's demand for these documents is based on an erroneous assumption or contention that Plaintiffs have somehow changed their theory of the case, and SurgCenter has presented evidence of the significant cost and burden involved in re-reviewing those documents. Similarly, in *United States v. Blue Cross Blue Shield of*

*Michigan*, there was no question that the requested discovery was relevant to the plaintiffs' theory of the case. 2012 U.S. Dist. LEXIS 146403, at *4–5. Even so, the court held that the cost to produce those documents—$14,720 for one party, and $16,127 for another, a small fraction of the likely costs to SurgCenter —was "significant" and justified shifting a portion of that cost onto the requesting party. *Id.* at *8–13. Centura, on the other hand, would have SurgCenter re-review 187,199 documents (and perhaps more) at its own expense, although Centura has not even attempted to gather the same information from other sources. Centura has not demonstrated that this discovery requested justifies the extreme burden described above to a third party like SurgCenter.[3]

## IV.  CONCLUSION

In short, Centura is now trying to go back and get discovery that the Defendants agreed months ago to forego. Instead, it now wants a non-party to re-review almost 188,000 (or perhaps more) documents at its own expense.  All of this was in lieu of a) asking for these documents in the first place, and b) asking the payor Defendants who have more reliable and convenient access to the documents it claims it actually wants. The Motion to Compel should therefore be denied.

---

[3] If the motion to compel were to be granted in part by the Court at all, Centura should bear the resulting costs. *See United States v. Blue Cross Blue Shield of Mich.*, 2012 U.S. Dist. LEXIS 146403, at *8–13. In addition, at the absolute minimum, the re-review of documents should be restricted to the original SurgCenter custodians, and the Court should order the parties to meet and confer with respect to exactly which documents it believes are responsive to its requests, perhaps even agreeing to additional electronic search terms to reduce the review from the 187,199 documents and to trim the review to a more manageable number that will not require review of countless likely non-responsive documents for a second time.  Anything more than this is far beyond unduly burdensome.

Dated: July 17, 2014                     Respectfully Submitted,


                                         /s/ W.Tucker Brown
                                         Joe R. Whatley, Jr.
                                         Colorado State Bar No. 38820
                                         WHATLEY KALLAS, LLP
                                         720 East Durant Avenue
                                         Suite E6
                                         Aspen, CO  81611
                                         Tel.: (800) 695-6750; (970) 300-4848
                                         Fax: (800) 922-4851
                                         Email: jwhatley@whatleykallas.com

                                         Edith M. Kallas
                                         WHATLEY KALLAS, LLP
                                         1180 Avenue of the Americas
                                         20th Floor
                                         New York, NY  10036
                                         Tel.: (212) 447-7060
                                         Fax: (800) 922-4851
                                         Email: ekallas@whatleykallas.com

                                         Deborah J. Winegard
                                         WHATLEY KALLAS, LLP
                                         1068 Virginia Avenue, NE
                                         Atlanta, GA  30306
                                         Tel.: (404) 607-8222
                                         Fax: (404) 607-8451
                                         Email: dwinegard@whatleykallas.com

                                         W. Tucker Brown
                                         WHATLEY KALLAS, LLP
                                         2001 Park Place Tower, Suite 1000
                                         Birmingham, AL  35203
                                         Tel.: (205) 488-1200
                                         Fax: (800) 922-4851
                                         Email: tbrown@whatleykallas.com

                                         Henry C. Quillen
                                         WHATLEY KALLAS, LLP
                                         159 Middle Street, Suite 2C
                                         Portsmouth NH 03801
                                         Tel.: (603) 294-1591

Fax: (800) 922-4851
Email: hquillen@whatleykallas.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 17th day of July, 2014, a true and correct copy of the foregoing document was electronically filed as follows:

With the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case via electronic mail.


<u>  /s/ W.Tucker Brown.  </u>

W.Tucker Brown
