IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-03012-WJM-BNB

KISSING CAMELS SURGERY CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC,
ARAPAHOE SURGERY CENTER, LLC, and
HAMPDEN SURGERY CENTER, LLC,

Plaintiffs,

v.

CENTURA HEALTH CORPORATION,

Defendant.

_____

**ORDER**
_____

Pending is **Plaintiff's Motion for Leave to File Second Amended Complaint** [Doc. # 181, filed 2/26/2014] (the "Motion to Amend"). The Motion to Amend is GRANTED.

In their First Amended Complaint, the plaintiffs alleged an antitrust action under the Sherman Act, 15 U.S.C. § 1 et seq., and the Colorado Antitrust Act, sections 6-4-101 et seq., C.R.S., against Centura Health Corporation ("Centura"); Colorado Ambulatory Surgery Center Association, Inc. ("CASCA"); Anthem Blue Cross and Blue Shield of Colorado ("Anthem"); UnitedHealthCare of Colorado, Inc. ("United"); Audubon Ambulatory Surgery Center, LLC ("Audubon"); and Aetna, Inc. ("Aetna").  Each defendant moved to dismiss the First Amended Complaint.  In an Order [Doc. # 177] the district judge dismissed all claims against all defendants except Centura.  In general, the district judge found that with respect to the dismissed claims the plaintiffs had failed to allege facts sufficient to support the alleged monopolization, relying principally on Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Plaintiffs seek leave to file a Second Amended Complaint, reasserting claims against CASCA, Anthem, United, Audubon, and Aetna. In support, the plaintiffs argue:

> In granting the motions to dismiss, the Court focused on Plaintiff's allegations of the Defendants' involvement in the conspiracy to harm Plaintiffs' business. For example, although "Plaintiffs' allegations of the specific actions each Insurer Defendant [i.e., Aetna, Anthem, and United] took against physicians and health care providers using Plaintiffs' facilities are numerous and detailed," the Court held that "these allegations fall short" because "Plaintiffs do not directly allege that the Insurers made such an agreement [to perform these actions], nor do they allege facts directly evidencing the Insurers' agreement with Centura and HCA." Similarly, the Court held that Plaintiffs had insufficiently alleged that Defendants Audubon and CASCA agreed to participate in the conspiracy.
>
> Based on documents obtained through discovery that were unavailable to Plaintiffs when they filed the First Amended Complaint, Plaintiffs request leave to file a Second Amended Complaint to address the deficiencies this Court identified in the Dismissal Order. These documents show that Defendants' actions were not independent, but the result of an agreement to take coordinated steps to damage Plaintiff's business.

Motion to Amend [Doc. # 179] at p. 4 (internal citations omitted).

Centura opposes amendment arguing that (1) the plaintiffs have failed to show good cause to extend the deadline in the scheduling order for amendment of pleadings; (2) Centura will suffer undue prejudice as a result of the proposed amendment because, among other things, depositions will have to be retaken and expert reports redone; (3) plaintiffs have unduly delayed seeking leave to amend; and (4) the proposed amendments are futile.

I find that the Order dismissing claims and parties based on a failure to adequately plead facts under Twombly constitutes good cause to extend the deadline in the scheduling order for amendment of pleadings.

In addition, I find that Centura's futility argument "seems to place the cart before the horse" and improperly attempts to "force a Rule 12(b)(6) motion into a Rule 15(a) opposition brief." General Steel Domestic Sales, LLC v. Steelwise, LLC, 2008 WL 2520423 at *4 (D. Colo. June 20, 2008). The defendants are better served "by waiting to assert Rule 12 motions until the operative complaint is in place." Id.

