**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-03012-WJM-NYW

KISSING CAMELS SURGER CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC,
ARAPAHOE SURGER CENTER, LLC, and
HAMPDEN SURGERY CENTER, LLC,

    Plaintiffs

                     v.

CENTURA HEALTH CORPORATION,
COLORADO AMBULATORY SURGERY CENTER ASSOCIATION, INC.,
ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC.,
    d/b/a ANTEM BLUE CROSS AND BLUE SHIELD OF COLORADO,
UNITEDHEALTHCARE OF COLORADO, INC., and
AETNA, INC.,

    Defendants.

---

## DEFENDANT AETNA, INC.'S REQUEST FOR DISCOVERY CONFERENCE

Defendant Aetna, Inc. ("Aetna") hereby requests a discovery conference with Magistrate Judge Wang, in accord with the Court's June 2, 2016 Order on Discovery Issues (Doc. 432). In that Order (at 5), the Court invited Aetna to contact the Court if Aetna required the production of additional claim files from the ASCs beyond the sampling ordered by the Court. Although the ASCs have not yet completed their production of claim files to Aetna (which was ordered to be completed by June 9, 2016), the limited claim files produced to date and the depositions taken with the benefit thereof underscore the importance of the information the ASCs are attempting to withhold. Aetna therefore requests that the Court order Plaintiffs to produce all Aetna claim

files. Aetna further requests that it be given time to process the requested information and an opportunity to depose the ASCs with the benefit of these documents.

### A.     The ASCs Should Be Ordered To Produce Their Claim Files

One of the central issues in this case is that the ASCs maintain two sets of books and two sets of billing practices: a first that they use as the basis for inducing plan members to have procedures performed at these out-of-network facilities; and a second that they submit to Aetna (or the other payors) when they seek payment for services to plan members. That the ASCs knowingly maintained two sets of books and two sets of billing practices is at the heart of several of Aetna's counterclaims, including Aetna's counterclaims for fraud, negligent misrepresentation, civil theft, deceptive trade practices, and tortious interference with Aetna's member contracts.

The ASCs have previously produced the *amounts* that they have collected from plan members as part of their claim data, but it is their claim files that reveal the *bases* for their collections. And, significantly, the claim files reveal that the ASCs have knowingly maintained two sets of books and misrepresented their billing and collections practices to Aetna.

While it is certainly beneficial that Aetna be provided with one-fourth of the records that reveal the ASCs' second set of books, there is no reason to permit these ASCs to continue to hide three-fourths of these files from discovery. Indeed, the limited claim files produced to this point have made clear that production of the files the ASCs are attempting to hide will demonstrate that the ASCs have misrepresented their practices to Aetna – an issue that is highly relevant to this proceeding. In this regard, Aetna learned significant facts in two depositions last week, which were elicited only with the benefit of the claim files the ASCs had produced at that point.

For example, the ASCs represented to Aetna in their claim submissions that they collect payments from plan members at in-network levels. Documents in the ASCs' claim files, however, reveal that their representation to Aetna is false. For example, each of the ASCs' claim files contains a spreadsheet entitled "Calculation of Patient Responsibility," which the ASCs used to determine the amount they charged to Aetna members. The claim files, which include these spreadsheets as well as other relevant documents, reveal practices such as waiving members' co-insurance or deductibles in their entirety, or collecting just a fraction of what the ASCs themselves calculated to be the in-network level (while representing to Aetna that they had collected payment from members at an in-network level). In these instances, the ASCs' claim files reveal that, contrary to their representations, the ASCs collect *less than* in-network levels.

In other instances, the ASCs' claim files reveal that they based their charge to members for one surgical procedure, but then charged Aetna for different (and additional) procedures. This practice can only be detected by comparing the ASCs' claim files with the claims that are submitted to Aetna. The production of one-fourth of the claim files will show instances of this practice, but as long as the ASCs are disputing these factual issues (including the scope of their wrongful conduct), they should not be permitted to shield from discovery three-fourths of the documents evidencing their fraudulent and unlawful scheme.

The information showing that the ASCs maintained two sets of books is not contained in the claim data the ASCs have produced previously. For example, the claim data may show that the ASC collected $100 from a member, but it is the information in the claim file that reveals that the ASC knowingly collected far less than the amount it represented to Aetna, that the ASC knowingly waived the member's co-insurance and/or deductible, or that the ASC's charges to the

3

patient were based on a different amount than the amount the ASC charged to Aetna (including cases in which the ASC charged Aetna for additional procedures).

Plaintiffs should not be heard to argue now that producing these documents is too burdensome. Plaintiffs previously had an opportunity to point the Court to some burden of production, but, as the Court stated in its recent order (Doc. 432, at 5), the Plaintiffs failed to provide "any specifics as to the burden of the production." Likewise, in the recent depositions of witnesses for two of the ASCs (Hampden and Cherry Creek), the witnesses provided no indication that Plaintiffs cannot readily produce all of the claim files requested by Aetna.

### B. Aetna Requests That It Be Given Reasonable Time To Process These Claim Files And Depose The ASCs With The Benefit Of These Claim Files

The accelerated discovery schedule for Aetna's counterclaims was premised on the ASCs' representation that they had already produced most or all of the relevant information. Recent discovery has confirmed that this was not true, and in fact that the ASCs continue to resist the production of significant information that will reveal their scheme to maintain two sets of books and two sets of billing procedures – one that they used to seek payment from insurers, and the other that they kept secret as part of their scheme. Even now, one week after the Court-ordered deadline for the ASCs to disclose one-fourth of their claim files, the ASCs have failed to produce most of the Court-ordered initial production, preventing Aetna from having a full and fair opportunity to prepare its case and depose the ASCs' witnesses.

Accordingly, Aetna respectfully requests that it be given meaningful time after the ASCs complete their production of the requested claim files (including the production of one-fourth of the claim files, as previously ordered by the Court, which still has not been completed) to take depositions of the ASCs and prepare its expert reports. Specifically, Aetna requests that it be

given (a) 30 days from the completion of production of the documents ordered by the Court, so it can take depositions of the ASCs with the benefit of this information, and (b) 30 days from that cutoff date to prepare its affirmative expert reports.  This is not more time than the parties were previously afforded under the Court's scheduling order, but the time previously afforded has been consumed while the ASCs have refused to produce the requested information.

## CONCLUSION

Aetna respectfully requests a Discovery Conference with Magistrate Judge Wang, in which it will request (1) that the Court order Plaintiffs to produce all of their Aetna claim files, (2) that Aetna have 30 days from the completion of Plaintiffs' production of all Aetna claim files to complete depositions of ASC witnesses, and (3) that Aetna have 30 days from its deadline for deposing ASC witnesses to prepare its affirmative expert reports.

Dated:   June 15, 2016

        Respectfully submitted,

        *s/ Laura Sturges*

        GIBSON, DUNN & CRUTCHER LLP

        Laura Sturges
        1801 California Street
        Suite 4200
        Denver, CO  80202-2642
        Telephone:     303.298.5700
        Facsimile:      303.313.2825
        lsturges@gibsondunn.com

        Joshua Lipton
        1050 Connecticut Avenue, N.W.
        Third Floor
        Washington, DC 20036-5303
        Telephone:  202.955.8226
        Facsimile:  202.530.9536
        jlipton@gibsondunn.com

        Attorneys for Defendant Aetna, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of June, 2016, I electronically filed a copy of the foregoing REQUEST FOR DISCOVERY CONFERENCE with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel who have consented to electronic service in this case.

/s/ Laura Sturges
Laura Sturges