IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03012-WJM-NYW

KISSING CAMELS SURGERY CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC,
ARAPAHOE SURGERY CENTER, LLC, and
HAMPDEN SURGERY CENTER, LLC,

    Plaintiffs,

v.

CENTURA HEALTH CORPORATION,
COLORADO AMBULATORY SURGERY CENTER ASSOCIATION, INC.,
ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC., d/b/a ANTHEM BLUE
CROSS AND BLUE SHIELD OF COLORADO,
UNITED HEALTHCARE OF COLORADO, INC., and
AETNA, INC.,

    Defendants.

---

## ORDER ON AETNA FILES

Magistrate Judge Nina Y. Wang

This matter comes before the court on the issue of whether Plaintiffs Kissing Camels Surgery Center, LLC, Cherry Creek Surgery Center, LLC, Arapahoe Surgery Center, LLC, and Hampden Surgery Center, LLC (collectively, "Plaintiffs" or "ASCs") should be required to produce all files associated with the processing of claims related to Defendant Aetna, Inc. ("Aetna"). This court considered the issue in its Order on Discovery Issues, and ordered Plaintiffs to produce every fourth file. *See* [#432]. After receiving an initial production from Plaintiffs (which Aetna represents is incomplete), Aetna filed a Request for Discovery Conference [#434, filed June 15, 2016]. Although not styled as such, this court considers

Aetna's request as a motion for reconsideration of this court's Order on Discovery Issues. Having reviewed Aetna's request that the court compel Plaintiffs to produce all 3800 files associated with the processing of Aetna's claims, this court DENIES that request, with the following limiting instructions.

## BACKGROUND

This court has recounted the factual and procedural background of this case in numerous discovery orders, and therefore recites here only the facts most relevant to the dispute at hand. The operative pleading in this action is the Second Amended Complaint, filed on August 12, 2014. [#213]. In the Second Amended Complaint, Plaintiffs allege that Aetna, as a member of a conspiracy involving other Defendants, refused to negotiate a network agreement with Plaintiffs and has routinely threatened healthcare providers who refer patients to or utilize the Plaintiff facilities with termination from Aetna's preferred provider network. [*Id.* at ¶ 80]. Specifically, Plaintiffs aver that beginning in at least May 2012, in furtherance of the Defendants' conspiracy, Aetna threatened physicians associated with the Kissing Camels Surgery Center and Plaintiffs' facilities in Denver with termination from its provider network and/or that it would post information on its provider website that the physicians regularly referred "patients to out-of-network providers, resulting in significantly higher out-of-pocket costs for your patient." [*Id.*]. Plaintiffs allege that Aetna took part in an August 29, 2012 meeting at which Defendant Centura Health Corporation ("Centura") and Audubon Surgery Center representatives incorrectly asserted that Plaintiffs' facilities' billing and collection practice violated Colorado law and requested that the insurance companies, including Aetna, refrain from conducting business with

Plaintiffs. [*Id.* at ¶ 51]. After this August 29 meeting, Aetna purportedly made written threats regarding termination directed at doctors associated with Plaintiffs. [*Id.* at ¶ 80].

After an unsuccessful attempt at dismissing the Second Amended Complaint, Aetna filed its "Answer and Additional Defenses to Plaintiff's [sic] Second Amended Complaint and Defendant Aetna, Inc.'s Counterclaims Against Plaintiffs" ("Answer and Counterclaims") on September 30, 2015 [#320]. In its Answer and Counterclaims, Aetna denies taking any actions to pressure facilities out of business. [*Id.* at ¶ 68]. In addition, it explains that its conduct with respect to physicians was proper so as to "enforce its contracts with its in-network providers." [*Id.* at ¶ 69]. Aetna also asserts a number of counterclaims: (1) declaratory relief under Colo. Crim. Code § 18-13-119 – Abuse of Health Insurance; (2) unjust enrichment; (3) tortious interference with contracts between Aetna and its members; (4) tortious interference with contracts between Aetna and its network physicians; (5) violation of Colo. Crim. Code § 6-1-105 – Deceptive Trade Practices; (6) fraud; (7) negligent misrepresentation; (8) violation of Colo. Crim. Code § 18-4-405 – Civil Theft; and (9) violation of § 1 of the Sherman Act.[1] [#320]. Underpinning its counterclaims are allegations that Plaintiffs engaged in a business practice that induced Aetna members to choose ASCs over in-network providers by eliminating out-of-network co-payments, coinsurance, and deductibles required by Aetna Plans. [*Id* at ¶ 83]. In turn, the ASCs submit to Aetna a claim for reimbursement that does not reflect the ASC's actual charges to the patient. [*Id.* at ¶¶ 86, 99, 100]. Rather, the charges to Aetna far exceed what is charged to the patient, resulting in higher reimbursement from Aetna. [*Id.* at ¶ 94]. Aetna

---

[1] Plaintiffs filed a Motion to Dismiss Counterclaims [#346], which is currently pending before the presiding judge, the Honorable William J. Martinez. This court therefore permitted discovery with respect to the counterclaims to move forward.

alleges that "[w]ith respect to an individual claim for reimbursement submitted to Aetna by one of the ASCs, Aetna does not know what the ASC actually charged the Aetna member," because "[t]he claims for reimbursement submitted by the ASCs to Aetna disclose only a single set of charges." [*Id.* at ¶¶ 96, 98]. Aetna further alleges that the claims for reimbursement from the ASCs misrepresent that the charges billed to Aetna and the charges billed to the Aetna members are based on a single common price. [*Id.* at ¶ 101]. Aetna contends that as a result of the ASCs' fraudulent billing submissions, it has suffered pecuniary harm by paying to the ASCs more than Aetna would have paid but for the misrepresentations therein, resulting in damages in an amount to be proven at trial. [*Id.* at ¶ 112].

To support its theory that the amount billed to Aetna members and the amount billed to Aetna are impermissibly different, Aetna seeks the claim files associated with the claims for reimbursement submitted to it by Plaintiffs. In their Status Report dated May 31, 2016,[2] Plaintiffs indicate that they proposed providing Aetna sample claims to use for its analysis. [#429 at 8]. Aetna refused, and identified approximately 3800 claims for which it requested the associated files. [*Id.* at 9]. Plaintiffs contend that producing all documents related to the 3800 claims would be "unnecessarily burdensome, expensive and time-consuming and inconsistent with the proportionality requirements of the revised Federal Rules of Civil Procedure and Tenth Circuit law." [*Id.*]. Plaintiffs further contend that the sample claim documents will suffice, because "Plaintiffs approximate in-network levels by using a standard formula that is the same across all claims." [*Id.* at 10]. Plaintiffs insist that "[t]here is no need to produce 3800 copies of

---

[2] Due to the number, frequency, and nature of the Parties' discovery disputes, and in recognition of the length of time that this case has been pending, this court required the Parties to submit a Joint Status Report identifying discovery issues and engage in a Status Conference regarding discovery disputes on a monthly basis.

this form because the policy is the same on all claims on which patient responsibility amounts were reduced to in-network levels." [*Id.*] Aetna objects to Plaintiffs' "unspecified sampling," arguing that Aetna "offered to withdraw its request if the ASCs would stipulate to the facts that will be demonstrated by the documents." [*Id.* at 18]. In weighing the competing interests of the Parties, the importance of the issues implicated by the discovery requested, whether Aetna had access to this information from another source, and whether the burden or expense of the proposed discovery outweighed its likely benefit, as well as the remaining time for discovery, this court ordered Plaintiffs to produce every fourth file as identified on the spreadsheet of Aetna claims. *See* [#432]. In so ordering, this court specifically contemplated that Aetna would use the information it gathered and extrapolate it across the entire sample, in order to avoid the production of each and every claim file. *See* [*id.* at 5]. This court then instructed the Parties to schedule a further informal discovery dispute conference, should additional files be necessary. [*Id.*]. Implicit in that instruction was the notion that further production would be permitted only if this court was persuaded that the sampling was insufficient.

On June 15, 2016, Aetna filed a Request for a Discovery Conference [#434], in which it urged the court to require Plaintiffs to produce all of the claim files because the discovery to date indicates "the ASCs maintained two sets of books," and reveals that the ASCs charge Aetna members for one surgical procedure, but charge Aetna for a different (and additional) procedures. [*Id.* at 3]. In response, Plaintiffs insist that the request is unduly burdensome, and that Aetna does not need all of the documents associated with the 3800 claims "to obtain the information it claims to need because it has data from all the ASCs containing fields such as the amounts billed to Aetna and the amounts collected from patients, as well as 30(b)(6) deposition

5

testimony from the ASCs and SurgCenter explaining the ASCs' billing and collection policies." [#440 at 2]. The ASCs further argue that Aetna does not need all of the documents associated with the 3800 claims because the "determinations are based on consistent policies applied across all claims, on which there has been ample deposition testimony, and for which the individual claims documents are not necessary." [*Id.* at 3-4]. Plaintiffs represent that they would need at least six additional weeks to produce all the claims documentation should the court compel production of such.

This court held a Discovery Conference on June 17, 2016, at which it directed the Parties to file any further briefing on the issue of the 3800 claim files by June 22, and address the specific reasons for why the sampling ordered by the court was insufficient for the purposes of this case. Aetna accordingly filed its Brief in Support of Aetna's Request that Plaintiffs Produce All Aetna Claim Files. [#452]. In that Brief, Aetna continued to argue that the claim files were highly relevant and, most important to this inquiry, unique. [*Id.* at 1]. Aetna further argues that "the ASCs have thus far resisted requests that they agree to forgo any argument that the sample of claim files they produce is insufficient or not representative of the full population of files"; and, "the ASCs appear poised to argue that the billing anomalies revealed in the sample claim files are merely one-off mistakes, as opposed to the product of their systematic effort to maintain a separate set of secret billing practices." [*Id.* at 6].

## ANALYSIS

As discussed above, Aetna's renewed request to have Plaintiffs produce all claim files essentially amounts to a motion for reconsideration of this court's prior order. As such, it "falls within a court's plenary power to revisit and amend interlocutory orders as justice requires."

*United Fire & Cas. Co. v. Boulder Plaza Residential, LLC,* No. 06–cv–00037-PAB-CBS, 2010 WL 420046, *3 (D. Colo. Feb. 1, 2010); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). Courts in this District have applied different standards on motions for reconsideration of non-final orders. *See United Fire & Cas. Co.*, 2010 WL 420046, at *3 (listing cases applying Rule 59(e) standard, Rule 60(b) standard, and "law of the case" standard). Nonetheless, the prevailing approach demonstrates that courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error. *See James v. Dunbar*, No. 09–cv–02479-PAB, 2010 WL 3834335, at *1 (D. Colo. Sep. 27, 2010).

After reviewing the Parties' briefs and entertaining further argument during the June 17, 2016 Discovery Conference, this court is not persuaded that its prior ruling requiring Plaintiffs to produce a sampling of the 3800 claim files was clearly in error. However, this court finds that it is inconsistent for Plaintiffs to refuse to produce the 3800 claim files on the basis that the additional files will yield no unique information, yet simultaneously evade being bound by the data (whether positive or negative) that those files yield. Indeed, in refusing full production, Plaintiffs have consistently represented to the court that the ASCs followed "a standard formula that is the same across all claims," and the "determinations are based on consistent policies applied across all claims." This court finds, in accepting those representations as true, that Plaintiffs should be precluded from arguing that the information and patterns gleaned from the sampling they provided are not the result of a standard formula or consistent policy. This court

7

cannot ascertain any benefit in allowing further discovery of the Aetna claim files, and will not entertain any additional, general requests for further extensions to an already-prolonged discovery period.

Accordingly, **IT IS ORDERED** that:

(1) Defendant Aetna, Inc.'s Request for Discovery Conference, which is construed as a Motion for Reconsideration [#434] is **DENIED**; and

(2) Plaintiffs are precluded from arguing that the information and/or patterns gleaned from the sampling provided are not the result of a standard formula or consistent policy, subject to any further order by Judge Martinez.

DATED:  June 29, 2016                                      BY THE COURT:


                                                           s/ Nina Y Wang
                                                           United States Magistrate Judge