**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-03012-WJM-NYW

KISSING CAMELS SURGERY CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC,
ARAPAHOE SURGERY CENTER, LLC, and
HAMPDEN SURGERY CENTER, LLC,

    Plaintiffs/Counterclaim Defendants,

v.

CENTURA HEALTH CORPORATION,
COLORADO AMBULATORY SURGERY CENTER ASSOCIATION, INC.,
and AETNA, INC.,

    Defendants/Counterclaim Plaintiffs.

**PLAINTIFFS' OPPOSITION TO CENTURA'S MOTION FOR LEAVE TO FILE SECOND MOTION FOR SUMMARY JUDGMENT**

Pursuant to this Court's Order of November 2, 2016, Plaintiffs hereby file this opposition to Centura's Motion for Leave to File Second Motion for Summary Judgment ("Centura's Motion") because extraordinary circumstances do not exist and because Plaintiffs would be prejudiced by an order allowing Centura to file a second motion for summary judgment when Plaintiffs were prohibited from serving new affirmative expert reports.

This Court's Revised Practice Standards prohibit parties from filing a second motion for summary judgment "without prior leave of court, which shall be granted in only the most extraordinary circumstances." WJM Revised Practice Standards III.E.2. Extraordinary

1

circumstances simply do not exist which would warrant allowing Centura to have a second bite at the apple.

Centura seeks to raise two arguments in its second motion for summary judgment. First, it seeks to adopt CASCA's argument that summary judgment should be granted under the *Noerr–Pennington* doctrine. The *Noerr–Pennington* doctrine has been a longstanding principle of antitrust law. In fact, it was raised in this case in CASCA's motion to dismiss filed on January 24, 2012 (Doc. 42)—two and a half years before Centura filed its initial motion for summary judgment on September 31, 2014 (Doc. 229). If Centura wanted to raise the *Noerr–Pennington* argument on summary judgment, it certainly could have done so in its initial motion.

In that regard, it is significant that every piece of evidence on which CASCA relies in its motion for summary judgment was available to counsel for Centura when its original motion was filed. CASCA's evidence includes excerpts from the deposition of Robert Schwarz, taken on October 29, 2013; excerpts from the deposition of Marc Reece, taken on March 16, 2014; and the attendance sheet from the August 29, 2012 meeting between CASCA and the insurers, which was produced in discovery long before September 30, 2014.

Centura's Motion makes no attempt to argue that extraordinary circumstances exist that would justify a second motion for summary judgment to include the *Noerr–Pennington* doctrine because there are no such circumstances. Rather, allowing Centura to file a second motion for summary judgment would merely allow Centura to raise additional arguments it chose not to make in its original motion.

The second argument that Centura seeks to raise in its second motion for summary judgment relates to the issue of antitrust injury. In support, Centura argues that two significant

events have occurred: (1) this Court's ruling on summary judgment in *Arapahoe Surgery Center, LLC et al. v. Cigna Healthcare, Inc. et al.*, No. 13-cv-03422-WJM-CBS and (2) recent discovery in this case. But because neither of these events constitutes an extraordinary circumstance, neither justifies Centura's Motion.

The *Cigna* ruling is not new: this Court ruled on summary judgment in *Cigna* on March 21, 2016—over seven months ago. If Centura believed that that ruling operates as collateral estoppel in this case, it could have and should have raised the issue last March. It did not. There can be nothing extraordinary about a seven month old ruling that would justify granting Centura's Motion.

Centura also argues that new evidence developed by Aetna and the other payor-Defendants following the close of Centura's fact discovery period justifies its attempt to file a second summary judgment. But, the evidence Centura cites to, including the testimony from a recent deposition of Plaintiffs' expert, could have been developed by Centura from information known to Centura before the close of its discovery period. Moreover, Centura filed its original motion for summary judgment *after* Magistrate Judge Boland granted Plaintiffs' Motion for Leave to Amend the Complaint on August 12, 2014, bringing Aetna, CASCA, and the other previously dismissed Defendants back into the case. (*See* Doc. 212.) Thus, Centura was aware that there would be further discovery in this case and did not seek an extension of the deadline for filing dispositive motions.

Even if these two events related to antitrust injury were extraordinary—which they are not—the Court should deny Centura's motion because of the extreme prejudice it would cause Plaintiffs. Plaintiffs would be unfairly prejudiced if Centura were allowed to file a new summary

judgment on the issue of antitrust injury because the Court precluded the Plaintiffs from offering affirmative expert opinions with new or revised theories after the previously dismissed Defendants were added back into the case. (*See* Order on Motion to Extend, Doc. 414.) Plaintiffs had argued that they should be permitted to serve new affirmative expert reports, but Centura strenuously objected, arguing that "Plaintiffs simply want a redo, to Centura's great prejudice." (Doc. 411 at 5.)

Now, based on arguments developed by Aetna and the other payor-Defendants (largely based on evidence Centura could have developed had it so chosen), Centura itself wants a re-do, even though the Plaintiffs were precluded from serving new affirmative expert reports. Centura attempts to argue that this would not be prejudicial because Plaintiffs will have to respond to Aetna's and CASCA's motions for summary judgment in any event. This argument, however, ignores the fact that there are claims in the operative complaint in which Centura is the only remaining Defendant, and, consequently, that Plaintiffs will not have to address in their responses to Aetna's and CASCA's motions. Specifically, Plaintiffs have claims against Centura for conspiracy to monopolize under Section 2 of the Sherman Act and Colorado law (Counts II and V), and for attempted monopolization under Section 2 of the Sherman Act and Colorado law (Counts III and VI).

Because extraordinary circumstances do not exist to justify Centura filing a second motion for summary judgment, and because Plaintiffs would be prejudiced by allowing Centura to renew its motion for summary judgment when they were prevented from serving new affirmative expert reports, Centura's motion should be denied.

Dated:  November 3, 2016					Respectfully submitted,


							*/s/ W. Tucker Brown*
							W. Tucker Brown
							WHATLEY KALLAS, LLP
							2001 Park Place Tower, Suite 1000
							Birmingham, AL  35203
							Tel.: (205) 488-1200
							Fax: (800) 922-4851
							Email:  tbrown@whatleykallas.com

							Joe R. Whatley, Jr.
							Colorado State Bar No. 38820
							WHATLEY KALLAS, LLP
							720 East Durant Street
							Suite E6
							Aspen, CO  81611
							Tel: (970) 300-4848
							Fax: (970)429-8280
							Email: jwhatley@whatleykallas.com

							Edith M. Kallas
							WHATLEY KALLAS, LLP
							1180 Avenue of the Americas, 20th Floor
							New York, NY  10036
							Tel.: (212) 447-7060
							Fax: (800)922-4851
							Email:  ekallas@whatleykallas.com

							Deborah J. Winegard
							WHATLEY KALLAS, LLP
							1068 Virginia Avenue, NE
							Atlanta, GA  30306
							Tel.: (404) 607-8222
							Fax: (404) 607-8451
							Email:  dwinegard@whatleykallas.com

Henry C. Quillen
WHATLEY KALLAS, LLP
159 Middle Street
Suite 2C
Portsmouth, NH  03801
Tel.: (603) 294-1591
Fax: (800) 922-4851
Email:  hquillen@whatleykallas.com

***Counsel for Plaintiffs and
Counterclaim Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 3rd day of November, 2016, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ W. Tucker Brown*
W. Tucker Brown