**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-03012-WJM-NYW

KISSING CAMELS SURGERY CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC,
ARAPAHOE SURGERY CENTER, LLC, and
HAMPDEN SURGERY CENTER, LLC,

       Plaintiffs/Counterclaim Defendants,

v.

CENTURA HEALTH CORPORATION,
COLORADO AMBULATORY SURGERY CENTER ASSOCIATION, INC.,
and AETNA, INC.,

       Defendants/Counterclaim Plaintiffs.

---

**COUNTERCLAIM DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
ON AETNA, INC.'S COUNTERCLAIMS**

**FILED UNDER SEAL - CONTAINS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

LIST OF CITATIONS AND ABBREVIATIONS ..................................................... v

INTRODUCTION ....................................................................................................... 1

MOVANTS' STATEMENT OF MATERIAL FACTS ............................................. 1

STANDARD OF REVIEW ........................................................................................ 6

ARGUMENT .............................................................................................................. 7

    I.     Aetna's Unjust Enrichment and Tortious Interference Counterclaims Are Preempted by ERISA ....................................................................................... 7

    II.    Summary Judgment Should Be Granted on Aetna's Unjust Enrichment Claim ........................................................................................................ 14

    III.   Summary Judgment Should Be Granted With Regard to Both of Aetna's Tortious Interference Claims With Respect to Counterclaim Defendants Kissing Camels and Dry Creek Because Both Are Time Barred .................................................................................... 22

    IV.   The ASCs Are Entitled to Summary Judgment With Regard to Aetna's Claim for Tortious Interference With Contracts Between Aetna and Its Members ........................................................................................................ 22

    V.    Summary Judgment Should Also Be Granted With Regard to Aetna's Claim For Tortious Interference With Contracts Between Aetna and Its Network Physicians ................................................................................................... 24

CONCLUSION ......................................................................................................... 26

i

# TABLE OF AUTHORITIES

**Cases**

*Admin. Comm. of Wal-Mart Assocs. Health and Welfare Plan v. Willard*,
   393 F.3d 1119 (10th Cir. 2004)............................................................................10

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004) ...................................................................................... 8, 12

*Agile Safety Variable Fund, L.P. v. RBS Citizens, N.A.*,
   793 F. Supp. 2d 1248 (D. Colo. 2011) ..................................................................7

*Allis-Chalmers Corp. v. Lueck*,
   471 U.S. 202 (1985) ............................................................................................12

*Am. Med. Ass'n v. United Healthcare Corp.*,
   00 CIV. 2800 (LMN), 2007 WL 683974 (S.D.N.Y Mar. 5, 2007)................... 15, 17

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..............................................................................................7

*Apache Corp. v. Dynegy Midstream Servs., Ltd. P'ship*,
   214 S.W.3d 554 (Tex. App.2006) ........................................................................20

*Auto–Chlor Sys., Inc. v. JohnsonDiversey*,
   328 F.Supp.2d 980 (D. Minn.2004) ....................................................................20

*Bausman v. Interstate Brands Corp.*,
   252 F.3d 1111 (10th Cir. 2001)............................................................................7

*Blue Cross & Blue Shield of Ala. v. Weitz*,
   913 F.2d 1544 (11th Cir. 1990)...........................................................................10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..............................................................................................6

*Central States v. Health Special Risk, Inc.*,
   2013 WL 2656159 (N.D. Tex. Jun. 13, 2013) ....................................................13

*Central States, Southeast and Southwest Areas Health and Welfare Fund*,
   53 F.3d 172 (7th Cir. 1995) ................................................................................14

*David P. Coldesina, D.D.S., P.C., Empl. Profit Sharing Plan & Trust v. Est. of Simper*,
   407 F.3d 1126 (10th Cir. 2005)................................................................ 8, 11, 13

*Davis v. City & County of Denver*,
    120 Colo. 186, 207 P.2d 1185 (1949) .................................................................20

*Elliot Industries Ltd. P'ship. v. PB Am. Prod. Co.*,
    407 F.3d 1091 (10th Cir. 2005)...........................................................................14

*Geddes v. United Staffing Alliance Emp. Med. Plan*,
    469 F.3d 919 (10th Cir. 2006) ............................................................................22

*Koenig v. Aetna Life Ins. Co.*,
    4:13-CV-00359, 2014 WL 7233358 (S.D. Tex. Aug. 4, 2014)............................17

*Koenig v. Aetna Life Ins. Co.*,
    4:13-CV-00359, 2015 WL 6473351 (S.D. Tex. Oct. 27, 2015) ...........................17

*Lyons v. Basby*,
    770 P.2d 1250 (Colo. 1989)................................................................................25

*Mem'l Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*,
    690 P.2d 207 (Colo. 1984)...........................................................................23, 24

*Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Sapulpa*,
    130 F.3d 950 (10th Cir. 1997) ............................................................................14

*Pratt v. Smart Corp.*,
    968 S.W.2d 868 (Tenn. Ct. App.1997).................................................................20

*Prilliman v. City of Canon City*,
    146 Colo. 159, 360 P.2d 812 (1961) ...................................................................20

*Pulte Home Corp. v. Countryside Cmty. Ass'n, Inc.*,
    Supreme Court Case No. 14SC77, 2016 WL 5375715 (Colo. Sept. 26, 2016)......15

*Rector v. City & County of Denver*,
    122 P.3d 1010 (Colo.App.2005) .........................................................................20

*Salzer v. SSM Health Care of Oklahoma, Inc.*,
    762 F.3d 1130 (10th Cir. 2014)....................................................................12, 13

*Skyland Metro. Dist. v. Mt. W. Enter., LLC*,
    184 P.3d 106 (Colo. App. 2007) .........................................................................20

*Westin Operator, LLC v. Groh*,
    347 F.3d 606 (Colo. 2015)..................................................................................25

**Statutes**

29 U.S.C. § 1002(8) ............................................................................................................... 13, 14

29 U.S.C. § 1144(a) ................................................................................................................... 13

Colo. Rev. Stat. § 12-47-801 ..................................................................................................... 25

Colo. Rev. Stat. § 13-80-102(1)(a) ............................................................................................ 22

ERISA § 502(a) ......................................................................................................................... 13

ERISA § 502(a)(3) ..................................................................................................................... 13

**Other Authorities**

Colorado Criminal Code Section 18-13-119 ........................................................................ 11, 12

Colorado Criminal Code Section 18-13-119(1)(a) ..................................................................... 11

Colorado Criminal Code Section 18-13-119(3) ......................................................................... 11

Restatement (Second) of Torts § 766 (1979)............................................................................. 23

**Rules**

Fed. R. Civ. Proc. 56(c)............................................................................................................... 6

## LIST OF CITATIONS AND ABBREVIATIONS

| Exhibit | Abbreviation | Full Citation |
|---|---|---|
| A | Consiglio 30(b)(6) | 30(b)(6) Deposition of Robyn Consiglio, June 24, 2016 |
| B | Halloran | 30(b)(6) Deposition of Stephen Halloran, July 26, 2016 |
| C | Bamberger | Deposition of Expert Gustavo Bamberger, Ph.D., October 7, 2016 |
| D | Vistnes Supplemental Report | Supplemental Expert Report of Gregory S. Vistnes, Ph.D. dated September 21, 2016 |
| E | Brown Declaration | Declaration of W. Tucker Brown dated November 1, 2016 |
| F | Giess | Deposition of Tim Giess, May 18, 2016 |
| G | Gessner | Deposition of Eric Gessner, DPM, June 18, 2014 |
| H | D'Ambrosia | Deposition of Christopher D'Ambrosia, June 19, 2014 |
| I | Ross | Deposition of Scott Ross, M.D., May 21, 2014 |
| J | Bamberger Report | Expert Report of Gustavo Bamberger dated July 29, 2016 |
| K | Carley | Deposition of Mark Carley, May 20, 2014 |

## INTRODUCTION

The Court in its July 13, 2016 Order Granting in Part and Denying in Part the ASCs' Motion to Dismiss Counterclaims dismissed all but three of Aetna's counterclaims: unjust enrichment (Count II), tortious interference with contracts between Aetna and its members (Count III), and tortious interference with contracts between Aetna and its network physicians (Count IV). (Doc. 460) ("MTD Order").  Summary judgment should now be granted with regard to each of Aetna's remaining counterclaims.

## MOVANTS' STATEMENT OF MATERIAL FACTS[1]

1.     Plaintiff and Counterclaim Defendant Kissing Camels Surgery Center, LLC ("Kissing Camels") is an ambulatory surgery center located in Colorado Springs, Colorado, which opened in 2010 and began submitting claims for reimbursement to Aetna that year. (Aetna Counterclaim ¶¶ 50-51).

2.     Plaintiff and Counterclaim Defendant Arapahoe Surgery Center, LLC d/b/a SurgCenter on Dry Creek ("Dry Creek") is an ambulatory surgery center located in Englewood, Colorado, which opened in 2010 and began submitting claims for reimbursement to Aetna that year.  (Aetna Counterclaim ¶¶ 54-55).

3.     Plaintiff and Counterclaim Defendant Cherry Creek Surgery Center, LLC ("Cherry Creek") is an ambulatory surgery center located in Denver, Colorado, which opened in 2012 and began submitting claims for reimbursement to Aetna that year.  (Aetna Counterclaim ¶¶ 52-53).

---

[1] The Movants' Statement of Material Facts is referred to as "SMF" in the Argument.

4.    Plaintiff and Counterclaim Defendant Hampden Surgery Center, LLC ("Hampden") is an ambulatory surgery center located in Denver, Colorado, which opened in 2012 and began submitting claims for reimbursement to Aetna that year.  (Aetna Counterclaim ¶¶ 56-57).

5.    The Plaintiff ASCs have discounted patient payment amounts to their in-network levels.  The claim forms submitted by the ASCs to Aetna during the time this policy was in effect contained a disclosure stating:  "The insured's portion of this bill has been reduced in amount so the patient's responsibility for the deductible and copay amount is billed at in network rates."  (Aetna Counterclaim ¶ 102).

6.    None of the Plaintiff ASCs have entered into a provider network agreement with Aetna.  Therefore, the Plaintiff ASCs are out-of-network (OON) with Aetna.  (Aetna Counterclaim ¶ 58).

8.    Billed charges are the charges submitted by medical providers, such as the Plaintiff ASCs, to health insurers, such as Aetna.  (Ex. A, Consiglio, 30:16-22).

9.    Aetna's plan documents provide that they only cover ████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ███████████

10.    Aetna does not pay OON providers their billed charges.  Rather, Aetna plans typically define a covered charge for OON services as "the lesser amount between (1) the

provider's billed charge for the services or (2) the reasonable amount determined by Aetna."
(Aetna Counterclaim ¶ 24).

11.     The amount of payment made to an OON provider is determined by the plan
documents.  (Ex. A, Consiglio 30(b)(6) 25:8-11; 50:7-12).[2]

12.     Aetna offers its plan sponsors different options for the determination of OON
payments, ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

13.     An "allowed amount" is the amount that Aetna determines under the terms of its
plans to pay for a particular service.  (Ex. C, Bamberger, 251:1-6).

14.     A summary plan description is a document that an employer produces that
describes their entire benefit program. (Ex. B, Halloran, 11:14-17).

15.     When Aetna provides services to a self-insured health plan, the operating
document that Aetna uses in determining coverage is referred to as the booklet.  (Ex. B,
Halloran, 13:15-19).

16.     When Aetna provides health insurance for a fully-insured client, the document
setting forth the terms of coverage is the certificate of coverage. (Ex. B, Halloran, 13:21-25).

17.     ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████

---

[2] It is not necessary for purposes of this Motion to provide all of the details regarding
how Aetna processes OON claims.

18. 

19.    Aetna plan documents contain language excluding from coverage charges the recipient has no legal obligation to pay.  (Ex. B, Halloran, 53:9-17; 64:1-10; Aetna Counterclaim ¶ 34).

20.    "Many Aetna plans authorize Aetna to recover any overpayments made by the plans." (Aetna Counterclaim ¶ 14).



24.     Aetna considers "fee forgiveness" to be when a provider does not hold a member responsible for their coinsurance and other member responsibility amounts. (Ex. A, Consiglio, 30(b)(6), 90:1-6).



32.     Patients ultimately make the decision of where to have their ambulatory surgery procedures performed.  (Ex. G, Gessner, 43:3-7:  "How do you decide which ambulatory surgery center you're going to take a patient to?  I don't decide…My patients decide.") (Ex. H, D'Ambrosia, 55:7-24:  "I see a patient at my clinic.  I say, I go to Dry Creek on Tuesday.  I go to [HealthONE's ASC] Rose on Thursday.  Where do you want to go?  And based on what the patients say, you go with that location?  Yes."); (Ex. I, Ross, 177:4-16:  "If the patient has paid for out of network benefits as part of their Premier (sic), then they have the right to be seen at an out of network…facility.  It's a patient choice issue.").

33.     Aetna's claims for damages are based on its assertion that it made "overpayments to each ASC for services rendered by the ASC to Aetna Members due to false and misleading misrepresentations in the claims for reimbursement submitted by the ASC."  (Aetna Counterclaim ¶ 165).

## STANDARD OF REVIEW

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"When the movant has the burden of proof on a claim or defense, the movant must submit evidence to establish the essential elements of its claim or affirmative defense." *Agile*

*Safety Variable Fund, L.P. v. RBS Citizens*, N.A., 793 F. Supp. 2d 1248, 1256 (D. Colo. 2011).

"In contrast, if the movant 'does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Id.* (quoting *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001)).

## ARGUMENT

## I.   AETNA'S UNJUST ENRICHMENT AND TORTIOUS INTERFERENCE COUNTERCLAIMS ARE PREEMPTED BY ERISA.

The ASCs are aware that this Court has previously addressed the issue of ERISA preemption. However, Aetna's own pleadings and testimony in the record here clearly establish that ERISA preempts Aetna's claims for unjust enrichment and for tortious interference with contracts between Aetna and its members. In denying the ASCs' motion to dismiss the unjust enrichment and tortious interference claims, this Court previously rejected the ASCs' preemption argument, finding:

> The ASCs' Motion does not establish that Aetna or United's unjust enrichment or tortious interference claims are based solely on duties created by ERISA or by an ERISA plan. As for tortious interference, Aetna and United have plausibly alleged that the ASCs are acting contrary to public policy as expressed in the 'abuse of health insurance' statute, Colo. Rev. State. § 18-13-119 . . . . As for unjust enrichment, this same statute could also conceivably support the requirement that the ASCs have been enriched under circumstances that would make it unjust for the defendant to retain the benefit.

MTD Order, p. 20.

As discussed below, the record developed in discovery clearly shows that Aetna's unjust enrichment and tortious interference claims are based solely on duties created by its ERISA plan documents. As further discussed below, the "abuse of health insurance statute" does not create a

duty independent of the plan documents and therefore cannot be used as an independent source for these state law claims.  The ASCs would urge this Court to take a fresh look at the preemption issue in light of the record developed in this case and the arguments made herein.

"There are two aspects of ERISA preemption: (1) 'conflict preemption' and (2) remedial or 'complete preemption.'" *David P. Coldesina, D.D.S., P.C., Empl. Profit Sharing Plan & Trust v. Est. of Simper*, 407 F.3d 1126, 1135-36 (10th Cir. 2005). Aetna's claims are foreclosed under the principles of both complete preemption and conflict preemption.

A state law cause of action is completely preempted by ERISA "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)[], and where there is no other independent legal duty that is implicated by a defendant's actions." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).  Aetna's claims satisfy both prongs of *Davila*.

Despite Aetna's protestations to the contrary, Aetna seeks to enforce the terms of its plans with its members.  The crux of Aetna's state-law counterclaims is Aetna's contention that it made overpayments to the ASCs in violation of the plans' provisions.  Aetna Counterclaim ¶¶ 134, 137, 138, 143-158.  Specifically, Aetna contends that it made the alleged overpayments to the ASCs because the ASCs did not charge the out-of-network responsibility amounts required by Aetna plan documents.  As stated by Aetna's damages expert, Dr. Bamberger:

> Many Aetna plans provide members coverage for services performed by both contracted in-network providers as well as non-contracted out-of-network providers.  Aetna plans typically encourage plan members to use in-network providers through financial incentives in order to control healthcare costs for the health plan.  For example, Aetna plan members may be responsible for paying higher co-payments and deductibles when utilizing out-of-network providers rather than in-network providers.  The higher member payment responsibilities also serve to make Aetna members sensitive to the costs of out-of-network services that will be charged to their health plan.  As a result of these financial incentives, in-network providers typically receive more patient volume from

Aetna plan members (i.e. in exchange for discounted rates). Aetna alleges that the counterclaim defendants have circumvented and interfered with this aspect of the design of Aetna's health plans by waiving, discounting, or otherwise declining to collect the payments that Aetna members were required to pay for out-of-network services than would have been the case.

(Ex. J, Bamberger Report, ¶5, p. 3).

Dr. Bamberger reiterated this opinion during his deposition:

And the plan design is, you know, specifically implemented to give consumers a sufficient incentive to go in-network instead of out of network. If the plan sponsors thought, "If we charge them a dollar more to go out of network, they're unlikely to go out of network," they could charge a dollar more. They don't charge a dollar more. They charge materially more. So the plan design is – is set up so that there is a material difference between the in-network and out-of-network. And that – that difference is enough to drive decisions. Otherwise, the plan design is ineffective.

(Ex. C, Bamberger, 138:20-139:12).

Dr. Bamberger's calculation of Aetna's alleged damages assumes a "but-for" world in which the Aetna plan provisions were not breached, which, in his view, would have resulted in all of the patients treated at the ASCs instead treated at in-network facilities:

Thus, to estimate damages, I treat each of the referrals to a counterclaim defendant as a referral to an in-network ASC in the but-for world.

In the prior section of this report, I determined that, in the but-for world, each of the referrals to a counterclaim defendant ASC would have instead been performed in an in-network ASC. In this section, I determine the amount that Aetna would have paid for each procedure if it had been performed at an in-network ASC.

(Ex. J, Bamberger Report, ¶¶ 15-16, p. 10).

Aetna claims its plan documents specifically require members to pay their deductibles and other responsibility amounts before Aetna pays plan benefits, including out-of-network benefits. As stated by Aetna's 30(b)(6) witness:

You asked about language in the document where it may say – or language about the plan not paying and the member is not billed.



(Ex. B, Halloran, 41:20 – 42:11 and Exhibit 2 thereto).

Aetna also claims its plan documents contain provisions giving Aetna the right to recover any overpayments. To the extent that Aetna believed it should have paid the ASCs at the in-network rate rather than at the out-of-network rates set forth in its members' plans, Aetna could have recovered these alleged overpayments pursuant to the right of recovery of overpayments provisions. Aetna therefore could have sought relief under § 502(a), specifically § 502(a)(3) to redress the alleged overpayment to the ASCs. *See, e.g., Admin. Comm. of Wal-Mart Assocs. Health and Welfare Plan v. Willard*, 393 F.3d 1119, 1122-23 (10th Cir. 2004) (finding that a plan administrator may maintain an action for restitution under § 502(a)(3)). *See also Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544 (11th Cir. 1990) (affirming district court's determination that "'an equitable action to recover benefits erroneously paid . . . falls within the clear grant of jurisdiction contained in 29 U.S.C. § 1132(a)(3).'" In fact, the Court held that United sufficiently pled a claim pursuant to 29 U.S.C. § 1132(a)(3) based on allegations related to the same conduct. MTD Order, at 14-16. Clearly, Aetna could have asserted an ERISA claim under Section 502, but chose not to do so.

Moreover, Aetna's claims do not arise from an independent source. As the Tenth Circuit has explained, "a claim . . . falls within ERISA's civil enforcement scheme when it is based solely on legal duties created by ERISA or the plan terms, rather than some other independent source." *Coldesina*, 407 F.3d at 1137. Aetna's state-law claims hinge on whether their subscribers were required to pay copayments and deductibles, a question that could only be decided by reference to their ERISA plans.

Aetna cannot attempt to cite to section 18-13-119 of the Colorado Criminal Code as the independent source because that statute does not create a legal duty independent of the ERISA plan terms. Rather, to the contrary section 18-13-119 is expressly dependent on the terms of the ERISA plans themselves. *See* § 18-13-119(1)(a)("Business practices that have the effect of eliminating the need for actual payment by the recipient of health care of **required copayments and deductibles in health benefit plans** interfere with contractual obligations entered into between the insured and the insurer relating to such payments") (emphasis added); § 18-13-119(3) ("[I]f the effect is to eliminate the need for payments by the patient of any **required deductible or copayment applicable in the patient's health benefit plan**, a person who provides health care commits abuse of health insurance if the person knowingly: (a) Accepts from any third-party payor, as payment in full for services rendered, the amount the third-party payor covers; or (b) Submits a fee to a third-party payor which is higher than the fee he has agreed to accept from the insured patient with the understanding of waiving the required deductible or copayment") (emphasis added).

Thus, section 18-13-119 does not create an independent legal duty. Aetna's claims are indistinguishable from the claims at issue in *Davila* where the plaintiff brought claims under the

Texas Health Care Liability Act (THCLA) and argued that the duties imposed by the THCLA

"arise independently of ERISA or the plan terms." *Davila*, 542 U.S. at 212. The Court rejected

the plaintiff's argument:

> **[I]nterpretation of the terms of respondents' benefit plans forms an essential part of their THCLA claim,** and THCLA liability would exist here only because of petitioners' administration of ERISA-regulated benefit plans. **Petitioners' potential liability under the THCLA in these cases, then, derives entirely from the particular rights and obligations established by the benefit plans.** So, unlike the state-law claims in *Caterpillar*, *supra*, respondents' THCLA causes of action are not entirely independent of the federally regulated contract itself.

*Id.* at 213 (emphasis added). In announcing this rule, the Supreme Court pointed to a similar case

involving the Labor Management Relations Act ("LMRA") in which it found the LMRA

preempted a state law bad-faith handling of insurance claim because the "'**duties imposed and**

**rights established through the state tort . . . derive[d] from the rights and obligations**

**established by the contract**.'" *Davila*, 542 U.S. at 213 (quoting *Allis-Chalmers Corp. Lueck*,

471 U.S. 202, 217 (1985)) (emphasis added).

Aetna's state-law claims are also indistinguishable from the tortious interference claims

the Tenth Circuit found to be preempted in *Salzer v. SSM Health Care of Oklahoma, Inc.,* 762

F.3d 1130, 1133 (10th Cir. 2014), where the plaintiff contended that the defendants' tortious

interference deprived him of the discount afforded to him by his contract with his insurer. In

concluding that ERISA completely preempted the plaintiff's tortious interference claim, the

Court found that plaintiff could have brought his tortious interference claim under ERISA §

502(a) and determined that the claim was not independent:

> As in Davila, [the plaintiff's] claim for tortious interference can succeed only if his ERISA plan actually entitled him to a discount for the services provided by [the defendant].  Accordingly, **interpretation of the Plan is a necessary component of the claim and thus the legal duty at issue cannot be described**

> **as "independent of ERISA."   His right to relief depends upon Plan
> provisions.**

*Salzer*, 762 F.3d at 1138 (emphasis added).

Because Aetna could have sought relief under § 502(a)(3) and because the legal duty at issue cannot be described as independent of ERISA, summary judgment should be granted with regard to Aetna's claims for unjust enrichment and for tortious interference with contracts between Aetna and its members. Both claims are completely preempted by ERISA.

Aetna's claims are also pre-empted by ERISA's express conflict provision, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any [ERISA] plan." 29 U.S.C. § 1144(a). Aetna's state law claims have a connection to and reference the plans at issue.  As the Court found in *Central States v. Health Special Risk, Inc.*, Civil Action No. 3:11-cv-2910-D, 2013 WL 2656159, at *5-6 (N.D. Tex. Jun. 13, 2013), Aetna's claims are "in reality an action to recoup previously-paid ERISA plan benefits" and, accordingly are conflict preempted.

Moreover, the claims "affect the relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries and the beneficiaries."  *Coldesina*, 407 F.3d at 1136.  An ERISA "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).  As medical providers providing healthcare services to Aetna plan participants, the Plaintiff ASCs were beneficiaries under Aetna's plans.  Accordingly, a dispute between an ERISA fiduciary such as Aetna and medical care providers such as the ASCs who receive benefits from the fund involves "a relationship which is of primary concern under ERISA":

> ERISA defines the term beneficiary as "a person designated by a participant
> …who is or may become entitled to a benefit" under a plan. 29 U.S.C. § 1002(8).
> A medical care provider who receives benefits from the fund at the behest of a
> participant is a beneficiary. Hence, according to the terms of the statute, this
> dispute is between a fiduciary and a beneficiary; a relationship which is of
> primary concern under ERISA.

*Cen. States, Se. and Sw. Areas Health and Welfare Fund*, 53 F.3d 172, 173-74 (7th Cir.

1995)(citations omitted).  *See also Weitz*, 913 F.2d at 1548 (noting that "[w]hile . . . suits by

fiduciaries against third parties wrongfully in receipt of payments are not at the heart of

Congressional purpose in passing ERISA, neither do they contravene that purpose" and that "it

could be argued that allowing such suits would tend to preserve the integrity of ERISA-governed

funds, which is consonant with the central goals of ERISA").

## II.   SUMMARY JUDGMENT SHOULD BE GRANTED ON AETNA'S UNJUST ENRICHMENT CLAIM.

### A.   An Express Contract Controls the Subject Matter of the Litigation

Aetna is precluded from pursuing an unjust enrichment claim because an express contract

– Aetna's plans – control the subject matter of this litigation. "'[T]he hornbook rule [is] that

quasi-contractual remedies . . . are not to be created when an enforceable express contract

regulates the relations of the parties with respect to the disputed issue.'"  *Elliot Indus. Ltd. P'ship*

*v. PB Am. Prod. Co.*, 407 F.3d 1091, 1117 (10th Cir. 2005) (quoting *Member Servs. Life Ins. Co.*

*v. Am. Nat'l Bank & Trust Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997)).

As the Supreme Court of Colorado recently noted, this "hornbook" rule applies when an

express contract "addresses the alleged obligation to pay," thereby precluding a claim for unjust

enrichment.  *Pulte Home Corp. v. Countryside Cmty. Ass'n, Inc.,* Supreme Court Case No.

14SC77, 2016 WL 5375715, at *11 (Colo. Sept. 26, 2016). An express contract bars a claim for

unjust enrichment not only as to those persons who are parties to the agreement but also as to those persons whose rights and obligations are determined by reference to the agreement. For example, the express contract at issue in *Pulte* was the Declaration of Covenants, Conditions and Restrictions of Countryside Community Association ("CCR") filed by the developer. Although the association was not a party to the agreement, it was nonetheless subject to the agreement's restrictions.

In *American Medical Association v. United Healthcare Corp.*, 00 CIV. 2800 (LMN), 2007 WL 683974, at *11 (S.D.N.Y Mar. 5, 2007), the Court specifically addressed whether health benefit plans precluded an unjust enrichment counterclaim filed by the insurer against a healthcare provider where the insurer is a party to the plan but the provider is not.  The Court held that "Counterclaim Plaintiffs' unjust enrichment claim is precluded by existing contracts between Counterclaim Plaintiffs and insurance beneficiaries that govern the terms of reimbursement for the medical services provided by [the healthcare provider]." *Am. Med. Ass'n*, 2007 WL 683974, at *11. The Court reasoned that "the health insurance contracts between Counterclaim Plaintiffs and the insurance beneficiaries, which include terms setting reimbursements paid for the provision of medical services, govern the subject matter of the dispute," that the "counterclaim complaint's allegations . . . demonstrates that it is premised on the terms of the underlying contracts between Counterclaim Plaintiffs and insurance beneficiaries," and that the "Counterclaim Plaintiffs repeatedly invoke the terms of those contracts as the basis of these claims." *Id*. Aetna's plans are likewise determinative with regard to Aetna's claims because, as testified by Aetna's 30(b)(6) witness, Aetna's plans specifically provide for how Aetna determines how much to pay out-of-network providers:

Q:  Just so we're on the same page, can you give me your understanding what an out-of-network claim is?

A:  Out-of-network claim is services rendered from a provider that does not participate in any of Aetna's networks.

Q:  And the amount of payment that is to be provided by an out-of-network claims provider is typically said by the plan documents?

A:  That's correct.

(Ex. A, Consiglio 30(b)(6) 25:3-11).

Because the plan controls, Aetna must assert any claim pursuant to the terms of the plan and summary judgment is appropriate with regard to Aetna's unjust enrichment claim.

Moreover, Aetna should be estopped from arguing that the principle does not apply because the ASCs are not parties to the plans.  Notably, in litigation with an ambulatory surgery center in the Southern District of Texas, Aetna took the position that an unjust enrichment claim can be foreclosed even if one of the litigants is not a party to the agreement:

Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory. When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement. Accordingly, because a claim for unjust enrichment is based on quasi contract, it is unavailable when a valid, express contract governing the subject matter of the dispute exists.  This rule is applicable not only when the plaintiff is seeking to recover in equity from the party with whom he expressly contracted, but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who is alleged to have benefited from its performance.  By definition, the converse must also be true, i.e., a third party foreign to the contract cannot recover in unjust enrichment when a contract covers the services furnished.  Indeed, numerous courts have consistently held that claims for unjust enrichment may be precluded by the existence of a contract governing the subject matter of the dispute even if one of the parties to the lawsuit is not a party to the contract.

*Koenig v. Aetna Life Ins. Co.*, Aetna's Motion to Dismiss Plaintiffs' Third Amended Complaint,

No. 4:13-cv-00359, 2014 WL 7233358 (S.D. Tex. Aug. 4, 2014) (citations and quotations

omitted).  Notably, in support of its contention that "numerous courts have consistently held that claims for unjust enrichment may be precluded by the existence of a contract governing the subject matter of the dispute even if one of the parties to the lawsuit is not a party to the contract," Aetna cited *American Medical Association v. United Healthcare Corp.*, 00 CIV. 2800 (LMN), 2007 WL 683974 (S.D.N.Y Mar. 5, 2007).  *See* 2014 WL 7233358 n.61.  Aetna ultimately prevailed on this argument; the Court granted summary judgment with regard to the plaintiff, North Cypress's unjust enrichment claim, finding the claim barred by the existence of an express agreement, despite the fact that the North Cypress was not a party to the agreement. *Koenig v. Aetna Life Ins. Co.*, 4:13-CV-00359, 2015 WL 6473351, at *7-8 (S.D. Tex. Oct. 27, 2015).

### C.     Aetna's Unjust Enrichment Claim is Barred by the Voluntary Payment Rule.

As this Court has previously found, Aetna was fully aware of the ASCs' policies of reducing patient responsibility amounts to their in-network levels.  (MTD Order, p. 18).  ▮

▮

▮  Aetna admits that this

disclosure was on the ASCs' claims forms and that it alleged wrongdoing from the claim forms. (Aetna Counterclaim ¶102).  Aetna also admits that it placed the OON 426 flag on all of the ASCs.  (SMF 26-29).  Nevertheless, ▮

▮

▮

▮

▮



Ex. 6 to Ex. E, Brown Decl. (emphasis in the original).





(Ex. A, Consiglio 30(b)(6), 102:9 – 104:7 and Ex. 1 thereto)

Aetna also notified the ASCs that it would be reducing payment on their claims after

imposition of the flags.  For example, in a letter to Cherry Creek, Aetna stated:

> It has come to our attention that there are statements on your claim submissions
> which disclose your intentions to honor Aetna patients' in-network financial
> responsibilities.

* * * * *

> Therefore, effective immediately, we will be adjudicating your claims as if the
> amounts billed reflect reductions in member responsibilities, i.e., bills that are, in
> fact, lower than the amounts you are presenting.  As such, the amounts billed will
> be reduced by the applicable out-of-network penalty for each member.

Ex. 3 to Ex. E, Brown Decl.

Accordingly, Aetna's unjust enrichment claim is barred by the voluntary payment rule:

> The voluntary payment rule has been adopted in Colorado. *See Prilliman v. City
> of Canon City,* 146 Colo. 159, 360 P.2d 812 (1961); *Davis v. City & County of
> Denver,* 120 Colo. 186, 207 P.2d 1185 (1949); *Rector v. City & County of
> Denver,* 122 P.3d 1010 (Colo. App.2005). The rule is a defense to claims
> asserting unjust enrichment. *Apache Corp. v. Dynegy Midstream Servs., Ltd.
> P'ship,* 214 S.W.3d 554, 565 (Tex. App.2006). The rule "provides that where one
> makes a voluntary payment with knowledge of all relevant facts, and then sues to

recover that payment, there generally can be no recovery, even if there was no legal liability to pay in the first place." *Auto–Chlor Sys., Inc. v. JohnsonDiversey,* 328 F.Supp.2d 980, 1011 (D. Minn.2004) (quoting *Pratt v. Smart Corp.,* 968 S.W.2d 868, 871 (Tenn. Ct. App. 1997)).

*Skyland Metro. Dist. v. Mt. W. Enter., LLC*, 184 P.3d 106, 127 (Colo. App. 2007). As noted above, Aetna was on notice of any "waiver" that the Counterclaim Defendants were undertaking and chose to pay the claims anyway. There is no evidence in the record that Aetna paid due to mistake, duress or under protest. In fact, Aetna has alleged that it had no contractual obligation to pay these claims at all. (SMF 17-19). Yet, Aetna freely paid these claims and was the sole arbiter of the amounts paid. (SMF 31). This Court recognized these facts in the MTD Order:

> Counterclaimants do not *pay* what the ASCs *charge*. Counterclaimants instead pay what they believe to be a reasonable amount for the services rendered. (ECF No. 320 ¶ 24.) In these circumstances, moreover, Counterclaimants were contractually privileged not to pay anything to the ASCs given the ASCs' alleged waiver of Cost Sharing Responsibility payments. (ECF No. 320 ¶ 34).

MTD Order, p. 13 (with citations to United's Counterclaims omitted).

To come back and claim overpayment based on unjust enrichment violates the Voluntary Payment Rule. Summary judgment on the unjust enrichment claim should be granted.

### D.     Aetna Has Not Suffered a Detriment.

Aetna has not suffered a detriment because Aetna does not pay the amount billed by the ASCs. (SMF 10) Instead, Aetna pays the OON payment amount as determined by Aetna. *Id.* Aetna cannot contend that Aetna's payments to the ASCs were unjust in light of Aetna's role in determining the amount of payments. In this case, as previously explained, although Aetna contends that the ASCs overcharged them, it alleges that it does not pay billed charges and bases the amounts it pays the ASCs on their own criteria. (SMF 10, Aetna Counterclaim ¶ 24). ▮

████████████████████████████████████████████████ In this regard,

Aetna is not unique, As Centura's Vice President of Managed Care and Risk Products, who

formerly worked for Cigna stated:  "Payers rarely reimburse these centers at full billed charges."

(Ex. K, Carley, 64:20-65:2).

Moreover, Aetna's claimed detriment resulted from Aetna's "reliance" on the alleged

fraudulent scheme of the ASCs. *See* Counterclaims ¶ 137 ("In reliance on the false inflated

charges in these claims for reimbursement, Aetna has processed benefits for services provided by

the ASCs to Aetna Members, which has cause Aetna to pay to each ASC amounts in excess of

what Aetna was actually required to pay.") However, as the Court determined in its order on the

motion to dismiss, there was no fraud and, as such, Aetna's assertion that the ASCs were

unjustly enriched by their fraud must fail. MTD Order, at 18-19.

### E.       The ASCs Were Not Unjustly Enriched.

Aetna's unjust enrichment claim fails because Aetna can present no evidence that the

ASCs were unjustly enriched. The ASCs provided medically necessary services to Aetna's

insureds and were paid in accordance with the provisions of the plans related to payments for

out-of-network providers. (SMF 10-11) Aetna has developed no evidence of the true value of the

services that the ASCs provided, much less any evidence that its payments for the ASCs'

services, which were usually far below the amounts the ASCs charged Aetna, exceeded the value

of those services.  If Aetna's theory is that the true value of those services is equal to Aetna's

payments for similar services to in-network ambulatory surgical centers, then Aetna's position is

not only wrong, but arbitrary and capricious. *Geddes v. United Staffing Alliance Emp. Med. Plan,*

469 F.3d 919, 928–31 (10th Cir. 2006) (holding that defining the "usual and customary fee" for

medical services as what the plan paid for in-network services was arbitrary and capricious).

**III.     SUMMARY JUDGMENT SHOULD BE GRANTED WITH REGARD TO BOTH OF AETNA'S TORTIOUS INTERFERENCE CLAIMS WITH RESPECT TO COUNTERCLAIM DEFENDANTS KISSING CAMELS AND DRY CREEK BECAUSE BOTH ARE TIME BARRED.**

In Colorado, a claim for tortious interference is subject to a two-year statute of

limitations. Colo. Rev. Stat. § 13-80-102(1)(a).  The Plaintiff ASCs named Aetna as a Defendant

in the First Amended Complaint (Doc. 65), which was filed on April 1, 2013.  ██████████

████████████████████████████████████████████████████████████████████

████████████████████████  Aetna documents show that the allegation against Kissing

Camels that resulted in a flag is that Kissing Camels ██████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

(Ex. 2 to Ex. E, Brown Decl.)  Both of these flags were implemented well before the First

Amended Complaint was filed.  Under this Court's ruling on summary judgment in the related

case *Arapahoe Surgery Center, LLC et al. v. Cigna Healthcare, Inc. et al.* (Doc. 160) the time for

filing the tortious interference counterclaim relates back to the First Amended Complaint,

meaning that any claims for tortious interference against Dry Creek and Kissing Camels before

April 1, 2011 are time-barred.

**IV.     THE ASCs ARE ENTITLED TO SUMMARY JUDGMENT WITH REGARD TO AETNA'S CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTS BETWEEN AETNA AND ITS MEMBERS.**

As the Court explained in its MTD Order, "'Colorado recognizes the tort of intentional

interference with contractual relations,'" and has adopted the definition provided in the

Restatement (Second) of Torts."  MTD Order, at 22 (quoting *Mem'l Gardens, Inc. v. Olympian*

*Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 201 (Colo. 1984).  The Restatement provides the

following definition:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766 (1979).

Aetna fails to establish any of these elements. Aetna cannot establish the ASCs

intentionally and improperly interfered with a contract because it is ultimately a patient's choice

as to whether to have their surgical services performed at one of the ASCs. (SMF 32). Moreover,

Aetna cannot show that its members breached their agreements with Aetna or that the breach was

the result of interference by the ASCs because most Aetna members have plans with OON

benefits. (SMF 7).

Finally, Aetna's tortious interference claim necessarily fails because Aetna cannot show

causation and injury.  In particular, it is unclear how the alleged overpayments, which by Aetna's

own account were the result of "false and misleading misrepresentations in the claims for

reimbursement submitted by the ASC[s]" (Aetna Counterclaim ¶ 165) were caused by the

alleged breach of the member benefit plans.  Further, as the Court has previously noted, Aetna

has alleged that it determines the amounts actually paid the ASCs.  (SMF 10, Aetna

Counterclaim ¶ 24).  Under Colorado law, damages are "the loss caused by the breach."  *Meml.*

*Gardens*, 690 P.2d at 212. Aetna cannot proffer any evidence as to how the alleged breach – the

patient's failure to pay copayments and deductibles – caused the purported damages – Aetna's

payments to the ASCs. In light of these allegations, it is unclear how Aetna's damages were caused by the alleged breach of the member benefit plans. Aetna was aware of the breach, and yet still determined the amounts paid to the ASCs. This failure is fatal.

As Aetna concedes in its Counterclaim, Aetna's purported injuries are the result of reliance on the ASCs' alleged misrepresentations. ("Each ASC then submitted claims for reimbursement to Aetna that misrepresented what the ASC had charged Aetna Members and the basis of the charges billed to Aetna, causing Aetna to pay more than Aetna would have paid but for those misrepresentations). However, as the Court determined, the ASCs disclosed their practices. MTD Order, at 18-19. The necessary corollary is that Aetna also knew that its members were not paying copayments and deductibles. Aetna, therefore, was fully cognizant of the alleged breach but voluntarily chose to pay the ASCs. Further, Aetna did not seek to collect the patient responsibility amounts from the patients themselves. The ASCs' statements to patients could not have caused the damages Aetna seeks.

**V.   SUMMARY JUDGMENT SHOULD ALSO BE GRANTED WITH REGARD TO AETNA'S CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTS BETWEEN AETNA AND ITS NETWORK PHYSICIANS.**

Aetna's tortious interference claim related to the agreements between Aetna and its network physicians fares no better. As the Court noted, Aetna did not respond to the ASCs argument in their motion to dismiss that Aetna had not sufficiently alleged causation. MTD Order, at 24. The Court also pointed out the attenuated nature of Aetna's theory that the ASCs interference "hinder[ed] Aetna's ability to negotiate favorable rates with its In-Network facilities." MTD Order, at 24. Summary judgment is now appropriate. Aetna cannot establish a link between the alleged interference – the ASC's inducing network physicians to make

inappropriate out-of-network referrals – and its damages – the overpayments to the ASCs. Aetna

certainly cannot establish a link between Aetna's negotiation of rates with In-Network facilities

and its purported damages – overpayments to the ASCs. In particular, it is unclear how the

alleged overpayments, which by Aetna's own account were the result of "false and misleading

misrepresentations in the claims for reimbursement submitted by the ASC[s]" (Aetna

Counterclaim ¶ 165) were caused by the referrals. In fact, according to its pleadings, Aetna's

damages have no connection to the referrals whatsoever. (SMF 33). *See* Aetna Counterclaim ¶

24 ("Aetna Plans typically define a covered charge for Out-of-Network services as the lesser

amount between (1) the provider's billed charge for the services or (2) the reasonable amount

determined by Aetna.") "[T]he chain of causation in some cases may be so attenuated that no

proximate cause exists as a matter of law…." *Lyons v.* Basby, 770 P.2d 1250, 1257 (Colo. 1989)

*superseded by statute on other* grounds, Colo. Rev. Stat. § 12-47-801 (2014), as recognized in

*Westin Operator, LLC v.* Groh, 347 F.3d 606, 614 (Colo. 2015). The Court acknowledged this

with respect to this claim in its Motion to Dismiss Order (MTD Order at 24) ("The Court finds it

telling, however, that Aetna fails to respond to the specific claim that causation fails because it

retains discretion to set its out-of-network reimbursement rates.") Consequently, Summary

Judgment should be granted on Aetna's claim that the ASCs tortuously interfered with its

relationship with its network physicians.

Aetna's expert admitted in deposition testimony that he did not calculate damages

connected to Aetna's theory of tortious interference claim regarding its network providers:

> Q: You didn't attempt to measure any damages to Aetna built on the concept that
> somehow the payments to these out-of-network surgery centers caused their in-
> network rates to rise?

A:  I wasn't aware of any claim like that, and I didn't attempt to measure anything like that.

Q:  So you didn't offer an opinion like that?

A:  Correct.

Ex. C, Bamberger 106:17 – 107:2

Summary Judgment should be granted because Aetna cannot establish causation and damages or establish the remaining elements of tortious interference with regard to its contracts with its network physicians. Aetna cannot show the ASCs intentionally and improperly interfered with a contract. Moreover, Aetna cannot show that its In Network physicians breached their agreements with Aetna or that the breach was the result of interference by the ASCs.

**CONCLUSION**

For all of the reasons cited herein, this Court should grant the ASCs' Motion for Summary Judgment and dismiss Aetna's remaining Counterclaims for unjust enrichment (Count II), tortious interference with its members contracts (Count III), and tortious interference with its network physicians' contracts (Count IV).

Dated:  November 1, 2016

Respectfully submitted,


*/s/ W. Tucker Brown*
W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place Tower, Suite 1000
Birmingham, AL  35203
Tel.: (205) 488-1200
Fax: (800) 922-4851
Email: tbrown@whatleykallas.com

Joe R. Whatley, Jr.
Colorado State Bar No. 38820
WHATLEY KALLAS, LLP
720 East Durant Street
Suite E6
Aspen, CO  81611
Tel: (970) 300-4848
Fax: (970)429-8280
Email: jwhatley@whatleykallas.com

Edith M. Kallas
WHATLEY KALLAS, LLP
1180 Avenue of the Americas, 20th Floor
New York, NY  10036
Tel.: (212) 447-7060
Fax: (800)922-4851
Email: ekallas@whatleykallas.com

Deborah J. Winegard
WHATLEY KALLAS, LLP
1068 Virginia Avenue, NE
Atlanta, GA  30306
Tel.: (404) 607-8222
Fax: (404) 607-8451
Email:  dwinegard@whatleykallas.com

Henry C. Quillen
WHATLEY KALLAS, LLP
159 Middle Street
Suite 2C
Portsmouth, NH  03801
Tel.: (603) 294-1591
Fax: (800) 922-4851
Email:  hquillen@whatleykallas.com

***Counsel for Plaintiffs and
Counterclaim Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on this the 1st day of November, 2016, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.


_/s/ W. Tucker Brown_
W. Tucker Brown