IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03012-WJM-NYW

**KISSING CAMELS SURGERY CENTER, LLC, et al.,**

    Plaintiffs,

v.

**CENTURA HEALTH CORPORATION, et al.,**

    Defendants.

---

**JOINT MOTION TO RESTRICT REGARDING PLAINTIFFS' AND COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (RESTRICTED DKT. 476 THROUGH 476-20), DEFENDANT AND COUNTERCLAIM PLAINTIFF AETNA, INC.'S MOTION FOR SUMMARY JUDGMENT (RESTRICTED DKT. 478 THROUGH 478-92), AND DEFENDANTS' MOTION TO EXCLUDE THE PURPORTED EXPERT TESTIMONY OF DR. STEPHEN F. FOREMAN REGARDING THE PLAINTIFFS' ALLEGED DAMAGES (RESTRICTED DKT. 477 THROUGH 477-10)**

---

Plaintiffs/Counterclaim Defendants Kissing Camels Surgery Center LLC ("Kissing Camels"), Arapahoe Surgery Center LLC ("Arapahoe"), Hampden Surgery Center LLC ("Hampden"), and Cherry Creek Surgery Center LLC ("Cherry Creek") (collectively, "the ASCs"), and Defendant/Counterclaim Plaintiff Aetna, Inc. ("Aetna") (the ASCs and Aetna collectively, "Movants") hereby submit this Joint Motion[1] to Restrict Regarding Plaintiffs' and Counterclaim Defendants' Motion for Summary Judgment (Restricted Dkt. 476 through 476-20), Defendant and Counterclaim Plaintiff Aetna, Inc.'s Motion for Summary

---

[1] While this is a joint motion, each party's representations about the reasons supporting the confidentiality of that party's materials are the statements of that party, and not necessarily joint representations.

1

Judgment (Restricted Dkt. 478 through 478-92), and Defendants' Motion to Exclude the Purported Expert Testimony of Dr. Stephen F. Foreman Regarding Plaintiffs Alleged Damages (Restricted Dkt. 477 through 477-10).

Centura Health Corp. and CASCA do not oppose the relief requested in this motion.

## I. BACKGROUND

On November 15, 2016, Movants filed a "Joint Motion for Leave to File Redacted Versions of Plaintiffs' and Counterclaim Defendants' Motion for Summary Judgment (Restricted Dkt. 476 through 476-20), Defendant and Counterclaim Plaintiff Aetna, Inc.'s Motion for Summary Judgment (Restricted Dkt. 478 through 478-91), and Defendants' Motion to Exclude the Purported Expert Testimony of Dr. Stephen F. Foreman Regarding the Plaintiffs' Alleged Damages (Restricted Dkt. 477 through 477-9)." [#487]. The Court addressed [#487] in an Order dated December 12, 2007 [#505], and Movants bring the instant Motion in response to the concerns and guidance expressed in [#505].

## II. LEGAL STANDARD

Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). But documents (or portions thereof) may be sealed within the docket when the public's right of access is outweighed by interests favoring non-disclosure. *See United States v. McVeigh*, 119 F.3d 806, 811-12 (10th Cir. 1997) (upholding sealing orders). And "[i]t is within the district court's discretion to determine whether a particular court document should be sealed." *Doe v. Boulder Valley School District No. RE-2*, 2011

WL 3820781, at *1 (D. Colo. Aug. 30, 2011) (citing *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 597 (1978)).

Under this Court's Local Rules of Practice, a party requesting restriction must:

(1) identify the document or the proceeding for which restriction is sought;

(2) address the interest to be protected and why such interest outweighs the presumption of public access (stipulations between the parties or stipulated protective orders with regard to discovery, alone, are insufficient to justify restriction);

(3) identify a clearly defined and serious injury that would result if access is not restricted;

(4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question (e.g., redaction, summarization, restricted access to exhibits or portions of exhibits); and

(5) identify the level of restriction sought.

D.C.COLO.LCivR 7.2(c).

### III.   RE-REDACTED VERSIONS OF [#477] and [#478]

Attached hereto as Exhibit 1 is a re-redacted version of [#477] consistent with the Court's guidance in [#505].

Attached hereto as Exhibit 2 is a re-redacted version of [#478] consistent with the Court's guidance in [#505].

### IV.   EXHIBITS TO [#476], [#477], and [#478]

Movants appreciate the Court's invitation to "group similar documents that are subject to the same arguments." [#505 at 8]. Accordingly, Movants have grouped [##476-1 through 476-20], [#477-1 through 477-20], and [##478-1 through 478-92] (the "Exhibits") according to the arguments that support restriction.

**A.** **Exhibits for Which Movants Seek Restriction.**

    **1.** **Regarding D.C.Colo.LCivR 7.2(c)(1) and (c)(5)**

Movants seek to maintain Level 1 restriction for the following Exhibits in their entirety:

- Exhibits to [#476]
    - 476-4 through 476-11
- Exhibits to [#477]
    - 477-7
- Exhibits to [#478]
    - 478-1 through 478-3
    - 478-11
    - 478-14 through 478-17
    - 478-19 through 478-20
    - 478-31
    - 478-34
    - 478-46 through 478-47
    - 478-50
    - 478-57 through 478-62
    - 478-65
    - 478-67 through 478-71
    - 478-73 through 478-77
    - 478-79 through 478-81

Movants seek leave to file redacted versions of the following Exhibits (and to therefore maintain Level 1 restriction for the un-redacted versions thereof), and the proposed redacted versions of these documents are attached hereto as Exhibits 3-47:

- Exhibits to [#476]
    - 476-2 (Exhibit 3 hereto)
    - 476-3 (Exhibit 4 hereto)
    - 476-13 (Exhibit 5 hereto)
    - 476-14 (Exhibit 6 hereto)
    - 476-15 (Exhibit 7 hereto)
    - 476-19 (Exhibit 8 hereto)
- Exhibits to [#477]
    - 477-3 (Exhibit 9 hereto)
    - 477-4 (Exhibit 24 hereto)
    - 477-5 (Exhibit 10 hereto)
    - 477-6 (Exhibit 25 hereto)


- - 477-7 (Exhibit 26 hereto)
  - 477-8 (Exhibit 27 hereto)
  - 477-9 (Exhibit 28 hereto)
- Exhibits to [#478]
  - 478-7 (Exhibit 11 hereto)
  - 478-8 (Exhibit 12 hereto)
  - 478-13 (Exhibit 29 hereto)
  - 478-22 (Exhibit 30 hereto)
  - 478-23 (Exhibit 31 hereto)
  - 478-24 (Exhibit 32 hereto)
  - 478-25 (Exhibit 33 hereto)
  - 478-26 (Exhibit 34 hereto)
  - 478-27 (Exhibit 35 hereto)
  - 478-28 (Exhibit 36 hereto)
  - 478-29 (Exhibit 37 hereto)
  - 478-30 (Exhibit 13 hereto)
  - 478-32 (Exhibit 38 hereto)
  - 478-33 (Exhibit 39 hereto)
  - 478-35 (Exhibit 14 hereto)
  - 478-36 (Exhibit 40 hereto)
  - 478-38 (Exhibit 41 hereto)
  - 478-39 (Exhibit 42 hereto)
  - 478-40 (Exhibit 15 hereto)
  - 478-42 (Exhibit 43 hereto)
  - 478-43 (Exhibit 16 hereto)
  - 478-44 (Exhibit 44 hereto)
  - 478-52 (Exhibit 17 hereto)
  - 478-56 (Exhibit 18 hereto)
  - 478-78 (Exhibit 19 hereto)
  - 478-82 (Exhibit 20 hereto)
  - 478-83 (Exhibit 21 hereto)
  - 478-84 (Exhibit 22 hereto)
  - 478-86 (Exhibit 23 hereto)
  - 478-87 (Exhibit 45 hereto)
  - 478-88 (Exhibit 46 hereto)
  - 478-89 (Exhibit 47 hereto)

2.  **Regarding D.C.Colo.LCivR 7.2(c)(2) and (3)**

Exhibits 476-14 (Exhibits 5 and 6 thereto), Exhibits 478-1 through 478-3, 478-71, and 478-73 comprise confidential and sensitive business information regarding Aetna's policies and methodologies for calculating payments to out-of-network providers.  This

information is maintained as confidential in the ordinary course of business because it is competitively sensitive and its disclosure could cause competitive harm to Aetna and/or its customers. For example, were this information made public, Aetna would be placed at an unfair competitive disadvantage relative to other managed care organizations whose analogous policies remain private. Further, Aetna would be at risk of having out-of-network providers "game the system," to the unfair disadvantage of Aetna and/or its customers, based on knowledge of these internal Aetna policies.

Exhibits 478-11, 478-16, 478-17, 478-19, 478-20, 478-46, 478-47, 478-58, 478-60, 478-67 through 478-70 are documents describing Aetna's internal policies and initiatives regarding out-of-network referrals by providers who are contracted with (i.e., in-network with) Aetna. This information is maintained as confidential in the ordinary course of business because it is competitively sensitive and its disclosure could cause competitive harm to Aetna and/or its customers. For example, the disclosure of this information to Aetna's competitors would place Aetna at an unfair competitive disadvantage to its competitors, whose internal policies are not public. Furthermore, were this information made public, Aetna would be at a disadvantage in its interactions and negotiations with providers, who do not have access to this information in the ordinary course of business, harming Aetna and/or its customers and damaging Aetna in its ability to compete against other managed care companies (whose internal policies in this area are non-public).

Exhibits 478-14 and 478-15 are network contracts between Aetna and providers. The terms of these contracts are confidential as between Aetna and those providers, and

public disclosure of those terms would risk harming Aetna's position in negotiating future network contracts with providers, thereby risking damage to Aetna's competitive position in the marketplace. Exhibit 478-50 is an internally circulated draft contract proposal to which these same confidentiality concerns apply. Exhibit 478-52 is correspondence regarding contract proposals—Movants have redacted those portions that would reveal specific proposed contractual terms in view of these same confidentiality concerns.

    Exhibits 476-4 through 476-11 are excerpts of Benefit Plan documents between Aetna and two third-party plan sponsors. These documents detail, in part, the terms of coverage for members of these plans. This information is maintained as confidential in the ordinary course of business and is only shared with the plan sponsor and members of the plan. Benefit Plan documents for plan sponsors are not normally made available to the public. This information is competitively sensitive and its disclosure could cause competitive harm to Aetna, its plan sponsors, and its plan members. For example, were this information made public, Aetna would be placed at an unfair competitive disadvantage relative to other managed care organizations who analogous plan documents remain private. Further, Aetna's plan sponsors could suffer competitive harm relative to their competition for employees whose analogous policies remain private

    Exhibits 478-57, 478-59, 478-61, 478-62 are letters sent by Aetna to in-network providers regarding the confidential contracts between Aetna and those providers. These exhibits comprise sensitive and confidential information regarding Aetna's interpretation of those confidential contractual terms and Aetna's approach to enforcing those terms pursuant to its internal policies. Making such information public would risk harming

Aetna's position in negotiating future network contracts with providers as well as the efficacy of any future outreach by Aetna pursuant to those same policies, which would risk damage to Aetna's competitive position in the marketplace.

Exhibits 476-14 (Exhibits 1, 2, and 3 thereto) and 478-74 through 478-77 are the internal files of Aetna's Special Investigations Unit regarding the ASCs. This information is maintained as confidential in the ordinary course of business because it is competitively sensitive and its disclosure could cause competitive harm to Aetna and/or its customers. These exhibits comprise Aetna's internal findings regarding the ASCs and, if public, would risk revealing Aetna's internal policies and methodologies for investigating the billing practices of out-network providers and thereby risk compromising the efficacy of Aetna's future investigations and therefore its ability to compete in the marketplace.

Exhibits 478-79 and 478-81 are confidential communications between the Colorado Association of Health Plans, a trade group for managed care organizations in Colorado, and Aetna's representative to that trade group. The interest to be protected is the expectation of confidentiality in trade group communications so as to enable trade groups to effectively pursue legislative and regulatory goals, which is a constitutionally-recognized interest. *See, e.g.*, *E.R.R. President Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961). To the extent this interest conflicts with the presumption of public access, the quoted portions and summaries of these exhibits included in the underlying motion [*See, e.g.*, #478 at 20-21, ¶ 83, 88 and #213 at 41, ¶ 96] are sufficient to satisfy the public's "fundamental interest in understanding the disputes presented to and decided by the courts, so as to assure that they are run fairly and that judges act

honestly." *Huddleson v. City of Pueblo*, 270 F.R.D. 635, 635 (D. Colo. 2010) (*quoting Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 509 (1984)).

Exhibit 478-80 is an internal discussion among Aetna employees regarding the trade group activity described in Exhibit 478-79 and its restriction is warranted for at least the same reasons. Further, Exhibit 478-80 discusses Aetna's internal policies and initiatives regarding out-of-network referrals by providers who are contracted with (i.e., in-network with) Aetna and restriction is therefore warranted for at least the same reasons discussed above in reference to Exhibits 478-11, 478-16, 478-17, 478-19, 478-20, 478-46, 478-47, 478-58, 478-60, 478-67 through 478-70.

Exhibits 478-82 and 478-83 comprise communications by an Aetna employee regarding his perceptions of the ASCs' business practices in connection with a public newspaper article about a California-based lawsuit involving Aetna. Aetna has left un-redacted the public newspaper article but has redacted the subsequent communications. The redacted content is summarized in the underlying motion [#478 at 27] such that the public's interest in understanding the disputes at hand is preserved and there is nothing to be gained by exposing the internal emails of an Aetna employee to potential public scrutiny.

Exhibits 476-13, 476-19, 477-3, 477-4, 477-5, 478-7, 478-30, 478-40, 478-43, and 478-84 are expert reports, excerpts of expert reports, or excerpts of expert deposition transcripts. Consistent with the Court's guidance in [#505], Movants have redacted proprietary data (e.g., case volume or financial data) or proprietary information (e.g., confidential and sensitive business information regarding Movants' internal policies and

9

practices) upon which the relevant expert opinions are based but have left un-redacted statements regarding methodologies, principles, and methods upon which the relevant experts have relied.

Exhibits 476-2, 476-3, 476-15, 478-8 and 478-78 are excerpts of fact witness deposition transcripts. Movants have redacted testimony that, if made public, would reveal confidential and sensitive business information regarding Aetna's internal policies and practices of the sort that pervades the above-discussed Exhibits that Aetna seeks to maintain as restricted in their entirety (e.g., Aetna's policies and methodologies for calculating payments to out-of-network providers, and the same; Aetna's internal policies and initiatives regarding out-of-network referrals by providers who are contracted with (i.e., in-network with) Aetna; specific terms of network contracts and network contract proposals; and Aetna's internal policies for investigating provider billing practices and related findings).

Exhibits 478-35, 478-56, and 478-86 are copies of documents previously-submitted in either this litigation or the related litigation between the ASCs and Cigna (13-cv-03422-WJM) (the "Cigna Litigation"). Movants have redacted these Exhibits to mirror the redactions previously approved by the Court in either this litigation or the Cigna Litigation. *Compare* [#478-35] *with* [#250-1]; *compare* [#478-56] *with* [#272, Exhibit A-1]; *compare* [#478-86] *with* [Cigna Litigation #136]. These redactions are appropriate now for the same reasons they were then.

Exhibits 478-22, 478-23, and 478-25 are Plaintiffs Cherry Creek, Arapahoe, and Kissing Camels' respective Supplemental Responses to Interrogatories in the Cigna

Litigation. Exhibit 478-20 is an Exhibit to Hampden's Operating Agreement. These exhibits have been redacted to restrict the individual shareholders in the ASCs' ownership interests in the ASCs and their capital contributions to the ASCs. Exhibit 478-36 are minutes from a Cherry Creek Board meeting that contain confidential financial information, such as revenues, shareholder distributions, and details regarding contract negotiations. Exhibits 477-6, 477-8, 478-38, 478-44, 478-88, and 488-89 are e-mails' from the ASCs' Administrators' forwarding the weekly reports and other financial information to the ASCs' shareholders, including information regarding the numbers of cases performed, the percentage of cases performed by each physician, amounts billed to insurance companies and other payers, revenues, and percentages of collections by insurer. All of this information relates to the financial status of the ASCs as privately held corporations, which the Court has recognized are appropriately redacted. Dkt. 505 at 5. Further, this financial information is competitively sensitive and could cause competitive harm because it would provide insight into the structure and management of the ASCs in the highly competitive ASC industry. Disclosure of this information could hinder the ASCs in their negotiations with commercial health insurance payers and vendors, as well as with hospitals owning competing surgery centers, with which the ASCs seek to enter into transfer agreements. In addition, the information from the weekly reports includes information regarding insurance company payments that could be considered commercially sensitive by the health insurance payers, causing them competitive harm if publically released.

Exhibits 477-9 and 478-87 are e-mails attaching the proposed operating agreement, pro forma financial projections, and shareholder references (including mobile telephone numbers) for Hampden. The proposed operating agreement and the pro forma financial projections are maintained as confidential in the ordinary course of business because they are competitively sensitive and their disclosure could cause competitive harm to the ASCs and their investors. For example, the disclosure of the operating agreement and the pro forma financial projections would place the ASCs at an unfair competitive advantage as compared to competing ASCs and ASC management companies, whose operating agreements, management contracts, and pro formas are not publicly available. In addition, disclosure of this information could hinder the ASCs in their negotiations with commercial health insurance payers and vendors, as well as with hospitals that own competing surgery centers with which the ASCs seek to enter into transfer agreements.

Exhibits 478-31, 478-34, and 478-65 are the ASCs' Insurance Payer Contracting Policy and Scripts. Exhibit 478-42 contains several Hampden documents, the only one of which is redacted is the Insurance Payer Contracting Policy and Script. These are internal policies regarding interactions with health insurance payers, which are maintained as confidential in the regular course of business and are competitively sensitive. Disclosure of these internal policy documents would provide insight to the commercial health insurance payers and would hinder the ability of the ASCs to negotiate with these companies. In addition, Exhibit 478-42 has been redacted to restrict a patient's

name which is protected health information shielded from public release by HIPAA and state law.

Exhibit 478-13 is an excerpt from the ASCs' expert in this case that has been redacted to remove testimony comparing the ASCs' revenue per case and charges with those of in-network ASCs. This information relates to the financial status of the ASCs as privately held corporations, which the Court has recognized are appropriately redacted. Dkt. 505 at 5. Further, this financial information is competitively sensitive and could cause competitive harm because allowing competing surgery centers to have access to the ASCs' revenues per case would give these competing centers a competitive advantage. In addition, disclosing this information to commercial health insurance payers would hinder the ASCs' negotiations with these payers. Lastly, the redacted provisions include the commercially sensitive information of competing surgery centers, which could harm them if publically disclosed.

Exhibit 477-3 is an excerpt from the ASCs' expert that has been redacted in accordance with the Court's instructions to exclude the number of cases performed by the ASCs, competing facilities and in the but-for world. Exhibit 477-7 has been redacted in its entirety because it contains the actual and but for numbers of procedures at the ASCs. Further in accordance with the Court's instructions, the expert's testimony regarding his methodology has not been redacted.

Exhibit 478-26 is an excerpt from the deposition of one of Kissing Camels' investors explaining the strategic thinking regarding behind a Board vote against changing Kissing Camels' billing policy. Disclosure of this information could give

competing surgery centers and commercial health insurance payers insight into Kissing Camels' strategic thinking.

Exhibit 478-27, 478-32, and 478-33 are excerpts from the depositions of the ASCs' Administrators explaining personnel decisions regarding disassociating certain named physician investors from the ASCs. In addition, Exhibit 478-27 has been redacted to exclude the Administrator's salary. This information contains personal information regarding these investors and the Administrator, which could be harmful to them if disclosed. The public interest is protected by this redaction because general information regarding the disassociation of investors has not been redacted; just the information relating to individual personnel decisions. In addition, Exhibit 478-32 has been redacted to exclude the rates MultiPlan pays Hampden, which, as discussed above, relates to the financial status of privately held corporations and is commercially sensitive information.

Exhibit 478-28 is the extract of a deposition from Cherry Creek's Administrator, which has been redacted to exclude Cherry Creek's net income and insurance company payments to Cherry Creek for particular patients. As discussed above, this information relates to the financial status of a privately held corporation and is commercially sensitive information.

Exhibit 478-29 is an excerpt from the deposition of Kissing Camels' Administrator that has been redacted to exclude Kissing Camels' calculations regarding the collection of deductibles from patients whose deductibles cross-accumulate. The public is protected with respect to this exclusion because the ASCs have not sought to exclude general discussions of the policy; only the testimony regarding the calculations. In addition, this

extract has been redacted to exclude Kissing Camels' billed charges, which, as discussed above, relates to the financial status of privately held corporations and is commercially sensitive information.

Exhibit 478-39 is an excerpt from the deposition of a SurgCenter executive, which has been redacted to exclude the ASCs' calculations to determine patients' in-network benefit amounts used to determine patient payment responsibilities. As discussed above, this information relates to payment information and the financial status of a privately held corporation and is commercially sensitive information.

### 3. Regarding D.C.Colo.LCivR 7.2(c)(4)

Courts recognize the importance of commercial confidentiality concerns such as those discussed above. "Access properly is denied where court files might serve as a source of business information that could harm a litigant's competitive standing." *SBM Site Servs., LLC v. Garrett*, No. 10-CV-00385-WJM-BNB, 2011 WL 1375117, at *3 (D. Colo. Apr. 12, 2011); *see also Nixon*, 435 U.S. at 598 ("[C]ourts have refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing"). Balanced against Movant's confidentiality interests is the public's "fundamental interest in understanding the disputes presented to and decided by the courts, so as to assure that they are run fairly and that judges act honestly." *Huddleson*, 270 F.R.D. at 635.

Regarding those Exhibits for which Movants seeks to maintain Level 1 restriction in their entirety, alternatives to restriction are not practical for these exhibits because (1) the confidential and sensitive business information included therein pervades these

exhibits to such an extent that redaction would provide no information to the public relevant to any Court determination and (2) summarization would either be cumulative with the content already publicly available through un-redacted portions of other exhibits and the underlying motion or would defeat Movants' privacy interest. Where practicable, Movants seek to utilize redaction as an alternative to complete restriction. Regarding those Exhibits for which Movants seek leave to file redacted versions, Movants have endeavored to balance its above-discussed confidentiality interests with the public's right of access to court documents. Movant's respectfully submit that the un-redacted and un-restricted content associated with [#476], [#477], and [#478] and the exhibits thereto will amply allow the public to understand the disputes at hand and any ruling of the Court thereupon.

## V.  REQUESTED RELIEF

Accordingly, Movants respectfully request that the Court grant this Motion and issue an order:

(1) directing the Clerk of the Court to docket Exhibits 1-47 as the publicly available versions of [##477, 478, 476-2, 476-3, 476-13, 476-14, 476-15, 476-19, 477-3, 477-4, 477-5, 477-6, 477-7, 477-8, 477-9, 478-7, 478-8, 478-13, 478-22, 478-23, 478-24, 478-25, 478-26, 478-27, 478-28, 478-29, 478-30, 478-32, 478-33, 478-35, 478-36, 478-38, 478-39, 478-40, 478-42, 478-43, 478-44, 478-52, 478-56, 478-78, 478-82, 478-83, 478-84, 478-86, 478-87, 478-88, and 478-89] while maintaining Level 1 restriction for the originally-filed version of these documents; and

(2) maintaining Level 1 restriction for [##476-4 through 476-11, 477-7, 478-1 through 478-3, 478-11, 478-14 through 478-17, 478-19 through 478-20, 478-31, 478-34, 478-46 through 478-47, 478-50, 478-57 through 478-62, 478-65, 478-67 through 478-71, 478-73 through 478-77, and 478-79 through 478-81].

Dated:  December 14, 2016.

                                            Respectfully submitted,

| /s/Deborah J. Winegard | /s/Laura Sturges |
|---|---|
| WHATLEY KALLAS, LLP | GIBSON, DUNN & CRUTCHER LLP |
| Deborah J. Winegard<br>1068 Virginia Avenue, NE<br>Atlanta, GA 30306<br>Telephone: 404.607.8222<br>Facsimile: 404.607.8451<br>dwinegard@whatleykallas.com | Laura Sturges<br>1801 California Street<br>Suite 4200<br>Denver, CO 80202-2642<br>Telephone: 303.298.5700<br>Facsimile: 303.313.2825<br>lsturges@gibsondunn.com |
| W. Tucker Brown<br>2001 Park Place Tower, Suite 1000<br>Birmingham, AL 35203<br>Telephone: 205.488.1200<br>Facsimile: 800.922.4851<br>tbrown@whatleykallas.com | Joshua Lipton<br>1050 Connecticut Avenue, N.W.<br>Third Floor<br>Washington, DC 20036-5303<br>Telephone: 202.955.8226<br>Facsimile: 202.530.9536<br>jlipton@gibsondunn.com |
| Joe R. Whatley, Jr.<br>Colorado State Bar No. 38820<br>720 East Durant Street<br>Suite E6<br>Aspen, CO 81611<br>Telephone: 970.300.4848<br>Facsimile: 970.429.8280<br>jwhatley@whatleykallas.com | *Attorneys for Defendant and Counterclaim Plaintiff Aetna, Inc.* |

Edith M. Kallas
1180 Avenue of the Americas, 20th Floor

New York, NY 10036
Telephone: 212.447.7060
Facsimile: 800.922.4851
ekallas@whatleykallas.com

*Attorneys for Plaintiffs and Counterclaim Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 14th day of December, 2016, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                                                      */s/Laura Sturges*
                                                                                       Counsel for Aetna