**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-03012-WJM-NYW

**KISSING CAMELS SURGERY CENTER, LLC, et al.,**

      **Plaintiffs,**

           **v.**

**CENTURA HEALTH CORPORATION, et al.,**

      **Defendants.**

---

**JOINT MOTION TO RESTRICT REGARDING DEFENDANT AETNA, INC.'S BRIEF IN OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON AETNA, INC.'S COUNTERCLAIMS (RESTRICTED DKT. 494 THROUGH 494-91), PLAINTIFFS' OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (RESTRICTED DKT. 495, 498 THROUGH 501-26), AND PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE PURPORTED EXPERT TESTIMONY OF DR. STEPHEN F. FOREMAN RELATED TO PLAINTIFFS' ALLEGED DAMAGES (RESTRICTED DKT. 496 THROUGH 497-8)**

---

Plaintiffs/Counterclaim Defendants Kissing Camels Surgery Center LLC ("Kissing Camels"), Arapahoe Surgery Center LLC ("Arapahoe"), Hampden Surgery Center LLC ("Hampden"), and Cherry Creek Surgery Center LLC ("Cherry Creek") (collectively, "the ASCs"), and Defendant/Counterclaim Plaintiff Aetna, Inc. ("Aetna") (the ASCs and Aetna collectively, "Movants") hereby submit this Joint Motion[1] to Restrict Regarding Defendant Aetna, Inc.'s Brief in Opposition to Counterclaim Defendants' Motion for Summary

---

[1] While this is a joint motion, each party's representations about the reasons supporting the confidentiality of that party's materials are the statements of that party, and not necessarily joint representations.

1

Judgment on Aetna, Inc.'s Counterclaims (Restricted Dkt. 494 through 494-91), Plaintiffs' Omnibus Response in Opposition to Defendants' Motions for Summary Judgment (Restricted Dkt. 495, 498 through 501-26), and Plaintiffs' Response in Opposition to Defendants' Motion to Exclude the Purported Expert Testimony of Dr. Stephen F. Foreman Related to Plaintiffs' Alleged Damages (Restricted Dkt. 496 through 497-8).

Centura Health Corp. and CASCA do not oppose the relief requested in this motion.

## I.    BACKGROUND

On December 2, 2016, Movants filed the above referenced motions under restricted Level One access.  Movants bring the instant Motion under Local Rule 7.2 addressing the reasons restriction should be maintained for certain documents, either in part (i.e., as redacted in the corresponding exhibit hereto) or in their entirety.

## II.    LEGAL STANDARD

Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society."  *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996).  But documents (or portions thereof) may be sealed within the docket when the public's right of access is outweighed by interests favoring non-disclosure. *See United States v. McVeigh*, 119 F.3d 806, 811-12 (10th Cir. 1997) (upholding sealing orders). And "[i]t is within the district court's discretion to determine whether a particular court document should be sealed." *Doe v. Boulder Valley School District No. RE-2*, 2011 WL 3820781, at *1 (D. Colo. Aug. 30, 2011) (citing *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 597 (1978)).

Under this Court's Local Rules of Practice, a party requesting restriction must:

(1) identify the document or the proceeding for which restriction is sought;

(2) address the interest to be protected and why such interest outweighs the presumption of public access (stipulations between the parties or stipulated protective orders with regard to discovery, alone, are insufficient to justify restriction);

(3) identify a clearly defined and serious injury that would result if access is not restricted;

(4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question (e.g., redaction, summarization, restricted access to exhibits or portions of exhibits); and

(5) identify the level of restriction sought.

D.C.COLO.LCivR 7.2(c).

### III.   RE-REDACTED VERSIONS OF [#494], [#495], and [#496]

Attached hereto as Exhibit 1 is a redacted version of [#494].  The redactions entered have been made with guidance from the Court's previous order on a motion to restrict in this matter [#505].

Attached hereto as Exhibit 66 is a redacted version of [#495].  The redactions entered have been made with guidance from the Court's previous order on a motion to restrict in this matter [#505].

Attached hereto as Exhibit 67 is a redacted version of [#496].  The redactions entered have been made with guidance from the Court's previous order on a motion to restrict in this matter [#505].

## IV.    EXHIBITS TO [#494], [#495], and [#496]

Following the Court's previous invitation to "group similar documents that are subject to the same arguments," [#505 at 8], Movant have groups [##494-1 through 494-91], [#498 through 501-26], and [##497-1 through 497-8] (the "Exhibits") according to the arguments that support restriction.

**A.    Exhibits for Which Movants Seek Restriction.**

**1.    Regarding D.C.Colo.LCivR 7.2(c)(1) and (c)(5)**

Movants seek to maintain Level 1 restriction for the following Exhibits in their entirety:

- Exhibits to [#494]
  - 494-3
  - 494-12 through 494-24
  - 494-28
  - 494-29
  - 494-38
  - 494-41
  - 494-42
  - 494-45
  - 494-46
  - 494-50
  - 494-52
  - 494-54
  - 494-55
  - 494-56
  - 494-57
  - 494-58
  - 494-59
  - 494-61
  - 494-65
  - 494-72 through 494-76
  - 494-79
  - 494-80
  - 494-82
  - 494-83
  - 494-85
  - 494-86

- o 494-87
- o 494-89
- Exhibits to [#495]
  - o 498-1 through 498-16
  - o 498-22 through 498-24
  - o 499 through 499-5
  - o 500
  - o 500-5
  - o 500-13
  - o 500-14
  - o 501-1 through 501-4
  - o 501-7 through 501-10
  - o 501-16
  - o 501-17

Movants seek leave to file redacted versions of the following Exhibits (and to therefore maintain Level 1 restriction for the un-redacted versions thereof), and the proposed redacted versions of these documents are attached hereto as Exhibits 2-65 and 68-118:

- Exhibits to [#494] (attached hereto as Exhibits 2-65):
  - o 494-2
  - o 494-3
  - o 494-6
  - o 494-7
  - o 494-8
  - o 494-9
  - o 494-10
  - o 494-11
  - o 494-12
  - o 494-13
  - o 494-14
  - o 494-15
  - o 494-16
  - o 494-17
  - o 494-18
  - o 494-19
  - o 494-20
  - o 494-21
  - o 494-22
  - o 494-23

- 494-24
- 494-25
- 494-27
- 494-29
- 494-31
- 494-32
- 494-33
- 494-34
- 494-35
- 494-40
- 494-41
- 494-42
- 494-45
- 494-46
- 494-47
- 497-48
- 494-49
- 494-50
- 494-51
- 494-52
- 494-54
- 494-56
- 494-57
- 494-58
- 494-59
- 494-65
- 494-69
- 494-69
- 494-71
- 494-72
- 494-73
- 494-74
- 494-75
- 494-76
- 494-77
- 494-78
- 494-79
- 494-80
- 494-81
- 494-82
- 494-83
- 494-84
- 494-85
- 494-87

- o   494-89
- Exhibits to [#495] (attached hereto as Exhibits 76-118):
    - o   498-1
    - o   498-2
    - o   498-3
    - o   498-7
    - o   498-8
    - o   498-11
    - o   498-12
    - o   499-4
    - o   499-5
    - o   499-6
    - o   499-7
    - o   499-11
    - o   500
    - o   500-1
    - o   500-2
    - o   500-4
    - o   500-7
    - o   500-8
    - o   500-9
    - o   500-12
    - o   500-13
    - o   500-14
    - o   501
    - o   501-1
    - o   501-2
    - o   501-3
    - o   501-4
    - o   501-5
    - o   501-6
    - o   501-7
    - o   501-8
    - o   501-9
    - o   501-10
    - o   501-11
    - o   501-13
    - o   501-14
    - o   501-16
    - o   501-17
    - o   501-19
    - o   501-20
    - o   501-21
    - o   501-22

- o 501-25
- o 501-26
- Exhibits to [#496] (attached hereto as Exhibits 68-75):
  - o 497
  - o 497-1
  - o 497-2
  - o 497-3
  - o 497-4
  - o 497-5
  - o 497-6
  - o 497-7

### 2.    Regarding D.C.Colo.LCivR 7.2(c)(2) and (3)

Exhibits 494-12 through 494-24, 494-72 through 494-76, 494-79, 494-80, 494-89

contain patient information that may be restricted from public disclosure.  The exhibit also

contains proprietary billing and payment information of a Plaintiff or Aetna that is

competitively sensitive and its disclosure could cause competitive harm to Aetna, its

customers, and/or Plaintiffs.  For example, were this information made public, Aetna

would be placed at an unfair competitive disadvantage relative to other managed care

organizations whose analogous policies remain private.  Further, Aetna would be at risk

of having out-of-network providers "game the system," to the unfair disadvantage of Aetna

and/or its customers.

Exhibits 494-28, 494-86, 498-3, 498-4, 498-5, 498-6, 498-7, 498-9, 498-13

comprise confidential and sensitive business information regarding Aetna's policies and

methodologies for calculating payments to out-of-network providers. This information is

maintained as confidential in the ordinary course of business because it is competitively

sensitive and its disclosure could cause competitive harm to Aetna and/or its customers.

For example, were this information made public, Aetna would be placed at an unfair

competitive disadvantage relative to other managed care organizations whose analogous policies remain private. Further, Aetna would be at risk of having out-of-network providers "game the system," to the unfair disadvantage of Aetna and/or its customers, based on knowledge of these internal Aetna policies.

Exhibits 498-1, 498-2 comprise confidential and sensitive business information regarding Aetna's negotiations with its providers.  This information is maintained as confidential in the ordinary course of business because it is competitively sensitive and its disclosure could cause competitive harm to Aetna and/or its customers. For example, were this information made public, Aetna would be placed at an unfair competitive disadvantage relative to other managed care organizations whose analogous policies remain private.

Exhibits 494-38, 494-61, 498-10 are documents describing Aetna's internal policies and initiatives regarding out-of-network referrals by providers who are contracted with (i.e., in-network with) Aetna. This information is maintained as confidential in the ordinary course of business because it is competitively sensitive and its disclosure could cause competitive harm to Aetna and/or its customers. For example, the disclosure of this information to Aetna's competitors would place Aetna at an unfair competitive disadvantage to its competitors, whose internal policies are not public. Furthermore, were this information made public, Aetna would be at a disadvantage in its interactions and negotiations with providers, who do not have access to this information in the ordinary course of business, harming Aetna and/or its customers and damaging Aetna in its ability

to compete against other managed care companies (whose internal policies in this area are non-public).

Exhibits 494-41, 494-42, 498-8, 498-11, 498-16 are network contracts between Aetna and providers. The terms of these contracts are confidential as between Aetna and those providers, and public disclosure of those terms would risk harming Aetna's position in negotiating future network contracts with providers, thereby risking damage to Aetna's competitive position in the marketplace.

Exhibits 498-12, 498-14, 498-15 are confidential communications between the Colorado Association of Health Plans, a trade group for managed care organizations in Colorado, and Aetna's representative to that trade group. The interest to be protected is the expectation of confidentiality in trade group communications so as to enable trade groups to effectively pursue legislative and regulatory goals, which is a constitutionally-recognized interest. See, e.g., E.R.R. President Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 136 (1961). To the extent this interest conflicts with the presumption of public access, the quoted portions and summaries of these exhibits included in the underlying motion are sufficient to satisfy the public's "fundamental interest in understanding the disputes presented to and decided by the courts, so as to assure that they are run fairly and that judges act honestly." Huddleson v. City of Pueblo, 270 F.R.D. 635, 635 (D. Colo. 2010) (quoting Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 509 (1984)).

Exhibits 494-62, 499, 499-1 are letters sent by Aetna to in-network providers regarding the confidential contracts between Aetna and those providers. These exhibits

comprise sensitive and confidential information regarding Aetna's interpretation of those confidential contractual terms and Aetna's approach to enforcing those terms pursuant to its internal policies. Making such information public would risk harming Aetna's position in negotiating future network contracts with providers as well as the efficacy of any future outreach by Aetna pursuant to those same policies, which would risk damage to Aetna's competitive position in the marketplace.

Exhibits 494-87 are excerpts of Benefit Plan documents between Aetna and two third-party plan sponsors. These documents detail, in part, the terms of coverage for members of these plans. This information is maintained as confidential in the ordinary course of business and is only shared with the plan sponsor and members of the plan. Benefit Plan documents for plan sponsors are not normally made available to the public. This information is competitively sensitive and its disclosure could cause competitive harm to Aetna, its plan sponsors, and its plan members. For example, were this information made public, Aetna would be placed at an unfair competitive disadvantage relative to other managed care organizations who analogous plan documents remain private. Further, Aetna's plan sponsors could suffer competitive harm relative to their competition for employees whose analogous policies remain private.

Exhibits 494-3, 494-34, 494-69, 500-7, 501-11, and 501-19 are expert reports, excerpts of expert reports, or excerpts of expert deposition transcripts. Consistent with the Court's guidance in [#505], Movants have redacted proprietary data (e.g., case volume or financial data) or proprietary information (e.g., confidential and sensitive business information regarding Movants' internal policies and practices) upon which the

relevant expert opinions are based but have left un-redacted statements regarding methodologies, principles, and methods upon which the relevant experts have relied.

Exhibits 494-25, 494-27, 494-35, 500, 500-1, 500-5, 500-12, 500-13, 500-14, 501-1, 501-2, 501-3, and 501-25 are excerpts of fact witness deposition transcripts. Movants have redacted testimony that, if made public, would reveal confidential and sensitive business information regarding Defendant parties' internal policies and practices of the sort discussed above (e.g., Aetna's policies and methodologies for calculating payments to out-of-network providers, and the same; Aetna's internal policies and initiatives regarding out-of-network referrals by providers who are contracted with (i.e., in-network with) Aetna; specific terms of network contracts and network contract proposals; and Aetna's internal policies for investigating provider billing practices and related findings).

Exhibits 499-11 is a declaration from a Plaintiff administrator that includes prospective investor compensation levels. Exhibit, 500-7, 501-13, 501-21, and 501-22, are excerpts from experts' reports which includes tables and figures disclosing Plaintiffs' revenues, expenses, and other sensitive financial information. Exhibit 500-8 is portions of a SurgCenter administrator's deposition transcript discussing investor ownership percentages, amounts and requirements of initial capitalization, details regarding provider contract negotiations, and valuations of Plaintiff facilities. Exhibit 494-2 is an email among Plaintiff ASC investors discussing reimbursement and distribution amounts. Exhibits 494-31, 494-32, and 494-58 are emails from Plaintiff ASC administrators forwarding weekly reports and other financial information to the shareholders, including information regarding the numbers of cases performed, percentage of cases by each physician,

amounts billed to insurance companies, and other payers.   Exhibit 494-29 is an email chain discussing ownership sales and personnel issues with physicians' staff.   Exhibit 500-4 is a deposition transcript of an investor physician revealing an amount of ownership interest in private practices.   Exhibit 501-26 is a deposition excerpt from a Plaintiff ASC discussing offers of ownership shares.     Exhibits 494-33, 494-49, 494-52, 494-54, 494-56, 494-57, 494-59, 494-65, and 494-82 are emails and meeting minutes among Plaintiff investors and administrators discussing shareholder amounts, offers to potential investors, and other sensitive business issues.   All of this information relates to the financial status of the ASCs as privately held corporations, which the Court has recognized are appropriately redacted. Dkt. 505 at 5. Further, this financial information is competitively sensitive and could cause competitive harm because it would provide insight into the structure and management of the ASCs in the highly competitive ASC industry.   Disclosure of this information could hinder the ASCs in their negotiations with commercial health insurance payers and vendors, as well as with hospitals owning competing surgery centers, with which the ASCs seek to enter into transfer agreements. In addition, the information from the weekly reports includes information regarding insurance company payments that could be considered commercially sensitive by the health insurance payers, causing them competitive harm if publically released.

Exhibits 501-1, 501-2, 501-3, 501-4, 501-7, 501-8, 501-9, 501-10, 500-13, 500-14, 501-16, and 501-17 are excerpts of deposition transcripts designated as Confidential or Highly Confidential by third parties, which may not be made public pursuant to

confidentiality order.  (Doc. 79 Kissing Camels, et al. v. Centura, et al; Doc. 55 Kissing Camels, et al. v. Cigna, Inc.)

Exhibit 498-3 and 498-12 are emails reflecting Aetna reimbursement amounts to Plaintiff ASCs.   Exhibit 500-1 is a portion of an Aetna executive's deposition transcript discussing amounts paid to plaintiff ASCs and contract negotiation strategies, and exhibits thereto which include tax identification numbers.  Exhibit 501-11 and 501-19 are excerpts from expert reports reflecting reimbursement levels to Plaintiff facilities.  All of this information relates to the financial status of the ASCs as privately held corporations, which the Court has recognized are appropriately redacted. Dkt. 505 at 5. Further, this financial information is competitively sensitive and could cause competitive harm because it would provide insight into the structure and management of the ASCs in the highly competitive ASC industry. Disclosure would also cause competitive to harm to both parties in future contract negotiations with third party providers or insurers, respectively. Exhibit 494-9 is a Plaintiff ASC administrator's deposition transcript discussing Cherry Creek billing and appeal policies.  Exhibit 494-31 contains an internal policy for Dry Creek to discuss their out-of-network status to patients.  Exhibits 494-45 494-46, 494-47, and 494-48 are Plaintiff ASCs' Insurance Payer Contracting Policy and Scripts.  Exhibit 494-71 is an email containing sections of the SurgCenter Billing Policy manual.  Exhibit 498-7 is an internal SurgCenter policy on Patient Payment.   Exhibit 494-85 contains proprietary fee schedule and patient calculation policy proposals.   These are all internal policies regarding interactions with health insurance payers, which are maintained as confidential in the regular course of business and are competitively sensitive.  Disclosure

of these internal policy documents would provide insight to the commercial health insurance payers and would hinder the ability of the ASCs to negotiate and transact with these companies.

Exhibits 494-34, 497, 497-1, 497-2, 497-3, 497-4, 497-5, 497-6, 497-7, 500-7, 501-11, 501-13, 501-19, 501-20, 501-21, 501-22, are excerpts from the experts in this case that has been redacted to remove testimony comparing the ASCs' revenue per case and charges with those of in-network ASCs. They have been redacted in accordance with the Court's instructions to exclude the number of cases performed by the ASCs, competing facilities and in the but-for world. This information relates to the financial status of the ASCs as privately held corporations, which the Court has recognized are appropriately redacted. Dkt. 505 at 5. Further, this financial information is competitively sensitive and could cause competitive harm because allowing competing surgery centers to have access to the ASCs' revenues per case would give these competing centers a competitive advantage. In addition, disclosing this information to commercial health insurance payers would hinder the ASCs' negotiations with these payers. Lastly, the redacted provisions include the commercially sensitive information of competing surgery centers, which could harm them if publically disclosed. Further in accordance with the Court's instructions, the experts' testimony regarding methodology has not been redacted.

Exhibit 501-26 is an excerpt from the deposition of one of Hampden's administrators explaining the strategic thinking behind payer contract negotiations and investor recruiting. Disclosure of this information could give competing surgery centers and commercial health insurance payers insight into Kissing Camels' strategic thinking.

This information contains personal information regarding these investors and the Administrator, which could be harmful to them if disclosed. Exhibit 499-7 is a series of emails reflecting contract negotiations between the parties. Exhibit 500-9 is a deposition transcript from a SurgCenter administrator discussing private contract negotiations. Exhibit 501 and 501-14 are deposition transcript excerpts from Plaintiff ASC investors discussing details of payer contract negotiations. Ex. 501-5 is a hospital administrator's deposition transcript including an exhibit discussing contract negotiations. Exhibits 194-50 and 494-81 are emails among Surgcenter executives internally discussing payer contract negotiating strategies. Disclosure of this sensitive contract negotiation information would place the parties at a competitive disadvantage in both the negotiations referenced in the exhibits, and with potential other payers or providers in the future.

Exhibit 500 is a deposition transcript from an Anthem executive revealing Plaintiffs' billed amounts for procedures. Exhibits 494-6, 494-7, 494-8, 494-9, 494-10, 494-11, 494-78, and 494-84 are excerpts from Plaintiff ASC administrators discussing their methodologies for calculating billed charges and estimating expected insurance payments, including specific amounts for each. Exhibit 494-35 is an excerpt from a Defendant executive's deposition discussing specific billed charges amounts. Exhibits 494-14, 494-15. 494-16, 494-17, 494-18 494-19, 494-20, 494-21, 494-22, 494-23, 494-24, 494-72, 494-73, 494-74, 494-75 are EOBs, patient receipts, and patient responsibility sheets showing individual procedures, billed charges, patient responsibilities, and paid amounts from insurers and patients. All of this information regarding the calculations of billed charges, deductibles, patient responsibility, estimated allowable amounts, appeals

policies, and reimbursement amounts relates to payment information and the financial status of a privately held corporation and is commercially sensitive information. Disclosure of this information would competitively harm the parties in their abilities to negotiate and transact with other entities in the healthcare industry.

### 3.      Regarding D.C.Colo.LCivR 7.2(c)(4)

Courts recognize the importance of commercial confidentiality concerns such as those discussed above.  "Access properly is denied where court files might serve as a source of business information that could harm a litigant's competitive standing."  *SBM Site Servs., LLC v. Garrett*, No. 10-CV-00385-WJM-BNB, 2011 WL 1375117, at *3 (D. Colo. Apr. 12, 2011); *see also Nixon*, 435 U.S. at 598 ("[C]ourts have refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing").  Balanced against Movant's confidentiality interests is the public's "fundamental interest in understanding the disputes presented to and decided by the courts, so as to assure that they are run fairly and that judges act honestly."  *Huddleson*, 270 F.R.D. at 635.

Regarding those Exhibits for which Movants seeks to maintain Level 1 restriction in their entirety, alternatives to restriction are not practical for these exhibits because (1) the confidential and sensitive business information included therein pervades these exhibits to such an extent that redaction would provide no information to the public relevant to any Court determination and (2) summarization would either be cumulative with the content already publicly available through un-redacted portions of other exhibits and the underlying motion or would defeat Movants' privacy interest.  Where practicable,

Movants seek to utilize redaction as an alternative to complete restriction.   Regarding those Exhibits for which Movants seek leave to file redacted versions, Movants have endeavored to balance its above-discussed confidentiality interests with the public's right of access to court documents.   Movant's respectfully submit that the un-redacted and un-restricted content associated with [#494], [#495], and [#496] and the exhibits thereto will amply allow the public to understand the disputes at hand and any ruling of the Court thereupon.

## V.   REQUESTED RELIEF

Accordingly, Movants respectfully request that the Court grant this Motion and issue an order:

(1) directing the Clerk of the Court to docket Exhibits 1-118 as the publicly available versions of [##494-2, 494-3, 494-6, 494-7, 494-8, 494-9, 494-10, 494-11, 494-12, 494-13, 494-14, 494-15, 494-16, 494-17, 494-18, 494-19, 494-20, 494-21, 494-22, 494-23, 494-24, 494-25, 494-27, 494-29, 494-31, 494-32, 494-33, 494-34, 494-35, 494-40, 494-41, 494-42, 494-45, 494-46, 494-47, 497-48, 494-49, 494-50, 494-51, 494-52, 494-54, 494-56, 494-57, 494-58, 494-59, 494-65, 494-69, 494-69, 494-71, 494-72, 494-73, 494-74, 494-75, 494-76, 494-77, 494-78, 494-79, 494-80, 494-81, 494-82, 494-83, 494-84, 494-85, 494-87, 494-89, 498-1, 498-2, 498-3, 498-7, 498-8, 498-11, 498-12, 499-4, 499-5, 499-6, 499-7, 499-11, 500, 500-1, 500-2, 500-4, 500-7, 500-8, 500-9, 500-12, 500-13, 500-14, 501, 501-1, 501-2, 501-3, 501-4, 501-5, 501-6, 501-7, 501-8, 501-9, 501-10, 501-11, 501-13, 501-14, 501-16, 501-17, 501-19, 501-20, 501-21, 501-22, 501-25, 501-26, 497, 497-1, 497-

2, 497-3, 497-4, 497-5, 497-6, 497-7] while maintaining Level 1 restriction for the originally-filed version of these documents; and

(2) maintaining Level 1 restriction for [##494-3, 494-12 through 494-24, 494-28, 494-29, 494-38, 494-41, 494-42, 494-45, 494-46, 494-50, 494-52, 494-54, 494-55, 494-56, 494-57, 494-58, 494-59, 494-61, 494-65, 494-72 through 494-76, 494-79, 494-80, 494-82, 494-83, 494-85, 494-86, 494-87, 494-89, 498-1 through 498-16, 498-22 through 498-24, 499 through 499-5, 500, 500-5, 500-13, 500-14, 501-1 through 501-4, 501-7 through 501-10, 501-16, 501-17]

Dated:  December 16, 2016.

Respectfully submitted,

/s/Deborah J. Winegard              /s/Laura Sturges

WHATLEY KALLAS, LLP              GIBSON, DUNN & CRUTCHER LLP

Deborah J. Winegard              Laura Sturges
1068 Virginia Avenue, NE              1801 California Street
Atlanta, GA 30306              Suite 4200
Telephone: 404.607.8222              Denver, CO 80202-2642
Facsimile: 404.607.8451              Telephone: 303.298.5700
dwinegard@whatleykallas.com              Facsimile: 303.313.2825
                             lsturges@gibsondunn.com

W. Tucker Brown
2001 Park Place Tower, Suite 1000              Joshua Lipton
Birmingham, AL 35203              1050 Connecticut Avenue, N.W.
Telephone: 205.488.1200              Third Floor
Facsimile: 800.922.4851              Washington, DC 20036-5303
tbrown@whatleykallas.com              Telephone: 202.955.8226
                             Facsimile: 202.530.9536
Joe R. Whatley, Jr.              jlipton@gibsondunn.com
Colorado State Bar No. 38820
720 East Durant Street              *Attorneys for Defendant and*
Suite E6              *Counterclaim Plaintiff Aetna, Inc.*

Aspen, CO 81611
Telephone: 970.300.4848
Facsimile: 970.429.8280
jwhatley@whatleykallas.com

Edith M. Kallas
1180 Avenue of the Americas, 20th
Floor
New York, NY 10036
Telephone: 212.447.7060
Facsimile: 800.922.4851
ekallas@whatleykallas.com

*Attorneys for Plaintiffs and Counterclaim
Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 16th day of December, 2016, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


*/s/Laura Sturges*
Counsel for Aetna