# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-03012-WJM-NYW

KISSING CAMELS SURGERY CENTER, LLC, et al.

       Plaintiffs,

v.

CENTURA HEALTH CORPORATION, et al.

       Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE PURPORTED TESTIMONY OF DR. FOREMAN RELATING TO PLAINTIFFS' ALLEGED DAMAGES**

## I.    INTRODUCTION

No better evidence exists to show the deficiencies in Plaintiffs' claims than their last-ditch effort to run from their expert's opinions once Defendants exposed the flaws in those opinions. Rather than defend what their expert did, and months after expert reports were due and well after the close of discovery, Plaintiffs effectively conceded their expert's mistakes by filing a new expert report as Exhibit 1 to their opposition to Defendants' Daubert Motion (the "New Report," ECF No. 497). Plaintiffs style the New Report as a "Declaration," but a cursory reading shows it is a new report, presented without obtaining or even seeking leave from the Court. Plaintiffs' motivation is transparent: they hope to cure the fatal flaws in their expert's report by starting over. The New Report comes too late. Rule 26 does not permit a party to add to or remedy its expert's opinions by submitting new reports, particularly after all deadlines have passed. And here the violation is even worse: the New Report does not just update a few figures;

it contains new opinions altogether. Defendants will suffer severe prejudice because they will be deprived the opportunity to investigate the new methodologies introduced in the New Report, depose Foreman regarding the New Report or submit rebuttal reports.

Plaintiffs' other arguments fare no better. They try to distract the Court from a proper evaluation under Rule 702 and *Daubert* of Foreman's methodology in his original reports by claiming his mistakes go to the "weight" and not admissibility of his opinions, suggesting that Defendants should simply cross-examine Foreman on his new opinions at trial. This is wrong as a matter of law, and ignores the prejudice that Defendants will suffer because their own experts can no longer respond to the new opinions.

This Court should enforce its scheduling order and exercise its gatekeeping function pursuant to *Daubert* and its progeny. For the reasons set forth below and in the motion to strike filed today by defendants, Foreman's New Report should be stricken and all of his testimony relating to Plaintiffs' alleged damages should be excluded.

## II. ARGUMENT

**A. Plaintiffs' Entire Opposition Is Based On Foreman's New Report, Which Should Be Stricken Because It Does Not Comply With Rule 26 And *Daubert*.**

In the New Report, Foreman seeks to introduce a previously undisclosed and entirely new damage model based on a claimed "benchmark" method. Foreman also seeks to supplement his opinions concerning his assessment of damages pursuant to the yardstick method (i.e., the methodology challenged in Defendants' Daubert Motion). Plaintiffs cannot defeat the Daubert Motion by introducing new expert opinions or otherwise attempting to supplement their expert's previous testimony in violation of this Court's scheduling order and the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert witness to provide

a written report that includes "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). "[T]he report must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions." *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 430 (N.D. Okla. 2008). Compliance with the Rule 26(a)(2) requirements is "mandatory":

> A litigant who fails to comply with these requirements does so at his own peril. Rule 37(c)(1) bars the use of a witness or information that was not disclosed as required by Rule 26(a) or (e) unless the offending party can establish that the failure … is either substantially justified or harmless.

*Id.* at 429 (excluding expert reports). Here, moreover, Plaintiffs were required produce its expert's report before the deadline set forth in the scheduling order. ECF No. 414.

A party cannot submit a supplemental report to cure fatal flaws in its initial report. *Cohlmia*, 254 F.R.D. at 433 ("The supplementation Plaintiffs suggest here is, in fact, a second bite at the apple – an opportunity to correct fatal defects in the reports they have submitted. That is not what Rule 26(e) envisions."). The *Cohlmia* court, with reasoning equally applicable here, stated that:

> A supplemental expert report that states additional opinions or rationale or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1). To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given. This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a).

*Id.* (quoting *Palmer v. Asarco, Inc.*, 2007 WL 2254343, at *3 (N.D. Okla. Aug. 3, 2007); *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (same). Here, Foreman's New Report exceeds the bounds of permissible supplementation—and thus should be stricken—because it states new opinions and seeks to correct and otherwise

-3-

supplement in material ways his opinions previously expressed. What is left are the opinions in his original reports, that plaintiffs do not try to defend and that should be excluded under Rule 702 and *Daubert*.

### 1. Foreman's New "Benchmark" Methodology Should Be Excluded.

Foreman says in his New Report that he previously employed both the yardstick method <u>and</u> the benchmark method to quantify damages and plaintiffs therefore contend that the *Daubert* motion should be denied because it did not address the latter opinion. (New Report ¶ 3; Opp. at 1.) This is wrong: Defendants did not address a benchmark opinion because <u>it did not exist</u> prior to the New Report just disclosed.

"[A] typical yardstick approach" is where "one compares data from a market participant during the period in which the antitrust violation is believed to have had an effect … to data from the same period but from a market participant believed not to have been affected by the violation." (New Report ¶ 4; Mot. to Strike at 5-6; *see also* Timberlake, Federal Treble Damage Antitrust Actions, 317 (1965) ("'yardstick' method compares the results of a competing business with the results of plaintiff's business").) This is precisely the type of analysis Foreman performed here in his original report:

> The first step [in the damage analysis] is to determine the number of cases per month that Plaintiffs would have performed but for the anticompetitive conduct. <u>We estimate this from the cases performed at competitor ACSs operated by Defendants and co-conspirators</u> … .

(2014 Report (ECF 477-4) ¶ 251 (emphasis added); *id.* ¶ 255 ("Given the comparisons with Audubon, Centrum and Clear Creek, we can assume that the Plaintiff facilities would have provided ▊ cases per month…."); *id.* ¶¶ 252-254 (using competitor ASCs

as benchmarks).)[1] In other words, he estimated "each Plaintiff facility's but-for 'steady-state' volume by looking at volumes at three Defendant facilities." (Vistnes Rept., ECF 477-5 at 37.) That is not a benchmark method, which evaluates a business by reference to the circumstances of the *same* business at a prior or subsequent period of time.[2] That is an entirely different approach. *See Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 667 (5th Cir. 1974) (explaining difference between benchmark and yardstick methods).

Foreman explains that "the benchmark approach evaluates data only from market participants affected by the violation, comparing the impact period to the period before and/or after the alleged period of impact." (New Report ¶ 4.) However, <u>nowhere</u> in his April 2014 Report, 2016 Updated Report (ECF 497-5), or 2016 Rebuttal Report (Ex. 1) is there any indication that he evaluated *Plaintiffs'* data to calculate the number of cases Plaintiffs would have performed in a "but for" world. Rather, Foreman expressly used three *Defendant* facilities to estimate Plaintiffs' case volumes. (2014 Report ¶ 252 (using Audubon as benchmark); *id.* ¶ 253 (Clear Creek); *id.* ¶ 254 (Centrum).)

Plaintiffs try to defend his new method by citing portions of the April 2014 Report (Opp. at 5), but those sources do not show a benchmark method. First, Plaintiffs claim that Figures 34-41 in the 2014 Report show that he "relied on information and data from the Plaintiffs themselves." (New Report ¶ 6.) Foreman may have reviewed Plaintiffs' data, but not in connection with any benchmark method to assess damages. Figures

---

[1] Dr. Foreman adopted the same yardstick methodology to estimate damages in his Updated 2016 Report. (2016 Updated Report ¶ 62 ("The methodology is the same.").)

[2] What Dr. Foreman calls the "benchmark" method is commonly known as the "before and after" method. Timberlake, supra, 317 ("The 'before and after theory' compares the results of the [affected] business before the impact of the violation with results during the violation.").

34-41 do not even appear in the "Damages" section of the 2014 Report, but rather were offered to support Foreman's analysis concerning the alleged "impact on competition." (2014 Report at 89; *see also id.* ¶ 216 (evaluating claim that alleged conduct "depriv[ed] patients and physicians of free ASC choice").) Moreover, Foreman used Figures 34-41 to evaluate "how … these growth and decline patterns <u>compare with other ASCs</u> in the market" (*id.* ¶ 227 (emphasis added)), and thus do not comprise a benchmark approach even under Foreman's own definition. (New Report ¶ 4 (benchmark approach "evaluates data <u>only</u> from market participants affected by the violation").)

Second, Foreman cites his own deposition to support his view that he previously applied a benchmark method, but his testimony actually supports Defendants. When asked how he concluded Plaintiffs would have achieved ▇ cases per month "but for" the alleged conduct, Foreman's response clearly shows he used the yardstick method, with three Defendant facilities as benchmarks, and nowhere did he reference any data from Plaintiffs. (Foreman Tr. (ECF 477-3) 87:16-18 (**Q**. How did you arrive at that [480] figure? A. By comparison with Audubon, Centrum and Clear Creek."); *see also id.* 88:2-6 ("**Q**: [I]s it fair to say those three facilities, Audubon, Centrum and Clear Creek are your benchmark facility to determine your 'but for' cases per month? **A**: Yes.").)

The New Report thus belatedly constructs an entirely new method for calculating damages. The benchmark method was not previously disclosed, and was not otherwise subject to discovery. It therefore should be excluded. Fed. R. Civ. P 37(c)(1).[3]

---

[3] Courts routinely strike supplemental declarations under such circumstances. *E.g., Beller ex rel. Beller v. U.S.*, 221 F.R.D. 696, 702 (D.N.M. 2003) (striking supplemental report filed after the deadline for expert disclosures and without leave of the court, and because the opinions expressed were new).

-6-

### 2. Foreman's New Report Supplementing His Yardstick Methodology Should Be Excluded.

Foreman's New Report also supplements Foreman's previous opinions concerning his yardstick methodology, in an obvious attempt to remedy the defects identified in Defendants' motion. (New Report ¶¶ 12-26.) For example, Foreman introduces "corrected monthly case counts" for his HCA comparison (*id.* ¶ 17) and notes that he made a "[c]orrection of the errors" inherent in his assumption that his benchmark facilities were operating near capacity (*id.* ¶ 18). Foreman also changed his testimony "upon reflection" regarding how physician movement and retirement may have impacted his damage assessment. *Id.* ¶¶ 23-24. These and other opinions (*see id.* ¶¶ 14-36) were not timely disclosed during discovery and, importantly, consist of new opinions that contradict Foreman's prior statements that Defendants exposed in their motion. A purported supplemental report that states additional opinions or "seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report" is beyond the scope of proper supplementation and subject to exclusion under Rule 37. *Cohlmia*, 254 F.R.D. at 433; *Palmer*, 2007 WL 2254343, at *3 (excluding expert's affidavit containing new facts submitted with opposition to *Daubert* motion, two months before trial).

### B. The Defects In Foreman's Yardstick Methodology Go Directly To The Admissibility Of His Opinions And Are Too Severe To Be Reserved For Cross Examination.

What is left are damages opinions in Foreman's original reports that plaintiffs do not seriously try to defend and that should be excluded under *Daubert*. Defendants previously explained the multitude of methodological errors that render Foreman's yardstick methodology unreliable and inadmissible. In particular:

-7-

- Foreman erroneously compared the number of <u>procedures</u> at the Denver benchmark facilities with the number of <u>cases</u> at the Plaintiff facilities. (*See* Mot. (ECF 477) at 5-6); and

- Foreman mistakenly believed he used data for six operating rooms for his Audubon benchmark, when in fact he used data for 13. (*Id.* at 6-7.)

In his New Report, Foreman admits (as he must) that "[b]oth contentions are correct" (New Report ¶ 13), plainly confirming the unreliability of his damage analysis.

Defendants also explained that:

- Foreman did not attempt to separate the impact of the alleged conduct from other factors that impacted Plaintiffs' business. Mot. at 7-10.

- Foreman did not conduct any analysis to support a reliable conclusion that Plaintiffs' would have achieved the benchmark facilities' volumes in a but-for world. *Id.* at 10-12; and

- Foreman found damages where none can plausibly exist. *Id.* at 13-15.

Plaintiffs do not meaningfully rebut any of these egregious errors (and, as noted, conceded the first two). Indeed, Plaintiffs offer only two points in response, neither of which remedy the flaws inherent in Foreman's damage methodology. First, Plaintiffs <u>concede</u> that Foreman "fail[ed] to adjust for" the differences between in-network ASCs versus out-of-network ASCs (Opp. at 7), which undermines his assumption that Plaintiffs (which were out-of-network) would have achieved the volume of his three benchmark facilities (which were in-network) in the "but for" world. (Mot. at 10-12.) Foreman instead (and for the first time) surmises that his failure in this regard was premised on "[a]n interesting technicality," and should be trusted because he believes it "rests on common sense." (New Report ¶¶ 29-30.) Foreman's *ipse dixit* is not sufficient to support his work: all we have is Foreman's unsupported "trust me" that it would be "common sense" to assume that Plaintiffs would have achieved the same volumes as

-8-

the benchmark facilities. *Graves v. Mazda Motor Corp.*, 405 F. App'x 296, 300 (10th Cir. 2010) (affirming exclusion of expert testimony based on expert's *ipse dixit*, which "is never enough to guarantee him a ticket to admissibility").

Second, Plaintiffs claim that they "have now proven that the alleged conspiracy started in 2010," and thus damages from that point forward are appropriate. (Opp. at 6.) However, Plaintiffs have not "proven" anything at this point, and even the Court deemed Centura's involvement in a conspiracy as early as 2010 to be "far from definitive." (Order, ECF 311, at 11.) And, of course, even if these two narrow issues were resolved in Plaintiffs' favor (they should not be), Plaintiffs still have failed to remedy the other substantial errors identified in the Daubert Motion, and Foreman's damages testimony should be excluded for the reasons previously explained. *E.g,* Br. at 5-10.

Unable to defend Foreman's errors, Plaintiffs instead argue that the inadequacies of Foreman's opinions should only go to the "weight" of his testimony and not to its admissibility, and Defendants should address them on cross-examination at trial. (*Id.*) This ignores the Court's gatekeeping duty under *Daubert*, its progeny, and Rule 702.

In *First Savings Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078 (D. Kan. 2000), the defendant moved to exclude testimony on grounds advanced by Defendants here, that the expert "improperly attributed all of plaintiff's losses to the defendants' allegedly illegal acts, despite the presence of significant other factors." *Id.* at 1084. The court granted the motion, noting that the "plaintiff merely argues that the evidence goes to the weight of [the expert's] proposed testimony, and not to its admissibility." *Id.* at 1085 (excluding expert report and testimony "because they would not assist the jury in

determining the amount of actual damages defendants caused plaintiff to suffer.").[4]

Plaintiffs here make the same assertions. (Opp. at 11-12.) Plaintiffs no doubt seek to avoid a detailed review of the defects noted by defendants, but that review is essential to the admissibility inquiry and gatekeeping function of the Court. Indeed, "[t]he unvarnished declaration that disputes as to credentials and methodology go to weight rather than admissibility is irreconcilable with scores of Tenth Circuit decisions, to say nothing of *Daubert*, *Kumho*, *Joiner* and *Weisgram*." *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1232 n.11 (N.D. Okla. 2007), *aff'd* 558 F.3d 1130 (10th Cir. 2009).

Nor can this testimony be salvaged by Plaintiffs' suggestion that flaws in Foreman's methodology can be explored on cross-examination. (Opp. at 7-8.) As Plaintiffs recognize, *Daubert* is clear that cross-examination is an "appropriate means of attacking shaky *but admissible* evidence." (*Id.* at 2.) Because the admissibility hurdle must be cleared first, Plaintiffs' claim that "Defendants can certainly cross-examine Dr. Foreman regarding [his mistakes]" (*id.* at 7) is incorrect. Foreman's testimony does not meet the standards of Rule 702, and is thus not admissible in the first place. Accordingly, the availability of cross-examination is irrelevant and, consistent with this Court's gate-keeping function, the testimony must be excluded.

### III.   CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court exclude Foreman's damage analysis.

---

[4] *See also Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1335 (10th Cir. 2004) (rejecting claim that the district court "nit-pick[ed] bits and pieces of Dr. Healy's work" and "premis[ed] an exclusionary decision on concerns or questions which affect the weight rather than the admissibility of Dr. Healy's testimony.").

| | |
|---|---|
| Dated: December 16, 2016 | Respectfully submitted,<br><br>*s/ Kathryn A. Reilly*<br>Kathryn A. Reilly<br>Grace A. Fox<br>Wheeler Trigg O'Donnell LLP<br>370 Seventeenth Street, Suite 4500<br>Denver, CO 80202-5647<br>Tel: 303.244.1800<br>Fax: 303.244.1879<br>Email: reilly@wtotrial.com<br>       fox@wtotrial.com<br><br>Attorneys for Defendant Colorado Ambulatory Surgery Center Association, Inc. |

*s/ Thomas Demitrack*
Thomas Demitrack
Brett W. Bell
JONES DAY
901 Lakeside Avenue East
Cleveland, OH 44114
Tel: 216.586.3939
Email: tdemitrack@jonesday.com
Email: bbell@jonesday.com

Paula W. Render
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL 60601
Tel: 312.782.3939
Email: prender@jonesday.com

Melvin B. Sabey
HALL, RENDER, KILLIAN, HEATH &
LYMAN, P.C.
1512 Larimer Street, Suite 300
Writer Square
Denver, CO 80208
Tel: 303.801.3535
Email: melsabey@hallrender.com

Attorneys for Defendant
CENTURA HEALTH CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2016, I electronically filed the foregoing Defendant using the CM/ECF system which will send notification of such filing to counsel of record.

*s/ Claudia Jones*
Legal Secretary

NAI-1502311467v2