# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-03012-WJM-NYW

KISSING CAMELS SURGERY CENTER, LLC, et al.

      Plaintiffs,

v.

CENTURA HEALTH CORPORATION, et al.

      Defendants.

---

**DEFENDANT COLORADO AMBULATORY SURGERY CENTER ASSOCIATION
INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

Defendant Colorado Ambulatory Surgery Center Association, Inc. ("CASCA")

submits this Reply in Support of its Motion for Summary Judgment (ECF No. 474).

## I.    INTRODUCTION

Plaintiffs cannot avoid summary judgment on their remaining claims.[1] First, as to

the conspiracy claim, the Court has already defined the scope of any triable claim. As

CASCA explained in its opening brief, that claim is barred by the *Noerr-Pennington*

doctrine. Having no good answer to that legal bar, Plaintiffs seek to relitigate the scope

of that claim. Yet Plaintiffs presented the same evidence in response to Centura's

original motion for summary judgment and the Court found only a factual dispute on a

---

[1] Due to Aetna's pending settlement, CASCA responds herein to all arguments relevant
to both CASCA's motion and Aetna's motion (which was joined by CASCA and Centura). Per
the Court's November 4 Order (ECF 485), Centura is not filing a separate reply, but joins
CASCA's reply.

claim that is barred by the *Noerr-Pennington* doctrine. For that reason alone, summary judgment is warranted on all of the remaining conspiracy claims in this case.

Second, Plaintiffs' claims are deficient because Plaintiffs cannot demonstrate antitrust injury, a required element for each of their remaining claims. This Court's summary judgment ruling in the *Cigna* action controls the question of antitrust injury in two respects: it precludes Plaintiffs from relitigating antitrust injury and, setting that aside, set the standard for analyzing Plaintiffs' evidence of antitrust injury in this case. In *Cigna*, the Court found that Plaintiffs did not present evidence from which a jury could find antitrust injury because "there is no evidence that any of the Plaintiff ASCs in this case have actually been excluded from the market" and there also is no evidence that any of the Plaintiffs "are likely to fail." *Arapahoe Surgery Center, LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1106 (D. Colo. 2016). ***No fact distinguishes this case from the Cigna case***—Plaintiffs here also brought the *Cigna* action and the same conduct is alleged in both cases. Having no evidence of antitrust injury, Plaintiffs offer a speculative opinion from their expert report (which Defendants have moved to exclude) that Plaintiffs *might* have been driven out of business if they had not filed this lawsuit, but that argument is not "evidence" and certainly fails to establish *actual* exclusion or *likely* failure, as required by the *Cigna* order.[2]

---

[2] Further, Plaintiffs' argument that issue preclusion has been waived is meritless for several reasons, including that it cannot apply to CASCA, which has not previously moved for summary judgment. See Section V.B, below.

Any one of these arguments is sufficient ground for the Court to dismiss this case in its entirety. For the reasons stated below and in CASCA's and Aetna's opening briefs, the Court should grant summary judgment in Defendants' favor on all remaining claims.

## II.    REPLY CONCERNING AETNA UNDISPUTED FACTS

### A.    Paragraphs Not Relevant to Arguments Joined by CASCA

The following paragraphs of Aetna's Statement of Material Facts ("Aetna SMF") are not relevant to the Court's determination of the antitrust injury argument joined by CASCA: ¶¶ 1-21, 24-34, 48-99. To the extent Plaintiffs' response to those paragraphs contain assertions beyond the scope of the facts asserted by Aetna, CASCA denies those assertions as unsupported by the evidence and objects to their relevance.

### B.    Paragraphs Relevant to Arguments Joined by CASCA

22.    Plaintiffs admit this paragraph.

23.    Plaintiffs deny this paragraph, but do not create a genuine issue of fact. They offer no evidence to rebut that these facilities opened in 2013 and 2015 and admit that SurgCenter Development invested in both. This fact should be deemed admitted.

35.    Plaintiffs admit this paragraph. Plaintiffs' further assertion that they "could have gone out of business if the Defendants' conspiracy had succeeded in depriving the Plaintiffs business from commercial health insurers" is not relevant to CASCA's motion. Regardless, that assertion is denied as unsupported by the evidence. The cited expert report references no evidence that Plaintiffs were actually or likely to be deprived of business from commercial health insurers (Pls. Ex. I ¶¶ 36-43);[3] such deprivation never

___

[3] CASCA also objects on the grounds that the proffered expert report is an unsworn statement that is not competent evidence for the Court to consider when ruling on CASCA's

occurred. Foreman Tr. (Ex. A) 42:23-43:1 ("Q. Did that actually happen, that the alleged conspirators deprived the plaintiff ASC of all of their commercial revenue? A. No."); *id.* 47:23-48:6 ("Q. It's not your testimony they have risk. In fact, in the data that you've examined in your updated report, you show that each of the four plaintiff ASCs has a substantial proportion of their caseload and substantial revenue from commercial insurers in all periods that you've studied; isn't that correct? A. That's correct.").

36-41. Plaintiffs admit these paragraphs. Plaintiffs' assertion that "plaintiffs would have had negative profits if the Defendants' conspiracy had succeeded in depriving the plaintiffs business from commercial health insurers" or that their profits would have been less is not relevant to CASCA's motion. Regardless, that assertion is denied as unsupported by the evidence. The cited expert report references no evidence suggesting Plaintiffs were likely to be deprived of business from commercial health insurers; such deprivation never occurred. *Id.*

42-45. Plaintiffs deny these paragraphs, but do not create a genuine issue of fact. The cited unsworn expert report discusses the *significance* of the return on investment calculations in Aetna SMF ¶¶ 42-45, but does not contradict their accuracy. Thus, Aetna SMF ¶¶ 42-45 should be deemed admitted.

46. Plaintiffs admit this paragraph. Plaintiffs' assertion that they would have experienced a drop in physicians "if the defendants' conspiracy had succeeded in depriving the plaintiffs of patients with commercial health insurance" is not relevant.

---

summary judgment motion. *Sofford v. Schindler Elevator Corp.*, 954 F. Supp. 1459, 1462-63 (D. Colo. 1997) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970)); *Sparks v. Rittenhouse*, 314 F. App'x 104, 107 n.2 (10th Cir. 2008) ("Unsworn statements do not meet the evidentiary requirements of Fed.R.Civ.P. 56.").

Regardless, that assertion is denied as unsupported by the evidence. The cited

unsworn expert report references no evidence that Plaintiffs were actually or likely to be

deprived of business from commercial health insurers (Pls. Ex. I ¶ 7); such deprivation

never occurred. Foreman Tr. 42:23-43:1, 47:23-48:6; *see also id.* 50:2-5 ("Q. Are you

aware of any physician who left the plaintiff ASCs because of the alleged unlawful

conduct of the defendants? A. I'm not aware of any."). Regarding Plaintiffs' other

assertions, CASCA admits that Rudawsky was a network manager for Aetna and that

Snow was one of Aetna's contacts at HCA. CASCA denies that HCA "feared" losing

patients to the Plaintiffs as unsupported by the evidence.

47.     Plaintiffs deny this paragraph, but do not create a genuine issue of fact.

The cited unsworn expert report references no evidence that Plaintiffs were actually or

likely to be deprived of business from commercial health insurers, and such deprivation

never occurred. *Id.*; Foreman Tr. 37:20-25 ("Q. Are you offering any -- are you offering

an expert opinion in this case that any conduct by any of the defendants caused any of

the plaintiff ASCs to be at risk of going out of business? A. No.").

### III.     REPLY CONCERNING CASCA STATEMENT OF FACTS

1-3.     Plaintiffs admit these paragraphs.

4.     Plaintiffs deny this paragraph, but do not create a genuine issue of fact.

Plaintiffs seek to relitigate the scope of the alleged conspiracy, but the Court already

considered this evidence and defined the conspiracy as relating to a single meeting, on

August 29, 2012, undertaken for the purpose of pursuing statutory and regulatory relief

against Plaintiffs' conduct. Order, ECF 311 at 10. CASCA denies the assertions in

Plaintiffs' response and objects to their relevance to CASCA's motion.

## IV.    RESPONSE CONCERNING ADDITIONAL DISPUTED FACTS

### A.    Defendants' Conspiracy

The following paragraphs of Plaintiffs' Statement of Additional Disputed Facts

("Pls' SMF") are not relevant to the Court's determination of the arguments joined by

CASCA: ¶¶ 1-34.  CASCA denies those assertions as unsupported by the evidence.

### B.    Antitrust Injury

35.    Admitted that Dr. Foreman included in his report a section titled "Impact on

Competition" that analyzed the alleged impact on market concentration of Plaintiffs'

hypothetical exclusion from the market, and that the report contains the quoted phrases.

CASCA denies as unsupported by the evidence that "[e]limination of any competitor

(including any of the Plaintiffs) would have a substantial negative impact on

[competition]" (*see* Aetna Ex. 9 at 161:3-5) and the implication the report is evidence of

antitrust injury.

36.    Admit that opening an ASC requires capital. That such investment

constitutes a "barrier to entry" is a legal conclusion and in any event is denied as

unsupported by the evidence. *E.g.*, Aetna SMF ¶¶ 22-23 (new entry in both markets).

37.    Admit that ASCs must comply with regulations and licensing requirements

and submit to an inspection, and that Cherry Creek failed an inspection. Denied as

unsupported by the evidence that these regulations and licensure requirements are

"significant" and the implication they evidence a barrier to entry. *E.g.,* Aetna SMF ¶¶ 22-

23 (evidencing ease of entry).

38.    Denied as unsupported by the evidence. Plaintiffs were able to recruit

sufficient physicians to operate their centers and no plaintiff lost physicians during the

pendency of this case. Aetna SMF ¶ 46. It is undisputed that SurgCenter was able to recruit enough physicians to open two new centers in Denver despite the conduct alleged, and that several new centers opened in Colorado Springs since 2010. Aetna SMF ¶ 22-23; Foreman Tr. 143:20-144:3.

39.     Denied as unsupported by the evidence that barriers to entry are particularly high in Colorado. *See* Aetna SMF ¶ 22-23 (undisputed new entry in Denver and Colorado Springs). Admit that ASCs in Colorado have failed, as do businesses in every market, but deny the implication that such failure constitutes a barrier to entry.

**C.     With Respect to CASCA**

1.     Admit that the listed individuals contacted CASCA's Executive Director regarding Plaintiffs' practice of waiving co-pays and deductibles. Denied that the complaints concerned a "competitive threat" posed by Plaintiffs. *E.g.,* Schwartz Tr. (Ex. B) 62:2-4 (contacts "didn't ask [Schwartz] to do anything" regarding the plaintiff facilities). Regardless, CASCA objects that this statement is not relevant to CASCA's motion.

2.     Admit that Stan Anderson of HCA expressed concern about physicians leaving his surgery centers. Denied that this concern or any concern by HCA, Centura or Audubon led directly or otherwise to any action by CASCA. Regardless, CASCA objects that this statement is not relevant to CASCA's motion.

## V.     ARGUMENT

**A.     The Noerr-Pennington Doctrine Bars Plaintiffs' Conspiracy Claims.**

Plaintiffs concede, as they must, that the *Noerr-Pennington* doctrine bars antitrust claims "arising 'from government action' or from 'efforts to influence government action.'" (Opp. at 38, quoting *In re Motor Fuel Temperature Sales Practices*

*Litig.*, 06-2582-KHV, 2012 WL 3637716, at * 2 (D. Kansas. Aug. 23, 2012)). The only

conduct alleged against CASCA—all relating to its participation in the August 29, 2012

meeting with members of the Colorado Association of Health Plans ("CAHP")—falls well

within the *Noerr-Pennington* immunity. Nonetheless, Plaintiffs argue that the *Noerr-*

*Pennington* doctrine should not apply because (1) CASCA's previous efforts to influence

government were unsuccessful, and (2) CASCA's petitioning efforts also involved non-

protected activity. Both arguments fail.

Plaintiffs first point out that, prior to the August 2012 meeting, CASCA had

contacted the Department of Regulatory Affairs ("DORA") and been told that "DORA did

not have jurisdiction with regard to the ASC issues being discussed." (Opp. at 38-39.)

But CASCA's initial lack of success in convincing DORA to address Plaintiffs' unlawful

practices does not mean its subsequent efforts to pursue other regulatory and statutory

remedies are not protected. In any event, unsuccessful but legitimate attempts to

petition the government equally implicate protected First Amendment interests. *See e.g.,*

*Opdyke Inv. Co. v. City of Detroit*, 883 F.2d 1265, 1273 (6th Cir. 1989) (a non-frivolous

lawsuit did not fall under the sham litigation exception to Noerr-Pennington immunity

simply because it was unsuccessful); *Potters Med. Ctr. v. City Hosp. Ass'n*, 800 F.2d

568, 579 (6th Cir. 1986) (noting that success is not a prerequisite to receiving protection

under Noerr–Pennington).

Plaintiffs' contention that CASCA's actions went beyond government petitioning

activities is equally unavailing. Plaintiffs rely on the same arguments and evidence cited

in opposition to Centura's motion for summary judgment. The Court already considered

those arguments and concluded that the only evidence of a conspiracy relates to the

August 29, 2012 meeting attended by representatives of CASCA and the Colorado Association of Health Plans ("CAHP"). Because the purpose of that meeting, as this Court recognized, was "to investigate regulatory or statutory relief to stop ASCs from waiving co-pays," *Noerr-Pennington* immunity applies. Order, ECF 311 at 10; Reece Tr. (Ex. C) 40:12-18. Plaintiffs' attempts to avoid application of *Noerr-Pennington* by advancing a contrary interpretation of the August 2012 meeting should be disregarded.

**B.    Issue Preclusion Bars Plaintiffs' Antitrust Conspiracy Claims.**

Plaintiffs' claims are identical to the claims this Court recently rejected in the related *Cigna* matter. *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1106 (D. Colo. 2016) (granting summary judgment as to plaintiffs' antitrust claims because "there is no evidence that any of the Plaintiff ASCs in this case have actually been excluded from the market; rather, the evidence shows only that they suffered some amount of lost business"). As a result, Plaintiffs cannot re-litigate antitrust injury here because "issue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004).

To avoid issue preclusion (and thus the dismissal of their antitrust claims), Plaintiffs advance three meritless arguments.

1.    Plaintiffs claim that Defendants "waived the argument of issue preclusion" because Defendants did not raise it as an affirmative defense in their answers, and, further, because Defendants did not raise it immediately upon entry of the Court's *Cigna*

decision in March 2016. (Opp. at 44.) For this reason, Plaintiffs allege, Defendants can no longer raise the issue because it is untimely. (*Id.*) These arguments fail.

First, there was no reason to raise preclusion as an affirmative defense in answers that were filed long before the issuance of the Court's *Cigna* ruling. *E.g., Sierra Club v. El Paso Gold Mines, Inc.*, No. 01-cv-002163-PAC-MEH, 2006 WL 2331082, at *3 (D. Colo. Aug. 10, 2006) (defendant timely raised preclusion in its second motion for summary judgment despite failing to plead it as an affirmative defense where collateral decision was issued after the court's ruling on defendant's initial summary judgment motion); *In re Jerry Lewis Hoffman*, 557 B.R. 177, 187 (Bankr. D. Colo. 2016) (dismissing claim as barred by collateral estoppel, noting "the law in this Circuit is clear that in the absence of a showing of prejudice, an affirmative defense may be raised for the first time at summary judgment.").

Nor was there reason for CASCA to raise the issue in a summary judgment motion at the time the *Cigna* order was issued earlier this year because CASCA had not previously filed a summary judgment motion and was still in the middle of discovery.[4] In any event, courts have found the defense of issue preclusion to have been timely raised at much later stages of litigation than here. *E.g., Lujan v. U.S. Dept. of the Interior*, 673

---

[4] It would make no sense to grant CASCA's motion on grounds of issue preclusion and then hold that Centura must still go to trial on what the Court has already decided is a legally deficient ruling. Moreover, Centura had no obligation to raise the issue prior to the close of discovery. If Centura had filed a renewed motion after the issuance of the Cigna order (as plaintiffs now assert it should have done), but before the close of the other Defendants' discovery period, Plaintiffs would have argued that Centura filed its motion too early because Plaintiffs were still developing their record. In any event, such an approach would have insensibly forced the Court to consider Defendants' remaining summary judgment arguments in piecemeal fashion.

F.2d 1165, 1168 (10th Cir. 1982) (raised in a supplemental appellate brief); *Sierra Club*, 2006 WL 2331082, at *3 (raised for the first time four months before trial).[5]

  2.  Plaintiffs summarily conclude that "the issues decided in Cigna and in this case are not identical." (Opp. at 44.)[6] In support, they claim only that the Court "did not determine either the existence or parameters of the conspiracy in *Cigna*." (*Id.*) This is false; as Aetna pointed out and this Court recognized, *Cigna* involved "the same underlying conspiracy" alleged here. (Aetna Br. at 32; *Cigna*, 171 F. Supp. 3d at 1106.) It is unsurprising, then, that Plaintiffs fail to identify a single factual, legal, or other difference between the two matters. (*Id. See also* Pls. SMF ¶¶ 5, 21, 24 (identifying Cigna as an alleged participant in the conspiracy).) Nor could they; one need only compare the respective complaints to see the conspiracies alleged are one and the same. *Compare* Sec. Am. Compl., ECF 213 ¶¶ 1-4, 50-51, 94, 97, 104, 124 *with* Sec. Am. Compl., *Cigna*, ECF 60 ¶¶ 16-19, 173, 176, 179 (identifying Cigna, CASCA, Centura, and other defendants as co-conspirators and alleging Cigna participated in the same meetings and took the same actions as the payor defendants in this case). Because both cases involve "the same issue arising under virtually identical facts," they are identical for purposes of issue preclusion. *U.S. v. Stauffer Chem. Co.*, 464 U.S. 165,

---

  [5] Plaintiffs lone point of authority is inapposite, as it presents a much different procedural posture than present here. *See* Opp. at 43; *Horowitz v. State Bd. of Med.l Exam'rs of the State of Colorado*, 822 F.2d 1508 (10th Cir. 1987). In *Horowitz*, the preclusive decision was rendered months before the lower court ruled on summary judgment but was not raised as a defense until that summary judgment decision was on appeal. *Id.* at 1512. The Tenth Circuit's concerns over raising a defense for the first time on appeal are inapplicable here. Moreover, Defendants here (unlike in *Horowitz*) raised the defense before, not after, the Court ruled on dispositive motions.

  [6] Plaintiffs do not address and so concede the other three factors of the issue preclusion analysis. Aetna Br. at 32.

173 (1984); *see also B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 663 (10th Cir. 2006) (listing factors for determining whether issues are identical).

3.     Plaintiffs state that issue preclusion should not apply because, according to Plaintiffs, "only minimal judicial resources would be saved" by the granting of summary judgment to Defendants on the basis of issue preclusion. (Opp. at 45.) Not so. The Court's decision in *Cigna* is <u>dispositive of</u> Plaintiffs' antitrust claims;[7] obviously substantial resources would be saved if Plaintiffs' claims do not proceed to trial.

Plaintiffs otherwise recognize that one of the goals of the doctrine of issue preclusion is to prevent inconsistent results, but then urge the Court to disregard this factor because "inconsistent opinions already exist." (Opp. at 45.) First, the opinions are not inconsistent. The *Centura* opinion, rendered without the benefit of full discovery from Plaintiffs and the payor Defendants, held Plaintiffs demonstrated that competition might be harmed *if* Plaintiffs were excluded from the market (Order at 16-17); the *Cigna* decision, rendered on a complete record, recognized that Plaintiffs cannot prove such exclusion is likely ever to occur. 171 F. Supp. 3d at 1106. Regardless, the *Cigna* decision is the Court's most recent opinion, and it is the last in time ruling that has preclusive effect. *Weaver v. Texas Capital Bank, N.A.*, 660 F.3d 900, 907 (5th Cir. 2011); *Americana Fabrics, Inc. v. L&L Textiles, Inc.*, 754 F.2d 1524, 1530 (9th Cir. 1985) (reversing district court for failure to give preclusive effect to "last in time" order).[8]

---

[7] Antitrust injury is an essential element of both Plaintiffs' conspiracy claims against all Defendants and their monopolization claims against Centura. *Abraham v. Intermountain Health Care, Inc.*, 461 F.3d 1249, 1267 (10th Cir. 2006) (affirming summary judgment on § 2 claims for plaintiffs' failure to prove antitrust injury).

[8] Moreover, the Court unquestionably has authority to reconsider its earlier decision on the question of antitrust injury, particularly given that the intervening decision in the *Cigna* action

Ultimately, summary judgment is required under the doctrine of issue preclusion.

## C. Plaintiffs Cannot Show Antitrust Injury Because They Cannot Prove They Have Failed Or Are Likely To Fail.

The Court's *Cigna* opinion sets the relevant legal standard for these precise Plaintiffs to show antitrust injury: they must present evidence that they have "actually been excluded from the market" or that they "are likely to fail." *Cigna*, 171 F. Supp. 3d at 1106. Plaintiffs concededly have no such evidence.

First, it is undisputed that Plaintiffs are still in business. (Aetna SMF ¶ 35.) Clearly, Plaintiffs cannot satisfy the "actual exclusion" prong of the *Cigna* analysis.

Instead, Plaintiffs attempt to satisfy the "likely to fail" requirement of the *Cigna* decision. (Opp. at 46-48.) But the Court already concluded in the *Cigna* action that Plaintiffs are unable to meet that standard (171 F. Supp. 3d at 1106) and Plaintiffs offer no evidence that should cause the Court to revisit that decision. The only "evidence" Plaintiffs offer is the report of their expert, Dr. Foreman, who speculated that *if* the centers lost enough commercial case revenue, Plaintiffs' profitability would fall, surgeons would withdraw from the ASCs, and Plaintiffs inevitably would close. (Opp. at 46-48 (citing Pls. Exs. I, KK and LL).)[9] This is not evidence, but a truism; any business

---

was rendered on a full record. *Kennedy v. Lubar*, 273 F.3d 1293, 1299 (10th Cir. 2001) ("all federal courts retain power to reconsider if they wish"); *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1580-83 (Fed. Cir. 1994), as corrected on reh'g (Sept. 14, 1994) (overturning prior ruling due to later inconsistent decision by another federal court).

[9] Plaintiffs' Exhibits I, KK, and LL comprise the unsworn reports of plaintiffs' expert and are not competent evidence on summary judgment. *Sofford v. Schindler Elevator Corp.*, 954 F. Supp. 1459, 1462-63 (D. Colo. 1997) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17 (1970)); *Sparks v. Rittenhouse*, 314 F. App'x 104, 107 n.2 (10th Cir. 2008) ("Unsworn statements do not meet the evidentiary requirements of [Rule] 56.")

Nor do they support a finding of antitrust injury. Indeed, according to Foreman, "[i]f profitability for a center falls below other facilities, the surgeon owners will withdraw, taking their

might fail *if* it loses enough revenue, but the Court already concluded that Plaintiffs have failed to prove that this has or will occur. Moreover, Dr. Foreman himself admitted that his key assumption, Plaintiffs' loss of revenue from commercial patients, never occurred and he had no basis to opine it was likely to occur:

> "Q. It's not your testimony they have risk. In fact, in the data that you've examined in your updated report, you show that each of the four plaintiff ASCs has a substantial proportion of their caseload and substantial revenue from commercial insurers in all periods that you've studied; isn't that correct?
>
> A. That's correct."

(Foreman Tr. 47:23-48:6; see also *id.* 42:23-43:1 ("Q. Did that actually happen, that the alleged conspirators deprived the plaintiff ASC of all of their commercial revenue? A. No.").) Plaintiffs concede the rest of Dr. Foreman's conditions as well. ███████

████████████████ (Aetna SMF ¶¶ 36-41); their physician investors earned a substantial return on their investment (*Id.* ¶¶ 42-45); and Plaintiffs never experienced the meaningful loss of physicians that Dr. Foreman speculated would lead to Plaintiffs exiting the market. (*Id.* ¶ 46).

Plaintiffs' argument that they would have been driven from the market but for this lawsuit fares no better. (Opp. at 47-48.) First, the argument is not supported by any evidence; such rank speculation cannot establish antitrust injury. *Bristol-Myers Squibb*

---

investments to other healthier centers." Opp. at 47 and Pls. Ex. I. But plaintiffs concede that they did not suffer a meaningful drop in physician count during the alleged conspiracy. Aetna SMF ¶ 46. Thus, under Foreman's analysis, Plaintiffs' profitability did not fall below that of other surgery centers in the market. This is corroborated by the opinion of Ms. Van Tassel, who found that plaintiffs' physician investors achieved a return on investment in excess of ████. Aetna SMF ¶¶ 42-45. Therefore, Plaintiffs' growth either (1) slowed from an incredibly high level (perhaps inflated by their questionable practice of waiving co-pays and deductibles) to a level that still matched or exceeded their competitors or, (2) did not slow at all. Either way, plaintiffs have not demonstrated harm to competition.

*Co. v. Copley Pharm., Inc.*, 144 F. Supp. 2d 21, 23 (D. Mass. 2000) ("a speculative injury is not antitrust injury"); *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1235 (8th Cir. 2010) (affirming dismissal where "any antitrust injury [p]laintiffs could prove would be both speculative and localized").[10] Plaintiffs cite only the testimony by Marc Reece of non-party Colorado Association of Health Plans ("CAHP"), which Plaintiffs claim shows the lawsuit "halt[ed] the conspirators' momentum." (Opp at 48; Pls. Ex. O.) But that testimony does not relate to conspiratorial conduct at all, only to CAHP's legitimate efforts to petition the government. (Pls. Ex. O.) Such a speculative theory, unsupported by any evidence, cannot survive summary judgment.

Unable to show either actual exclusion or likely failure, Plaintiffs suggest an alternative: that they would have grown faster absent the challenged conduct. (Opp. at 46-48.) This "slow growth" theory is one and the same with the purported "lost business" that the Court rejected as insufficient in the *Cigna* action, and in any event is derived from the same unreliable damages methodology that Defendants challenge in their motion to exclude. ECF 477; *Cigna* 171 F. Supp. 3d at 1106 (finding no antitrust injury where "there is no evidence that any of the Plaintiff ASCs in this case have actually been excluded from the market; rather, the evidence shows only that they suffered some amount of lost business as a result of Cigna's acts"); *see also Elliott Indus. Ltd.*

---

[10] *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 482-83 (1982) and F*ull Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 754 (10th Cir. 1999), both cited by plaintiffs (Opp. at 47-49), are inapposite because the plaintiff in each of those cases demonstrated <u>actual</u> harm to competition. *Full Draw* included allegations that a competitor was <u>actually</u> excluded from the market (182 F.3d at 755); in *McReady*, there were allegations that the alleged boycott <u>actually</u> limited consumer choice. 457 U.S. at 483. Here, Plaintiffs, who have not been eliminated from the market and do not posit any other theory of antitrust injury, make no such showing.

Further, as the Court noted in Cigna, *Full Draw* is inapposite where, as here, no competitor has been exited the market. 171 F. Supp. 3d at 1106 n.4.

*P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1125 (10th Cir. 2005) (affirming dismissal, finding plaintiffs' alleged economic loss was insufficient to show harm to competition).[11] The Court is not alone in this analysis; previous courts examining similar fact patterns have found that there can be no antitrust injury where the plaintiff can show only some amount of lost income but otherwise remained in the market. *See Tri State Adv. Surgery Ctr., LLC v. Health Choice, LLC*, No. 3:14CV143-JM, 2015 WL 1737410, *4 (E.D. Ark. Apr. 16, 2015) (dismissing similar case brought by SurgCenter-affiliated ASC, ruling plaintiff did not show "actual detrimental effect on competition" because plaintiff was still in business, there was no decline in the number of ASCs in the market, and plaintiff failed to show an impact on price or the availability of services).[12]

Unable to meet the *Cigna* standard, Plaintiffs offer one final, legally deficient theory: that because they pled a per se violation of the antitrust laws, they do not have to establish antitrust injury. (Opp. at 45.) As the Court recognized in the *Cigna* opinion,

---

[11] Plaintiffs rely on *Reazin v. Blue Cross and Blue Shield of Kansas, Inc.*, 899 F.2d 951 (10th Cir. 1990), but that case is not applicable here. The antitrust injury in *Reazin* was the unreasonable restriction of trade in the health care financing market; plaintiffs set forth evidence that defendant Blue Cross had actual power over consumer pricing due to its market power, which it conspired to protect in part by eliminating the plaintiff hospital from its network due to plaintiff's affiliation with a Blue Cross competitor. *Id.* at 970-971. The court thus found plaintiffs' actual economic losses from that actual exclusion were inextricably intertwined with Blue Cross's scheme to push its competitor out of business. *Id.* at 962. This logic does not apply here, where plaintiffs offer no evidence of harm to consumers in the form of higher prices.

[12] *See also B&H Medical, L.L.C. v. ABP Admin.*, Inc., 526 F.3d 257, 263-264 (6th Cir. 2008) (affirming summary judgment where plaintiff "produced an expert opinion as to [its] loss of anticipated income," but "the record [was] devoid of evidence that competition as a whole has suffered" due to plaintiffs' exclusion from a provider network); *Levine v. Central Florida Medical Affiliates, Inc.*, 72 F.3d 1538, 1551 (11th Cir. 1996) (no antitrust injury where physician was excluded from provider panel, notwithstanding the effect the decision may have had on the physician's income: "The antitrust laws are intended to protect competition, not competitors,…and we will not depart from that purpose in order to improve Dr. Levine's income standings in the physician league or help him win the Super Bowl of remuneration.").

this is wrong as a matter of law. 171 F. Supp. 3d at 1105 ("The Court rejects the implication in this argument that any injury caused by a per se illegal boycott is necessarily an antitrust injury, as the Supreme Court has spoken definitively on that issue.") (citing *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 341 (1990)). Moreover, setting aside the lack of proof of harm to competition, Plaintiffs have failed to show that their claimed injuries resulted from the challenged conduct rather than other factors, such as entry by new ASCs.  (*See infra*, Sec. D.)

Plaintiffs cannot meet the standard set by the Court in *Cigna*. Their claims must be dismissed on summary judgment.

**D.      Plaintiffs Cannot Show Antitrust Injury Even If They Could Prove Their Likely Exclusion From The Market.**

Besides Plaintiffs' failure to show they were likely to fail and resulting inability to meet the *Cigna* standard, Plaintiffs' claims are also legally deficient for the independent reason that they offer no evidence showing how any alleged exclusion or any other injury they claim to have suffered either has in fact occurred or "stems from the anticompetitive effects of the challenged conduct" as required to show antitrust injury. *Cigna*, 171 F. Supp. 3d at 1106. As the Court recognized in *Cigna*, Plaintiffs have shown neither:

> [T]here is no evidence that any of the Plaintiff ASCs in this case have actually been excluded from the market; rather, the evidence shows only that they suffered some amount of lost business as a result of Cigna's acts. … The ASCs have not pointed to any part of Dr. McCluer's expert report that analyzes the competitiveness of the relevant markets to indicate that such lost business substantiates an antitrust injury. They have not even directed the Court to evidence showing, for example, that their businesses are likely to fail if such losses continue.

171 F. Supp. 3d at 1106-07 (citation omitted).

The Court thus distinguished *Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d
745 (10th Cir. 1999), and its prior opinion in this case. In *Full Draw*, the actual
elimination of the plaintiff reduced the market from two competitors to one. *Id.* In its
earlier opinion in this case, the Court was concerned that the potential exclusion of
Plaintiff Kissing Camels Surgery Center would effectively do the same in Colorado
Springs, leaving Centura/Audubon as the dominant player in that market. Order at 16-
17. This concern was not present in *Cigna* (and is no longer present here) because
none of the Plaintiffs had *actually* been excluded from the market and Plaintiffs offered
no evidence to show that anything less than such exclusion (*i.e.*, mere economic
losses) constituted an antitrust injury. *Cigna*, 171 F. Supp. 3d at 1106-07 (finding
plaintiffs offered no evidence that "analyze[d] the competitiveness of the relevant
markets to indicate that [plaintiffs' alleged] lost business substantiates an antitrust
injury" or that showed "any concrete instances of increases in costs to patients on which
a jury could rely to find that such harm [to competition] occurred.").

Plaintiffs here, moreover, fail to submit concrete evidence of the type of harm that
the Court said in *Cigna* was required to show a harm to competition.

Plaintiffs primarily seek to distinguish this case from the *Cigna* case by clinging to
the Court's decision on Centura's initial motion, where the Court held sufficient the
opinion that "because it [the Colorado Springs ASC Market] is highly concentrated,
elimination of any of the Plaintiffs[13] as competitors would have a substantial negative

---

[13] Notably, only Plaintiff Kissing Camels Surgery Center operates in the Colorado
Springs market; the other Plaintiff ASCs operate in Denver. If Dr. Foreman offered an opinion on
concentration in the Denver market, Plaintiffs did not identify it in their brief.

impact on competition." (Order, ECF 311 at 16-17; Opp. at 48-50.) But, as Aetna

discussed in its opening brief (at 36-39) and as Dr. Foreman conceded during his

deposition, evidence of market concentration alone is insufficient to demonstrate

antitrust injury. (Foreman Tr. 161:3-25.) Moreover, Plaintiffs promised proof (as

reflected in that opinion)—that Kissing Camels would be pushed out of business,

leaving only Centura and Audubon as a monopolist in Colorado Springs—has not come

to the pass, and never will. Indisputably, both Colorado Springs and Denver (for which

Plaintiffs have not pointed to evidence of market concentration) have seen several new

entrants during the alleged conspiracy period. (Aetna SMF ¶¶ 22-23.)

Plaintiffs try to get around this by pointing to Dr. Foreman's testimony that

Plaintiffs' exclusion from the market <u>could</u> have a chilling effect on new competition

entering the market. (Opp. at 48-49 and Pls. Ex. MM at 142.) They conveniently omit

that Dr. Foreman admitted in response to the very next question that he never studied

any evidence to support this theory. *Id.* at 142:22-25. Nor did Dr. Foreman study any

impact on price, quality, or the availability of goods or services, as he conceded in his

deposition. Aetna Br. at 38. Foreman's opinions are legally insufficient to demonstrate

that Plaintiffs' hypothetical exclusion from the market would harm competition.

Plaintiffs thus cannot show, as required by the *Cigna* case, that they have been

or are likely to be excluded from the market as a result of Defendants' conduct, let alone

that such hypothetical exclusion would in fact harm competition by negatively impacting

the price, quality, or quantity of goods in the marketplace. *Cigna*, 171 F. Supp. 3d at

1106; *Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1281 (10th Cir. 2012).

Unable to show harm to competition, Plaintiffs argue that such a showing is unnecessary because they seek injunctive relief under § 16 of the Clayton Act.  (Opp. at 50.) This is wrong as a matter of law; although § 16 does not require a plaintiff to suffer *injury-in-fact* before bringing a claim, plaintiff still must demonstrate "threatened loss or damage of the type the antitrust laws were designed to prevent." *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986) (quotation omitted); *B-S Steel Of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 668 (10th Cir. 2006) ("In a summary judgment determination, the initial question is therefore 'whether plaintiff has raised a genuine issue of material fact sufficient to show a threat of antitrust injury … .'"). As the Supreme Court recognized, "[i]t would be anomalous … to read the Clayton Act to authorize a private plaintiff to secure an injunction against a threatened injury for which he would not be entitled to compensation if the injury actually occurred." *Id.* at 112. As demonstrated in Sections C and D, *supra*, Plaintiffs have not set forth sufficient evidence for a jury to conclude that Plaintiffs have been or are likely to be excluded from the market or that such exclusion, if it occurred, would result in harm to competition. Plaintiffs' claim for injunctive relief, too, must fail.

## VI.    CONCLUSION

For the reasons stated above and in the opening briefs filed by CASCA and Aetna, summary judgment should be granted in favor of all Defendants and this case dismissed in its entirety.

Dated: December 16, 2016

Respectfully submitted,

*s/ Kathryn A. Reilly*

Kathryn A. Reilly
Grace A. Fox
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Tel: 303.244.1800
Fax: 303.244.1879
Email: reilly@wtotrial.com
     fox@wtotrial.com

Attorneys for Defendant Colorado
Ambulatory Surgery Center Association,
Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2016, I electronically filed the foregoing Defendant Colorado Ambulatory Surgery Center Association, Inc.'s Reply In Support Of Motion For Summary Judgment And Memorandum In Support with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

*s/ Claudia Jones*