The Order [Doc. # 177] dismissing claims and parties was entered on February 13, 2014. The Motion to Amend [Doc. # 181] was filed on February 26, 2014, less than two weeks later. Centura's undue delay argument reaches further back, however:

> Plaintiffs rationalize their untimely effort to amend by quoting from documents produced in discovery, "many" of which "have been received in the last thirty days." But that timing flows logically from the Scheduling Order, to which Plaintiffs agreed, which set an amendment deadline of April 1, 2013 to be followed by a discovery deadline of November 30, 2013. Plaintiffs filed their complaint on November 15, 2012. They then waited four and a half months to seek leave to file a first amended complaint to add new defendants on April 1, 2013. Plaintiffs pursued this course even though they were well aware of the alleged roles of the later-added defendants (three payors and Audubon), having identified and referenced activities of each of them extensively in the original complaint. Plaintiffs then waited another month (until May 2, 2013) before serving discovery requests on three of the new defendants (Anthem, Aetna, and United), and waited two and a half months (to June 21, 2013) to serve discovery requests on the fourth (Audubon). Five weeks after that (on August 2, 2013), Plaintiffs sought to extend many of the pretrial deadlines, in part because "meet and confer conferences are still ongoing." Plaintiffs did not, however, seek relief from the last day to file amendments deadline, which by then had passes.
>
> Almost four months *after* seeking that first extension, but barely two weeks before their expert disclosure deadline, Plaintiffs asked the defendants to agree to a *second* extension, this time of the Court-ordered deadlines. Because Plaintiffs had produced only 1,670 pages of documents by that point and refused to commit to a date by which they would complete their own document

3

> production, Defendants saw little value in extending only the
> expert deadlines (which would prejudice them without
> documents).  Defendants proposed that all parties commit to
> substantially completing their productions by January 16, 2014.
> *Notably, by this time, Centura had completed most of its
> production* (and would largely complete it by the end of 2013),
> CASCA had completed its entire production and its Executive
> Director and Assistant Executive Director had been deposed, and
> HCA, Anthem, Audubon, and Kaiser had all produced a
> substantial number of documents such that, in total, Plaintiffs had
> received 328,913 pages of documents from Defendants.

Response [Doc. # 190] at pp. 5-6.

The undue delay claimed by Centura is that the plaintiffs should have anticipated the district judge's order dismissing claims and parties and should have sought leave to amend prior to its entry.  Centura argues further that a finding of unreasonable delay is proper because the plaintiffs previously had received most of the discovery or they failed to act with reasonable diligence to obtain that discovery.  I do not agree.  The record before me indicates that this is a complex case and that all parties have acted with diligence to conduct discovery and otherwise prepare their claims and defenses.  The plaintiffs served their discovery requests within the time allowed by the scheduling order, as amended.  Under the particular facts of this case, I do not think it is reasonable to expect the plaintiffs to anticipate the district judge's ruling on the motions to dismiss and seek leave to amend in advance of his ruling.  In addition, Centura concedes that the defendants were still producing responsive documents in mid-January 2014.  There is no unreasonable delay in this complex case, where discovery was made in mid-January 2014 and a motion to amend, relying on that discovery, is brought by late February of that year.

Finally, Centura argues that it will be unduly prejudiced by the requested amendments:

> [A]ny reinstated defendants will be entitled to re-take all
> depositions that Plaintiffs and Centura conduct between the date of

4

> the Dismissal Order and any such reinstatement, which could be months from now and even after discovery is finally closed following the twice-extended discovery cut-off date. That by itself is sufficient prejudice to deny leave to amend. In addition, Centura will have answered the first amended complaint by April 4, 2014 and its expert reports are due on May 23. The need to supplement pleadings--here, completely redo them--and rewrite expert reports, along with the inevitable delay of summary judgment briefing, also constitutes undue prejudice.

Id. at p. 8.

The natural operation of the judicial system may result in some inefficiencies based on allowing the plaintiffs to amend--e.g., some depositions may have to be supplemented, some pleadings revised, and the expert reports reworked. I find that this does not constitute undue prejudice sufficient to deny amendment where, as here, leave to amend was sought promptly after the court's order dismissing claims and parties under Twombly; the requested amendments are designed to address the insufficiencies identified by the district judge in dismissing those claims and parties; and the additional facts were learned through recent discovery.

IT IS ORDERED:

(1) The Motion to Amend [Doc. # 181] is GRANTED; and

(2) The Clerk of the Court is directed to accept for filing the Second Amended Complaint [Doc. # 185-1].

Dated August 12, 2014.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge